51 / 50

# COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT

Marlon Estacio Pagtakhan #2074227

Napa State Hospital Q1, Q2

2100 Napa Vallejo Hwy.

Napa, Ca. 94558-6293

**FILED**

APR 2 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## United States District Court
## Northern District of California

| | |
|---|---|
| Marlon E. Pagtakhan, | Case No. **CV 08 2188** |
| Joanna E. Pagtakhan, | (To be provided by the Clerk of Court) |
| Sara Marie French, | COMPLAINT UNDER THE |
| Puri E. Pagtakhan, | CIVIL RIGHTS ACT, |
| vs. | Title 42 U.S.C. §1983 |

**SI (PR)**

detective John Doe,

Burlingame Police Department,

Chief Deputy **D.A.** Steve Wagstaffe **ET AL**,

Eric M. Hove (court appointed counsel),

Jatinder K. Singh (court appointed doctor),

Thomas E. Samuels (court appointed doctor),

Jack Grandsaert (Judge),

County of San Mateo. (all in their official capacities)

E-filing

I. A. Napa State Hospital

   B. Yes

   C. Yes

   D. My patients' rights complaint was unans-
      wered.

1  E. not applicable
2  F. Not only did I submit 3 patients' right-
3  s complaints to the Office Of Patients'
4  Rights of Napa State Hospital, I also fi-
5  led habeas corpus petitions first in this Fe-
6  deral Court, dismissed in comity, second
7  in Superior Court, irrationally denied, a-
8  nd now have one pending in the Court
9  of Appeals. I also filed criminal complaints.
10 (An attorney complaint was also filed with the CA State Bar.)
   (A claim against the County of San Mateo was denied on 2/26/08.)
11 II. A. Marlon E. Pagtakhan (main victim)
12     Napa State Hospital Q1,Q2
13     2100 Napa Vallejo Hwy.
14     Napa, Ca. 94558-6293
15
16     Joanna E. Pagtakhan (derivative victim)
17     124 Green Avenue
18     South S.F., Ca. 94080
19
20     Sara Marie French (derivative victim)
21     512 South Idaho Street
22     San Mateo, Ca. 94402
23
24     Purificacion E. Pagtakhan (derivative victim)
25     512 South Idaho Street mailing address as b-
26     San Mateo, Ca. 94402  oth my parents a-
27                            re now homeless
28  B. detective John Doe (and the)

COMPLAINT                    [2]

1  <u>Burlingame Police Department</u>
2  Burlingame, Ca. 94010

3

4  <u>Chief Deputy D.A. Steve Wagstaffe ET AL</u>
5  District Attorney's Office
6  400 County Center
7  Redwood City, Ca. 94063

8

9  <u>Eric M. Hove (court appointed counsel)</u>
10  461 Laurel Street
11  San Carlos, Ca. 94070, and the
12  Superior Court, County of San Mateo

13

14  <u>Jatinder K. Singh (court appointed doctor)</u>
15  Forensic Mental Health
16  Maguire Correctional Facility
17  300 Bradford Street
18  Redwood City, Ca. 94063

19

20  <u>Thomas E. Samuels (court appointed doctor)</u>
21  Forensic Mental Health
22  Maguire Correctional Facility
23  300 Bradford Street
24  Redwood City, Ca. 94063

25

26  **Note:** The personal business addresses of
27  the stated doctors are on the transcript
28  of competency proceedings case #MH463328A.

COMPLAINT                [3]

1  <u>Jack Grandsaert (Judge)</u>
2  <u>Superior Court, County of San Mateo</u>
3  <u>400 County Center, 4th Floor</u>
4  <u>Redwood City, Ca. 94063</u>
5
6  <u>County of San Mateo</u>
7  <u>Clerk of the Board of Supervisors</u>
8  <u>400 County Center</u>
9  <u>Redwood City, Ca. 94063</u>
10

**III. (1) I was falsely arrested on 8|11|07 when I was framed by the Burlingame Police Department detective** working with scandalous criminal mob affiliates of All Pro Wrestling based in Hayward, Ca., after **he permitted those affiliates to continue to harass me after I had previously filed a harassment complaint with his department** against Roland Alexander, the owner and mob leader known as "The Godfather" of All Pro Wrestling. **He was intentionally negligent** to my own civil rights when **he solicited with those affiliates to procure myself to be charged and arrested** as he admittingly proclaimed he was investigating the situation for (at least) 6 months. I recall him surveying my place of residence sometime in late spring or early sum-

COMPLAINT                    [4]

1. mer in the later afternoon. I also recall
2. the driver, his partner, watching me wor-
3. kout and practicing martial arts on thre-
4. e occasions, and on one morning nearly r-
5. unning into me as he walked two dogs s-
6. porting on F.B.I. shirt, these occuring as
7. far back as spring. **The Burlingame Polic-**
8. **e Department deliberately withheld from**
9. addressing me and serving an issued restr-
10. aining order that those affiliates themsel-
11. ves violated. After my **malicious arresti-**
12. n an **unnecessary display of force** I'm to-
13. ld I'll be shown a warrant as requested
14. when we get back to Burlingame. **I'm ne-**
15. **ver shown one.** At the Burlingame Polic-
16. e Department I'm then **compelled in-**
17. **to an interrogation** under false pret-
18. enses. Upon which the detective be-
19. gan **taking leading statements. I th-**
20. **en refuse to speak more without cou-**
21. **nsel,** yet he continued questioning. L-
22. ater in closing he asks if I have any-
23. thing else to say in my defense or any
24. evidence to support my story. I re-
25. ply so explaining I had saved journal-
26. s and emails on a laptop at home as I
27. had intended of filing a lawsuit agai-
28. nst Roland Alexander. Given the pro-

COMPLAINT                    [5]

1  mise of having **the material printed for m-**
2  **e,** the detective and driver escort me
3  home. Previously I inform that one c-
4  omputer, a tower, **belonged to my sis-**
5  **ters,** and that I had model martial
6  arts weapons. **He was not concerne-**
7  **d.** Upon entering my apartment I sho-
8  w him my sisters' tower in an enterta-
9  inment center. In a very significant
10  change into a lustful demeanor, **he a-**
11  **ngrily and aggressively disconnects an-**
12  **d seizes it sluggishly.** I then show him
13  my laptop as he asks. **Instead** of let-
14  ting me show him the files to print,
15  **he does the same sluggishly pulling**
16  **my laptop from a monitor and music**
17  **studio workstation without conse-**
18  **nt or authority.** In his lustful and
19  damaging seizures of my and my fam-
20  ily's property, his face and neck tint-
21  ing a slight red, **did he invade my**
22  **and my family's privacy by intrusio-**
23  **n.** Of course mine was already invade-
24  d by the so-called investigation so-
25  oner as they solicited with my associ-
26  ations infringing on my **personal libe-**
27  **rty.** Brought back to the police depa-
28  rtment I am then booked. I ask

COMPLAINT                    [6]

1  the detective to not publicize my cas-
2  e as I believe it the motive behind
3  All Pro Wrestling's **framing of me.** Bo-
4  th officers reply they personally wo-
5  uldn't. I also stated I was not guilt-
6  y and would take the matter to trial
7  asserting my speedy trial right with
8  him. **On 8/14/07 the detective visits**
9  **me** in a contact room in jail the mor-
10 ning **before my arraignment.** He claim-
11 ed that parts of my initial interrogat-
12 ion was lost. I refused to speak with
13 him stating I haven't even seen a la-
14 wyer. Eventually I permit him to rec-
15 ord me scold him on **misconduct. He**
16 **was later present at my arraignment** tw-
17 ith **two affiliates of APW.** When my c-
18 ase was called, he and those two male
19 affiliates huddled up with the assigne-
20 d deputy D.A. resulting in **my already**
21 **excessive bail being raised even hig-**
22 **her. I had stated earlier** to the det-
23 ective during his visit **I would fight**
24 **this case and move for an O.R.** releas-
25 e. I ask the temporary lawyer to req-
26 uest a **gag-order** orally which **is deni-**
27 **ed** by the arraignment judge. Days la-
28 ter he calls my sister to arrange a m-

1  eeting with her at my apartment. The
2  detective then seizes a replica kat-
3  ana and naginata telling my sister h-
4  e did not intend to use it as evidence
5  because they already had enough evi-
6  dence to convict me. They were in fact
7  unrelated to my case and arrest. On
8  8/23/07 as I'm seated in the jury b-
9  ox the detective has a big grin on his
10 face and is joking with the assigned
11 female deputy D.A. He leaves the cour-
12 troom from behind her. Moments lat-
13 er Eric M. Hove meets her in the aisle
14 following the detective. The two of t-
15 hem return and Eric M. Hove presume-
16 s me incompetent suspending proceed-
17 ings. The detective introduced false ev-
18 idence into my case as he accused me o-
19 f sending a criminal threat to Jason D-
20 eadrich (co-owner of APW) a week be-
21 fore my arrest during my interrogation
22 which I did not. He failed to show it to
23 me. I later come to learn about the ex-
24 cessive fraud and libel (from Dr. Samue-
25 ls) that he instituted when he intentio-
26 nally compiled a fraudulent and false po-
27 lice report. Never did I daily threaten an-
28 yone or daily ask for sexual favors from

COMPLAINT                    [8]

1  the alleged female victims. Nor did I ev-
2  ver threaten to take lives and end my
3  own! I had every right to confront
4  those who chose to oppress me and c-
5  ontinued to harass me as I wanted
6  out of All Pro Wrestling and a **justifie-**
7  **d partial refund,** a possible truce and
8  a return to training, or to take Rola-
9  nd and Kafu up on their offer and b-
10  ox the **6'4" 250lb. male** who made ret-
11  arded jokes I took personally as I've
12  brought my developmentally disabled
13  brother to the gym, who spoke ill of
14  my sister, who spoke ill of my race,
15  religion, chasity, and has made fun of
16  my private size, trash talking that he
17  would beat my ass, that he had sex wi-
18  th an alleged victim and organized a ga-
19  ngbanging of that female, who threat-
20  ened me with his dogs, speaking like s-
21  ome big shot about me with other stude-
22  nts, taunting and mocking me over the p-
23  hone, **in the wrestling ring as invited n-**
24  **umerous times** all the while they sol-
25  icited with the negligent Burlingame
26  Police Department commiting misprision.
27
28  (2) Chief Deputy District Attorney

COMPLAINT                    [9]

1. Steve Wagstaffe and prosecutors ha-
2. ve grossly violated my civil rights in
3. acts of criminal libel, fraud, conspirac-
4. y, malpractice, and misprision in their
5. bad faith malicious prosecution mot-
6. ivated in the interest of publicity. Th-
7. e District Attorney offensively disclos-
8. ed **false and prejudicial** information t-
9. o the media in **pre-trial defamation** i-
10. mpairing my right of a fair and impartia-
11. l trial also endangering my person. Th-
12. ey are tied to articles published in the D-
13. aily Journal and deliberately misconstru-
14. ed information taken from an application
15. for counsel and disclosed that I lived w-
16. ith my mother. I listed her as a depend-
17. ent. They also disclosed information and
18. hearsay regarding my excessively publici-
19. zed prior, **matter of factly** as a parolee
20. photo taken about four years ago was
21. published. In addition they **violated my**
22. **right to privacy,** after conspiring to ill-
23. egally commit me they disclosed my com-
24. petency proceedings and commitation to
25. a state hospital **slandering** me as an inc-
26. ompetent 30 year old male who lived w-
27. ith his mother. I'm 29, was independen-
28. t, and financially supported my parents.

COMPLAINT                    [10]

1  I learn from counsel that I had been
2  under investigation by the D.A. mo-
3  nths prior to my arrest. Since a compla-
4  int was filed as early as 2/07 (possibly s-
5  ooner), and the charges date back to 4/-
6  06, there is no doubt in unnessary delay
7  present before my 8/14/07 arraignmen-
8  t violating my civil rights in an act of malp-
9  ractice. In addition the D.A. conspired w-
10 ith court appointed counsel and doctors
11 to suspend time, and fraudulently suspe-
12 nd even more time in my unnecessary com-
13 mitment to this hospital prior to a prelimi-
14 nary hearing which statutory deadline ha-
15 s been tolled. On the evening of 8/22/07 I
16 meet Eric M. Hove for the first time. The
17 former prosecutor (Hove) prior to 3/07,
18 repeatedley begs me to waive time. I stro-
19 ngly assert I wanted a speedy trial. He e-
20 ventually agrees. The next morning in co-
21 urt the defective is joking with an attra-
22 ctive deputy D.A. He leaves the courtro-
23 om from sitting behind her. Shortly she w-
24 alks to meet Hove in the aisle and they
25 exit the courtroom to meet the detect-
26 ive. The two return moments before m-
27 y case is called. Hove then deviosly mis-
28 represents me proclaiming doubt to my

COMPLAINT                    [11]

1  competency thus suspending proceed-
2  ings **in the best interests of the v-**
3  **ery attractive female prosecutor w-**
4  **ho had no case to present at the time**
5  resulting in the denial of my speedy
6  trial right for the fact that I refused
7  to waive time after his begging, I do so
8  and asserting to him **I wanted to be tr-**
9  **ied in 60 days.** Judge Jack Grandsaert
10 then appoints Jatinder K. Singh and B-
11 rad Novak to evaluate me. **Singh is cho-**
12 **sen by the D.A (according to Hove), thou-**
13 **gh she states no ties in her 9/07 evaluati-**
14 **on.** I answer all her questions according-
15 ly and correctly. I state that I would
16 fight my case and wanted a speedy trial.
17 In her response she asked me if I would
18 consider a **6 year plea bargain** if most char-
19 ges where dropped. I state again that
20 I want a speedy trial. She is **biased** in
21 her demeanor showing she felt me guilty.
22 After the **suspious evaluation** and her at-
23 tempts to **feed me with guilt** I ask for h-
24 er finding. She replies, "You're very articu-
25 late and smart and I believe you can he-
26 lp your lawyer in your defense.." Mr. No-
27 vak gives me a formal and professional e-
28 valuation the next week and tells me h-

COMPLAINT                    [12]

e finds **no reason to find me incompetent.** On 9/26/07 as I foreseen, Dr. Singh's report is negative. Eric M. Hove assures that I will recieve a fair evaluation as the third doctor **Thomas E. Samuels** is "one of ours" (the defenses) and that he (Hove) knows him. On 10/23/07 in the late afternoon I'm visted "**back to back**" first by **Hove** I'm disappointed in his misrepresentation, incompetency, and repeated failures (which will be explained in next claim). He leaves. As soon as I close my cell door a couple minutes later, I'm called to my evaluation with Mr. Samuels. (I believe they had come together.) **Samuels interviews me entirely speaking of and quoting sections of a falsified police report, chastising me to evaluate my justifications.** After a short and suspect interview, upon my asking in the presence of a deputy he answers "**Well - you're competent enough to stand trial.**" The next morning on 10/24/07 before my case is called Hove informs me Samuels found me incompetent. In court I object and make an oral motion for a Marsden hearing and declare the reports as fraud

COMPLAINT                    [13]

on the court wishing to contest the-
m. Judge Grandsaert takes my object-
ion under consideration but said he w-
ould stand by the reports despite my
dispute as **I claimed "I am very comp-**
**etent." He denies me my right to cont-**
est the reports. Hove then visits me t-
hat late afternoon, again denying as I acc-
used him earlier of influencing Samuels
to give me a negative because I again re-
fused to waive time as he wanted the da-
y before. **Contrading himself he then c-**
**laimed that he did not know Samuel p-**
**ersonally, and that he has only seen h-**
**is reports.** Untampered surveillance vid-
eos or visiting logs would prove him a li-
ar. On **11/16/07** I again address the court
as Hove is not present. **(He stated the**
**day before he may be absent and coul-**
**dn't do a thing to stop my commitment.)**
I object to the illegallity of the pro-
ceedings and assert I wanted (more
needed) a speedy trial. On **12/14/07** he
was again absent. Judge Grandsaert
asks for any volunteers to represent
me on **12/21/07.** Some defense attorney-
s laugh as if it were a joke. One volu-
nteers. On **12/21/07** Hove is present an-
d he speaks with Judge Grandsaert us-

COMPLAINT                    [14]

ing pre-written script about the delay in transfer status which is also publicized against my rights. On 1/2/08 I'm unrepresented and inform the court my habeas corpus petition is being copied to be filed. Since then Cynthia (the law librarian) has either failed to respond to requests or has delayed responses and I suspect **court intervention** as when requesting material under other inmates' names (as favors) material was granted. **On 1/30/-08 Hove is again absent** and I am unlawfully shoved out of the courtroom when I address criminal complaints I've filed and my habeas corpus denial statement which now presiding judge Clifford V. Cretan ordered that read **"Petitioner could have demanded..the doctors be made availabe for cross-examination.."** which is what I always requested by objecting. On 2/5/08 before court Hove has again failed to disclose documents I've repeatedly requested from him and the court. Instead he shows me his typed up placement order he will request the judge to sign despite my objections. In court the judge signs the order at Eric's request and **I object**

COMPLAINT                        [15]

to the order. I mention my pending marsden hearing and the judge says he sees no motion. I claim that Hove was aware of it and that I had made it orally. (Hove informed me, I'd be granted one upon return.) **Regardless, I personally relieved Hove immediately as counsel on the grounds of a fraudulent misrepresentation and a conflict of interest.** The County employees have been more than negligent and have committed intentional acts violating my state and federal civil rights. This commitment is an effort to push a plea bargain, introduce false documentary evidence, denying my right to a fair and impartial trial.

**(3)** Court appointed attorney Eric M. Hove has been a fraudulent misrepresentation commiting endless acts of malpractice against me. On the evening of 8/22/07 I finally meet my attorney Hove after 11 days of requesting to speak to one since my arrest. In the 10 minute visit he repeatedly begs me to waive time. I assert that I want a speedy trial. He finally agrees. On 8/23/07 after conspiring with a deputy D.A. he deviously proclaims doubt. He tells me of a

failed visit attempt with an investigator the night before, after his first. Then he promised a visit that night, a visit from a doctor in a week, and an investigator as well. I am not seen by anyone. In the courthouse, on 8/29/07 both my family give him documents, and I. He promises to make copies. Hove then buys my trust by comforting me with the notion he will speak to my family in his office the following week to discuss my case. In court, doctors are assigned. Hove then promises to visit but contradicts himself assuring me he'll be assigned an investigator soon. I request again as when I first meet him, the complaint and police report. (Eric introduces me to Omar sometime before my next court date and after the two evaluations. He tells me Novak's report is positive but am suspicious he doesn't know Singh's findings. I give him a document to copy. He promises to return copies of all documents on my next court date and to disclose requested documents. Hove asks that I waive time and hints I may need a third evaluation if Singh's report is negative.) On 9/26/07 I give Hove two more documents. He does noth-

COMPLAINT                    [17]

ave copies as promised. He promises that Omar, having the originals, will visit me that day and bring me copies. (No visit is made.) Singh's report is negative as suspected and Hove comforts me he is suggesting a friend (Samuels) for the third evaluation. As I stay in jail I prepare more documents and grow tired of Hove's suspicious acts. He doesn't meet me or my family as promised, nor does he begin investigation or taking any depositions of any witnesses I've declared, or the prosecution's, as he promised to do so with Omar during their prior visit, he admits on his next visit. On 10/23/07, Hove finally visits me and returns my documents. I'm disappointed he has not yet conducted the previously mentioned investigation and not utilizing the information I gave him. **Hove has done nothing and insists that I waive time.** He plays (acts) dumb as if unaware if I had my third evaluation or not. Then he tells me Samuels will be seeing me that evening. Two minutes after my visit with Hove, I am visited by Samuels. The next morning b-

COMPLAINT                    [8]

efore my court appearance on 10|24|0-7. Hove informs me that the third evaluation is a negative. I am suprised and truly believe this would not be the case had I waived time when he continued to beg. I hand him more documents that contradict my presumed incompetency. I am then commited by these fraudulent acts of malpractice negligently by presiding judge Grandsaert (even after my objections continued). In the late afteroon Hove visits me along with Omar. Assuring me he is not angry at me for requesting a Marsden hearing, he claims that he will continue to work on my case to the point of myself relieving him. I accuse him of concealing the fact that he and Samuels had came together the day before (as I claimed that morning he influenced the negative report). Hove then again contradicts himself claiming he did not know Samuels and that he's only seen his reports. I disclose him names of witness and request again the police report, complaint, and now the doctors reports. On 11/15/07 he visits me giving me a placent letter instead of the previously r-

COMPLAINT                    [19]

epeatedly requested documents. I ask him to do whatever it takes to stop this fraudulent commitment. He claimed he could not do a thing about it. On 11/16-07 Hove is absent. I address the court and request disclosure of the mentioned documents. Grandsaert irrationally advises to request them from Hove even after I repeatedly have done so to no avail. I inform him. On 12-14/07 Hove is again absent and I address the court. On 12/21/07 Hove and Grandsaert go on the record using pre-written scripts. I again am misrepresented as Hove intentionally conceals that he is in fact able to contest my commitment. On 1/2/08 I am alone and unrepresented as Hove is absent under new presiding judge Cretan. I then file criminal charges against alleged victims, the detective, and court staff including doctors and counsel regarding criminal constituting tortious acts committed against me. Hove is again absent on 1/30/08. On 1/31/08 he and Omar visits me promising again to disclose all previously requested documents the next day by having Omar deliver them. The next morning court

**COMPLAINT**                    [20]

appearance **on 2/5/08,** Hove does not have the documents as promised and promises again to have Omar deliver them. He tells me he typed up a placement order to Napa State Hospital and shows it to me. In court he asks the judge to sign it **despite my dispute and repeated objections.** Eric M. Hove's actions were more than negligent. **They were intentional.** Other inmates in county jail have labeled him a dump-truck lawyer **concealing a defense and eliciting the prosecution's case.** When I've expressed my belief that a real lawyer would have this case thrown out to Hove on at least two occasions, his only reply is that he does private work as well. He's misled me as well as my family that he has spoken to. **Hove told me that it's normal for officers to make false reports.** In a solo visit from Omar did he try to persuade me that Hove was one of the best lawyers and that I was lucky to have the $400.⁰⁰ an hour Hove defend me. From what other county inmates have said about team Eric and Omar, **and my experience, I've** concluded them in honesty to be shams.

**COMPLAINT** [21]

   **(4)** Court appointed doctors Jatinder K. Singh and Thomas E. Samuels in an act of malpractice intentionally misdiagnosed me as incompetent to stand trial by way of fraud preparing false documentary evidence resulting in libel, and a fraudulent commitment. As previously stated I'm evaluated by Singh in 9/07. She tells me voluntarily that she is not working for the D.A. which is a lie. (Prosecutors have a split choice with public defenders in choosing doctors when it comes to competency proceedings, and according to Hove, she was D.A. chosen.) I answer all her questions accordingly an correctly. I was suspicious of her attitude as it seemed she was fishing for any reason to give me a negative report. Singh is biased to my wanting a speedy trial and tries to feed me with guilt. She asks me if I would consider a 6 year plea bargain if most of the charges were dropped. I stated again I wanted a speedy trial. In closing I ask for her finding. She replies, "You're very articulate and smart and I believe you can help your lawyer in your defense" but there may be a

COMPLAINT                 [22]

n issue with your health, there can be a disease." Though I was competent, she chose not to reveal her final decision claiming she needed to do more research. Her decision was more than likely made before the interview. I'm evaluated by Samuels immediately after a visit from Hove on 10/23/07. Samuels evaluation not lasting much more than 10 minutes contained no questions pertaining to my competency nor judicial proceedings. Besides my stating the understanding of all my charges all he does is chastise me speaking of and quoting sections of a falsified police report. I claimed it as slander and false accusations. Upon asking for the result, in the presence of a deputy Sheriff, he answers, "Well you're competent enough to stand trial" but (following was incomprehensible, possibly spoken in code as I shake his hand)." In 9/07 I passed a competency exam by Brad Novak. On 2/8/08 (day after my admittance to NSH) I passed a competency assessment by Dr. Cristiano who proclaims "I did very well on them." during a conference on 2/14/08. I'm the ng-

iven a I.Q. test by "Dr. C", 2/15/08, he compliments me saying that my I.Q. is above average, close to near superior" as I scored 118. Besides the misdiagnosis of other county doctors whose evaluations were based on uncontested, uncredible, and false accusations on a concealed and false police report, the diagnosis' Eric M. Have refused to reveal and contest, I am and have always been competent. I am not mentally ill nor do I have any impairment that substantially impairs me to aid in my defense. I have yet to be shown any scientific proof on why county doctors have diagnosed me "delusional". All my concerns are of physical experiences, injustices, and abuse I've actually suffered. Samuels made a fraudulent and false statement on a report which stated I claimed "I was in love with the victim, (that) I believe she loved me in return, (and that) in this mutual love I sought to pursue a relationship with her." This is a conjured lie and true evidence proves so. Never did I say to Samuels that (1) I was in love with the victim, that (2) I belie-

**COMPLAINT**                    **[24]**

0 | ved she loved me in return, or **(3)** (tha-
1 | t) in this mutual love I sought to purs-
2 | ue a relationship with her. With thes-
3 | e fraudulent reports by Singh and Sam-
4 | uels, and the deliberate misrepresen-
5 | tation by Hove, have I been fraudule-
6 | ntly committed negligently, and then in-
7 | tentionally by Jack Grandsaert and
8 | the Superior Court of the County of
9 | San Mateo.

11 | • In closing, the conditions of my co-
12 | nfinement (and the criteria of discha-
13 | rge) at Napa State Hospital is that I
14 | must agree with the repeated acts o-
15 | f **malpractice** of Hove, I must agree
16 | with the **fraudulent reports and mis-**
17 | **diagnosis** of Singh and Samuels, I mu-
18 | st accept the **false police report** of
19 | the Burlingame Police Department d-
20 | etective and his **misconduct,** as well as
21 | those of Wagstaffe ET AL, and consid-
22 | er a plea bargain, I must accept that
23 | I was **deviously committed** by Grand-
24 | saert and the Superior Court of the C-
25 | ounty of San Mateo, and I must acce-
26 | pt **maltreatment** and **consume unnece-**
27 | **ssary** and **uneeded medication,** in gro

28 | COMPLAINT          **[25]**

0 ss federal constitutional and statutor-

1 y violations by County ~~and State~~ acto-

2 rs thus resulting in this continuing wro-

3 ng. One must understand I can not.

4

5 **IV.** As a result of the Public Employe-

6 es'(of the County ~~and State~~) General

7 Negligence and Intentional Torts

8 in acts of Professional malpractice,

9 Criminal libel, Fraud, and Invasion of

10 privacy **violating my Civil Rights and**

11 **Liberties,** they are bound by civil,

12 tortious, derivative, joint and severa-

13 l liability. **I demand a Federal jury**

14 **trial** seeking injunctive relief and

15 monetary damages, as well as an ord-

16 er declaring said defendants have a-

17 cted in violation of the United Stat-

18 es Constitution, as follows:

19

20 <u>**Injunctive relief (1)**</u>

21

22 • ~~Pagtakhan~~ requests an injunction

23 compelling the District Attorney to

24 cease prosecution.

25

26 • ~~Pagtakhan~~ requests an injunction

27 compelling the Burlingame Police

28 **COMPLAINT**          **[26]**

Department and/or District Attor-
ney to release all my (and family's)
property listed as:

I pair of Rival 18 oz. lace-up Pro-Sparrin-
g gloves, (Everlast) I pair of 18 oz. lace-up Pro-Sp-
arring gloves, I RAZR cellphone (silver),
I PC Tower (contains sisters' and cousi-
n's private photos), I HP notebook (con-
taining schoolwork, personal training
plans, pro-wrestler and musical projects),
I replica katana (gift from neighbor), I rep-
lica naginata (mint from eBay)

• Pagtakhan requests an injunction comp-
elling the retraction of Singh's and S-
amuel's competency reports.

## Monetary damages (itemization) (2)

• Lost wages (2,880/month potential)
• Lost truck (10,000 estimated blue book)
• False imprisonment (24,000/month)
• Criminal libel (25,000)
• Invasion of privacy by false light (25,000)
• Invasion of privacy by intrusion (25,000)
• Infliction of emotional distress (50,000)
• Civil rights & Liberties violations (1,000,000)

**COMPLAINT          [27]**

derivative victims monetary claims:

- Lost financial aid (500/month) mother
- Storage rental (183/month) sister
- Invasion of privacy (25,000) sister
- Invasion of privacy (25,000) cousin

Based on the threat of 20 years of (unlawful) imprisonment by a frivolous and malicious prosecution conducted with malpractice and fraud, resulting in gross violation of Federal law, **I demand the set amount of $7,800,120.00,** though I would settle for an amount in concordance to my release, in which the County of San Mateo is monetary liable for its employees who are immune in their official capacities.

## Declaratory relief (3)

- Pagtakhan requests an order declaring that detective John Doe and the Burlingame Police Department, Chief Deputy D.A. Steve Wagstaffe ETAL, Eric M. Hove, and Jack Grandsaert have acted in violation of the United S-

COMPLAINT                    [28]

...tates Constitution.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 13th day of April, 2008.

*Marlon E. Pagtakhan*

Derivative victims declarations:

I, Purificacion E. Pagtakhan, have suffered a loss of financial aid from my son in the amount of $500 per month since his arrest.

4-17-08
(date)

*Purificacion E. Pagtakhan*
(signature)

I, Joanna E. Pagtakhan, have suffered a loss of $183 per month in storage rental for my brother's property since his arrest and claim invasion of privacy as a family computer containing private photos of myself was illegally seized by the Burlingame Police Department detective.

COMPLAINT        [29]

04-16-08
(date)

_(signature)_

- - - - - - - - - - - - - - - - - - - - - - - -

I, Sara Marie French, claim invasion of privacy as a family computer containing private photos of myself as a minor was illegally seized by the Burlingame Police Department detective.

041508
(date)

_(signature)_

- - - - - - - - - - - - - - - - - - - - - - - -

## Attached documents are:

Letters (two totaling **17 pages**)
Complaints (two, **2 pages**)
News Articles (Daily Journal)
    8/15/07, 8/24/07, 8/30/07, 10/25/07,
    12/22/07, 2/25/08
Habeas Corpus Petition (pending in the Court of Appeals, **33 pages**)

There were many other documents including exhibits I wanted to attach but would be excessive. Please pardon minor errors.

COMPLAINT                    **[30]** last page.

1  Arnold Schwargenegger          March 7, 2008
2  1st Floor State Capital
3  Sacramento, Ca. 95814          **RECEIVED**
4                                 MAR 1 4 2008
5  Edmund G. Brown Jr.            Richard W. Wieking
                                  Clerk, U.S. District Court
6  California Department of Justice   Northern District of California
7  Attn. Public Inquiry Unit
8  P.O. Box 944255
9  Sacramento, Ca. 94244-2550
10
11 **U.S. District Judge Susan Illston**
12 U.S. District Court, Norther District of Ca.
13 450 Golden Gate Ave.
14 San Francisco, Ca. 94102
15
16 **Board of Supervisors of San Mateo County**
17 400 County Center
18 Redwood City, Ca. 94063
19
20 **California State Bar**
21 180 Howard St.
22 San Francisco, Ca. 94105-1639
23
24 CC: **Columbia Human Rights Law Review**
25    435 West 116th Street
26    New York, NY. 10027
27
28    The Daily Journal



1   (Publisher) Jerry Lee
2   800 S. Claremont St. #210
3   San Mateo, Ca. 94402
4
5
6   Dear Governor Arnold Schwargenegger,
7   Attorney General Edmund G. Brown Jr.,
8   U.S. District Judge Susan Illston, Boar-
9   d of Supervisors of San Mateo County,
10  and the California State Bar,
11
12
13      Greetings Honorable men and women.
14  My name is Marlon Estacio Pagtakhan.
15  I was framed by a Burlingame Police
16  Department detective working with
17  scandalous criminal mob affiliates of
18  All Pro Wrestling based in Hayward, Ca.,
19  committing the offense of PC§182(a)(2)
20  against me. I was slandered and then
21  blackmailed (PC§524, PC§136.1(b)(1)(2)(3))
22  by these affiliates when I left the or-
23  ganization by choice, peacefully in 9/06
24  for just reasons. I was a victim of PC§-
25  181, PC§236.1(d)(1), and PC§422 by those
26  affiliates. Hostilities were then initiat-
27  ed by them and I return their trash tal-
28  king defending myself. In 1/07 I repor-

[2]

1 † Roland Alexander, owner of APW, for co-
2 mmitting PC§653m against me but do not
3 press charges, though I also report of bei-
4 ng blackmailed. As my peace of mind as w-
5 ell as liberty of joining another organizat-
6 ion had been effected, I chose to con-
7 front those mobsters who continued t-
8 o harass me on 8/11/07. I wanted out
9 of the contract and a justified partial
10 refund, a possible truce and a return t-
11 o training in 1/08, or to take Roland an-
12 d Kafu (6'4" 250lbs.) up on their offer
13 and box Kafu in the ring. I brought
14 two pairs of 18oz. pro-sparring gloves.
15 I eventually leave the lot across the
16 street from the gym after an ex-trai-
17 ner advises I bring a lawsuit against
18 APW. I'm later invited back that night
19 to recieve a refund just as long as I
20 sign a contract stating I would not sue
21 him. I'm then maliciously arrested upon
22 arrival violating PC§843 in an unnecess-
23 ary display of force. The detective wh-
24 o boasted of soliciting with APW all al-
25 ong then files a false police report vio-
26 lating PC§118.1. Since then, gross acts o-
27 f fraud have been instituted by court a-
28 ppointed counsel, the District Attorney;

[3]



1. and court appointed doctors in multiple
2. violations of PC §182(a)(5), PC §182(a)(3),
3. and PC §134. Instead of letting true ju-
4. stice take it's course as I wanted a spe-
5. edy trial, because prosecutors had n-
6. o case to begin with, they conspired
7. to fraudulently commit me to a ment-
8. al hospital, and to introduce false d-
9. ocumentary evidence into my case.
10. I'm now being railroaded as I'm misrep-
11. resented and maliciously prosecuted,
12. being made to look like a monster which
13. I am not. I'm not a criminal. I've filed
14. a petition for a writ of habeas corpus
15. with the Superior Court but it was irr-
16. ationally denied. The summary denial
17. is suspect. I'm now amending a more
18. complete petition to be filed in appe-
19. als court. As it is a matter of truth th-
20. at I am being falsely imprisoned and
21. have been fraudulently committed, I
22. seek relief that any of you higher auth-
23. orities may be able to grant if you cho-
24. ose to have further investigated my ca-
25. se, or to the very least endorse my pe-
26. tition so that I'm heard in a higher cou-
27. rt. Attached is a letter to the District
28. Attorney and Sheriff. In it you'll com-

[4]

1   e to know my situation. It includes
2   on page 10, references to my legitimat-
3   e claims in detail. Please help me out.
4
5   In addition on behalf of others in my
6   situation in regards to judicial abuse
7   of competency proceedings, with some
8   apparently more perverse (i.e. being
9   committed after only seeing 1 doctor,
10  or after 3 of 5 giving the opinion that
11  the defendant is competent and ready),
12  I'd like to make my humble suggestion
13  that PC §1368 §1370 be amended so
14  that one is entitled to have his/her ev-
15  aluation recorded with one's own voice
16  stating beginning and end times. Then t-
17  he individual would be entitled to a copy
18  of the report within 5 business days. T-
19  his would do away with fraudulent pra-
20  ctices and save hard-working tax pay-
21  ers as myself tens of millions of dollar-
22  s annually being wasted on fraudulent
23  science. California's deficit cannot afford
24  fraudulent commitments of detainees w-
25  ho *wanted a speedy trial!* I'm told Napa
26  State Hospital is in itself at a forty mill-
27  ion dollar debt. True or not, it definentl-
28  y isn't self sufficient! It also must be a-

[5]

mended in such a manner so as to abide
by the 5th, 6th, and 14th Amendments.
PC §1368 § 1370 is unconstitutional and
is being abused to cater to prosecutor-
ial needs of misconduct to prosecute s-
ome individuals *in bad faith*. One thing
is certain, whatever those two doctors
wrote about me would have said otherw-
ise had I been entitled to recorded e-
valuations and copies of the reports.

Thank you for your
time and God bless!

3/8/08 (2:10pm)          *Marlon E. Pagtakhan*

Marlon E. Pagtakhan #2074227
Napa State Hospital Q1, Q2
2100 Napa Vallejo Hwy.
Napa, Ca. 94558-6293

Note: carbon copies were sent excluding
explicit attachments in interest of refe-
rrals and to expose the truth in natur-
e of my case. (re. CHRLB, The Daily Journal)

1    District Attorney                February 22, '08
2    San Mateo County
3    400 County Center
4    Redwood City, CA. 94063
5
6    C.C.: Sheriff Greg Munks
7          Hall of Justice and Records
8          400 County Center
9          Redwood City, CA. 94063
10
11   Subject: 3 pro-per Criminal Complaints Fil-
12           ed and my victimization of assualt.
13
14   To whom it may concern:
15
16     As a result of gross fraudulent and crimi-
17   nal misconduct, I mailed 3 complaints to th-
18   e Clerk of the court on 1/19/08, and to the
19   District Attorney's office on 1/23/08. They
20   coincide with my previous *habeas corpus*
21   action along with it's attached documents.
22   On new discovery as of 2/21/08, *I DEM-*
23   *AND THE IMMEDIATE ARREST OF*
24   Eric M. Hove and Thomas E. Samuels on t-
25   he grounds of fraud in the crimes of PC §182
26   (a)(3), PC §182(a)(5), and PC §134. The new dis-
27   covery is as follows: After repeatedly reque-
28   sting copies of the two negative doctors' re-

1  ports from court appointed counsel and the
2  Court which I've claimed as false, and frau-
3  dulent, I was repeatedly misled and those f-
4  alse reports were concealed from me to thi-
5  s day. During the last conference, as I am
6  *illegally committed* in Napa State Hospital,
7  Dr. Frishman read statements **fraudulently**
8  and *falsely* made on a report by Dr. Samuels
9  which stated that I claimed "I was in love,
10  with the victim, and was suffering from a d-
11  elusional disorder because I believe and cl-
12  aimed she loved me in return. That in this mu-
13  tual love I sought to pursue a relationship
14  with her." This is a false statement and a co-
15  njured lie. NEVER DID I SAY TO Dr. Samu-
16  els that (1) I was in love with the victim, th-
17  at (2) I believed she loved me in return, or
18  (3) that "in this mutual love" I sought to pursu-
19  e a relationship with her. Dr. Samuels evalua-
20  tion ran a little more than 10 minutes in whic-
21  h all he did was scold and chastise me with
22  the false police report filed by the *crook-*
23  *ed* Burlingame Police Department's detect-
24  ive. (violating 118.1 of the Penal Code) Resulti-
25  ng from this gross misconduct, and the dis-
26  closure of slanderous material to the med-
27  ia by the prosecution and related parties,
28  I've suffered the effects of public defamat-

[2]

1  (continued) on March 3, '08 due to negligent and/
2  or deliberate delay in the deliverance of incomi-
3  ng mail, see attached) ion. Some of these effec-
4  ts which conclude prejudices are anxiety suff-
5  ered in myself and family, being subject to
6  public obloquy which has endangered my
7  person and resulting in my being assaulted,
8  impairing my right to a fair and impartial tr-
9  ial with the publication of misconstrued an-
10  d false prejudicial information, as well as
11  the *fraudulently created false reports of*
12  *court appointed doctors* as the one stat-
13  ed, that **may be used to falsely impeach m-**
14  **e** as in People v. Pokovich 39 C4th 1240,125-
15  3, *but must be made clear the fact it was*
16  *used to fraudulently commit me,* in which
17  the District Attorney may be relying as **they**
18  originally had not enough evidence to presen-
19  t at a preliminary hearing that is the matter
20  of fact why they conspired with court appoin-
21  ted counsel to suspend criminal proceedings
22  and allow the introduction of falsified eviden-
23  ce (i.e. the reports concealed from me.) Anxiet-
24  y comes natural to one who is facing criminal
25  charges, and more so to one who has been
26  framed up and slandered as myself. In ja-
27  il do I suffer from public obloquy. Inmates
28  have spoken of and inquired me regarding

[3]

1. my case and those articles published in p-
2. apers, particularily the Daily Journal. **The**
3. **information was matter of factly disclosed**
4. **as a parolee photo taken nearly four years**
5. **ago, or about, was published.** I've been sho-
6. wn the article published in 10/07 and was he-
7. ld to answer for it. I feel this a tactic by pro-
8. secutors to endanger my person and compe-
9. l me to take a *unjustifiable* plea bargain
10. as was the tactic used by Rhonda Saunde-
11. rs, the prosecuting attorney for my invalid
12. prior conviction, which resulted in myself
13. being maliciously beaten and stabbed repe-
14. atedly in the head, arm, abdomen, oblique,
15. and lower back in which the deputy Sheri-
16. ff threatened I would be known as a snitch
17. if I wanted him to make a report of the in-
18. cident. **On those grounds as well as others**
19. **legitimate will I seek expungement of that**
20. *invalid* prior conviction. With regards to
21. the excessive publicity that prior case was
22. subject to during and after prosecution, it
23. is more than obvious that **Rhonda Saunders**
24. **and detective Kevin Sleeth** *had their own*
25. *interests in mind* rather than justice whic-
26. h included publicity in tabloid and newspap-
27. ers, segments on television shows such as
28. Inside Edition and an hour long special aire-

[4]

1  d on VH1, as well as monetary interests, a to-
2  p being prejudice and biased to my religious
3  beliefs and person. That time I was grossly m-
4  isrepresented and *misled* by court appointe-
5  d attorney Johnathan Roberts whom my
6  parents replaced with *hired* attorney Richar-
7  d Nahigian (suspiciously abbreviated "court ap-
8  pointed counsel" on transcript) whom I now
9  come to find did nothing more than take my
10  parent's money doing an inadequate and inco-
11  mpetent job as counsel. *This history repeats*
12  *itself with the* **condescending fraud and repea-**
13  **ted liar Eric M. Hove** *by which I am now su-*
14  *ffering emotional distress in anxiety, false*
15  *imprisonment and fraudulent commitment*
16  *from which a major role did he play in his acts*
17  *of sadism in insults to my intelligence.* I hon-
18  estly **question the true motives** behind Mr.
19  Hove's hypocracy and actions which include
20  conspiring with the D.A., **whether they be poli-**
21  **tical, monetary, publicity, or sexual interests**
22  **or relations with the** *alleged* **female victims.**
23  (Sometime last year was a judge exposed dating
24  a victim and promising to lock her boyfriend up
25  for a long time.) One thing is certain, he is a frau-
26  d *that* **has committed** *crimes against me and*
27  **has jeopardized my defense.** As he wrote up
28  the placement order for the judge to sign to

[5]

1    commit me here, instead of providing me copies
2    of the fraudulent doctors reports as promis-
3    ed, or contesting them. He claimed he had no
4    power to do anything of the sort to the latte-
5    r, which he later denied as I mentioned the
6    *habeas corpus'* summary judgement statem-
7    ent which read "Petitioner could have dem-
8    onded.. the doctors be made available for
9    cross-examination.." I suspect Court misco-
10   nduct as Clifford V. Cretan seemed obliviou-
11   s when I tried to address that very claim
12   during a continuance in which Mr. Hove was
13   not present. I doubt my petition was proper-
14   ly heard and suspect Mr. Hove himself type-
15   d up the *irrational and vague* "Order of
16   Denial" for the Judge then to sign. True or
17   not, my grounds were legitimate supported
18   by meritable facts, and *should* have been
19   addressed in a hearing.
20
21      On the morning of 1/18/08, as I was add-
22   ressing the manila envelope in which I wo-
23   uld mail the 3 complaints mentioned to th-
24   e Court on 1/30/08, I was *maliciously* att-
25   acked by my cellmate as I sat addressi-
26   ng that very envelope. Long story short, he
27   was agitaded as he awoke at about 9am. H-
28   e rises from the bottom bunk and urinates

[6]



1  on the toilet proclaiming "You wouldn't la-
2  st a day in a level 3 or 4 cell!" I ignore hi-
3  m then come to realize the insult. He ret-
4  urns to his bunk, sitting and adds "I ke-
5  ep trying to tell myself you're not a jay-
6  cat." I let the insult go and he lays down.
7  I continue to write. "That's the third time
8  you woke me up this week doing all your
9  paperwork!" I explained I was keeping
10  as quiet as possible and even demonstrated
11  pulling out my material. Adding the fact it wa-
12  s not intentional. "Can't you wait till later
13  this afternoon?" He replies and repeats "You
14  wouldn't last a day in a level 3 or 4 cell. I
15  keep trying to tell myself you're not a jayc-
16  at." as he is sitting, clearly picking a fight now.
17  "You're coming at me wrong. I haven't even
18  done any writing in the last few days. And yo-
19  ur calling me a jaycat?" I reply. "That's
20  what I keep telling myself, that you're not
21  a jaycat!" He insults me with malice in his ey-
22  es and tone. I continue writing as I'm seated
23  at the desk and reply "Well I think you're
24  coming at me like a b*tch." I'm then repeated-
25  ley punched on the right side of the head,
26  neck, and jaw. I stand into a defensive pos-
27  ture and decide best not to fight back. As he
28  repeatedley strikes me he exclaims throug-

[7]

1 h clenched teeth of hate. "I'm a bitch huh?"
2 I'm a bitch?" in a wheezing voice. I press t-
3 he emergency button and turn my back
4 to him knocking for help through my cell
5 door. I think I made an inmate out in rec
6 aware so return to face my cellmate who
7 continued to strike me on the back of the
8 head. Winded he slows down his attack
9 and continues to cry out "I'm a bitch huh?"
10 As he closes in to grapple with me I shove
11 his head to my abdomen and overhook his ar-
12 ms to restrain him. I continue to push the
13 button. He eventually slips free and throws
14 a couple more punches. Deputy Avila opens
15 the cell door and I instantly tell him that
16 I never threw a punch. A report is eventu-
17 ally filed, photographs are taken of me, and
18 I am asked if I want to press charges. I
19 reply no but would like the report filed. Joh-
20 n Norman Jr is facing his first strike on a
21 residentual burglary. I've heard his alib-
22 i opposed to his own very words, "I should'-
23 ve known better than to work with a n*gg-
24 er." in regards to his co-defendant. He is a
25 dangerous idiot that may have very well
26 attacked anyone had there been somebo-
27 dy home at the time. I'm allowed to return
28 to my own cell. Had the crimes committed

[8]

1. against me not have been committed as st-
2. ated in those complaints, had I not been
3. fraudulently misdiagnosed and slandered
4. in public defamation, I WOULD NOT H-
5. AVE BEEN RIDICULED AND ATTACK-
6. ED! I had suffered a swollen black left
7. eye, a bruised and swollen right side of my
8. jaw, a bruised and swollen right side of my
9. neck, bruises and swelling behind my right
10. ear as well as my left, swelling on the back
11. of my head, and facial pain. Being falsely im-
12. prisoned, I chose not to fight back as I did-
13. n't want to catch a case. Believe me when I
14. say I would have made short work of the
15. attacker. In closing, I request a copy of
16. the report and the photographs taken as
17. prima facie evidence of a prejudice sufferd
18. due to Court and prosecutorial misconduct.
19.
20. In addition to the above, I request the prin-
21. touts of my illegally seized laptop files:
22. startofitall.txt, partialrefundrequest.txt,
23. and last.txt which was exonerating evid-
24. ence the detective was supposed to print-
25. out for me which logged events of conspira-
26. cy, blackmail, entrapment and psychologic-
27. al abuse by criminal affiliates of All Pro
28. Wrestling, supported by saved emails.

[9]



1   In closing, I am being falsely imprisone-
2   d and have been fraudulently committed
3   after I was illegally arrested by the Bu-
4   rlingame Police Department who solicit-
5   ed with the *criminal mob* of All Pro Wre-
6   stling to procure my arrest. The Court, the
7   District Attorney, Eric M. Hove, and court
8   appointed doctors have falsely moved to
9   conceal that matter of fact. I was *framed!*
10
11  References regarding my case:
12  Criminal Proceedings, case # NF369118A
13  Competency Proceedings, case #MH463328A
14  *Habeas Corpus*, case #1973
15  *Habeas Corpus* U.S. District Court, case #
16         C07-6384 SI (pr)
17  • 20 page habeas corpus PETITION (filed wi-
18  th the Clerk, & served to the D.A.)
19  • 59 paged document (attached to petition
20  filed with the Clerk)
21  Claim filed with the Board of Supervisors
22         on 1/22/08
23  • 3 Criminal Complaints (felony) filed with the
24  Clerk and with the D.A.
25  • Start OfItAll.TXT, Partial Refund Request-
26  TXT, Last.TXT on *illegally seized* notebo-
27  ok *being suppressed from me*, also support-
28  ed by emails saved off line.

[10]



1  With the stated concerns regarding my ca-
2  se, I encourage and prefer the disclosure o-
3  f the latter materials to the higher autho-
4  rities noted below if they choose further in-
5  vestigation.
6
7  Also attached is a complaint of prejudice suf-
8  fered due to County employee *fraudulent*
9  misconduct.
10
11                    In the interest of justice,
12                    Marlon E. Pagtakhan #2074227
13                    Napa State Hospital Q1, Q2
14                    2100 Napa Vallejo Hwy.
15                    Napa, CA. 94558-6293
16
17  3/7/08 (3:00pm)   Marlon E. Pagtakhan
18
19  This letter will be attached to letters dire-
20  cted to the following authorities **seeking**
21  **relief or endorsement** of an amended habe-
22  as corpus petition I will be making to the
23  First Appellate District (San Francisco):
24  Governor Arnold Schwargeneggar, Attorney G-
25  eneral Edmund G. Brown Jr, U.S. District Ju-
26  dge Susan Illston, Board of Supervisors of
27  San Mateo County, and to the California St-
28  ate Bar for prosecuting/defense attorney misconduct.

[11]

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- Formal Complaint Form

| Office of Patients' Rights use only |
| --- |
| Date received by O.P.R.: |
| Service #. |
| Date Closed: |

Patient Name: **Marlon E. Pagtakhan**   ID# : **2074227**

Commitment Code: **1370**   Unit #: **Q1 & 2**   Date: **3|1|08**

Describe your complaint below: **SHALOM,**   * Do you have Attachments? **no**

This complaint is regarding the negligent and/or deliberate delay in the deliverance of incoming mail. I would also mention the denial of no response regarding requested legal forms and information. On 2/21/08, I was mailed a large envelope directly from a post office before pickup time which was marked LEGAL FORMS/PAPERS and contained page four copies of the state habeas corpus form, copies of the judicial council attachment forms, and copies of numbered plain lined pleading paper which totaled 73 sheets. I STILL HAVE NOT RECIEVED THESE AND THE NEXT MAIL CALL WILL BE 3/4/08. My mother spent time and money resulting in tardiness to work to provide me these forms BECAUSE I'M DENIED ACCESS IN REGARDS TO LEGAL MATERIAL AND INFORMATION. On 2/22/08, she mailed me income tax papers to sign and mail. After repeated inquiries I recieve them on 2/28. In comparison to others reciept of mail, I grow suspicious. Others recieve mail 1-2 days from postmarks, which where sent in neighboring communities to my own. On 2/11/08 or about, I filled out a patient request form directed to the law library or (who never applicable) requesting habeas corpus forms and mandamus/prohibition (forms or info) as well is the addresses for the Court of Appeals and Supreme Court for the jurisdiction of San Mateo County. I

continued Office of Patients' Rights Response:

as yet to recieve a reply. I grow understandably suspicious as the Court is aware, as well as my team of my course of action in regards to my appeals and civil/criminal actions (claims) against government, employees and entities. The fact that I was framed by the Burlingame Police Department soliciting with the criminal mob of All Pro Wrestling was covered up by gross acts of fraud by those officials and entities which has led to my false imprisonment and fraud lent commitment here in Napa State hospital. I've always been competent and do NOT belong here. THE GOD OF ISRAEL IS WITH ME.

Patients' Rights Advocate signature: _____   Date: _____

This complaint does not support an action of abuse or neglect, punitive withholding or unreasonable denial of patients' rights. This issue is being referred to Program Director:
_____, Program # _____ for resolution and response.
**All responses should be provided directly to the patient.**

Form NSH-130 (Triplicate document)

Note: As a layman of the law, I believe it is my right to keep this top page (original) as it is unmarked as to which copy is to be kept for the complainant, to be used as prima facie evidence to prejudice suffered.

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

| Office of Patients' Rights use only |
|---|
| Date received by O.P.R.: |
| Service #. |
| Date Closed: |

- Formal Complaint Form

Patient Name: Marlon Estacio Pagtakhan    ID# : 2074227

Commitment Code: 1370    Unit #: Q1 & 2    Date: 3/7/08 (9:40am)

Describe your complaint below:                    * Do you have Attachments? no

I request that a higher authority restrict Dr. Frishman from his negligent acts of malpractice which amount to psychological abuse to my peace of mind. I've spoken to him on only 4 occasions which occured on my arrival on 2/7, and three team conferences held on 2/14, 2/21, and 3/6. During our first conference he suggested that I may be obsessive compulsive, I agreed I had be yet diagnosed "delusional". I claimed Dr. Samuels' diagnosis as fraudulent. That I was not delusio nal. On our second conference he suggested that I may be obsessive compulsive, I agreed I had mild symptoms but did not need medication. After further testing by Dr. Cristiano proving so, further mention of it was dropped. During my last conference in which I suffered from a few = er and side effects of sudafed, Dr. Frishman referred to the "delusional" diagnosis of court appointed doctors. Although he claims he is evaluating me independant to those, FRAUDULENT REPO ats, he seems to be jumping the gun to the same conclusion with no meritable grounds. I AM NOT DELUSIONAL NOR DO I NEED UNNECESSARY MEDICATION. Whether bluffing or fishing, he threatened to xrite the court a letter to have me court mandated to take medication, yet has performed no rea sonable discovery. There is none to be made. He has also made his uneeded opinion clear that he doesn't believe I'll win my case. I understand he may only be trying to help, but I DO NOT SUFFER DELU SIONS. Professionals should not make diagnosises recklessly and jeopardize one's stable, sane, and peace of mind. I WAS FRAMED, AND NOT ILL!

Office of Patients' Rights Response:

Patients' Rights Advocate signature: _____    Date:_____

This complaint does not support an action of abuse or neglect, punitive withholding or
unreasonable denial of patients' rights. This issue is being referred to Program Director:
_____, Program # _____ for resolution and response.
**All responses should be provided directly to the patient.**

Form NSH-130 (Triplicate document)

Note: I will keep this top "white" page as prima facie evidence to a prejudice suffered due to the false and fraudulent reports of Jatinder K. Singh and Thomas E. Samuels.

"One who witnesses evil and does nothing to thwart that continuing evil, becomes part of that evil."

**Printed from THE DAILY JOURNAL, dtd. 08/15/2007**

## Convicted Star Trek stalker turns to wrestling stars

*By Michelle Durand*

A 29-year-old Burlingame man who served prison time
after stalking Star Trek star Jeri Ryan has now turned his attention to wrestlers, harassing them with phone calls, text messages and challenges to fight outside an East Bay studio, according to prosecutors.

Marlon Estacio Pagtakhan was arrested over the weekend in Hayward after placing a pair of boxing gloves on his car hood and challenging wrestlers in Hayward, said Chief Deputy District Attorney Steve Wagstaffe.

Pagtakhan's arrest pushed Burlingame police to submit its stalking case on which it had worked for months, Wagstaffe said.

The local case involves seven wrestlers, six from the studio and one from Illinois. On Tuesday, Pagtakhan pleaded not guilty to 14 felony counts of stalking and was ordered back to court Aug. 23 for a preliminary hearing. His bail was set at $800,000.

Pagtakhan, who served two years in prison for violating probation in the 2000 Ryan cyber-stalking case, lives in Burlingame with his mother and works as a mover for a San Francisco company.

Pagtakhan once belonged to the Hayward studio but was ousted in 2006, reportedly for inappropriate behavior. Some time that same year, prosecutors say he traveled to Illinois to visit a female professional wrestler for whom he had a romantic interest. Instead of contacting the woman in person, he reportedly told authorities he went to a concert.

When the alleged victims contacted police about his incessant cell phone calls, e-mail and instant messaging, they were directed to Burlingame police because of Pagtakhan's residence.

If convicted of the charges, Pagtakhan faces between 18 and 20 years in prison, Wagstaffe said.

He already has one trip through the California Department of Corrections under his belt. In May 2001, Pagtakhan was sentenced in a Los Angeles court to five years probation for sending hundreds of threatening and sexually explicit e-mails to Star Trek: Voyager star Ryan and her boyfriend, Brannon Braga, who was also the show's executive director.

According to published reports, one e-mail told Ryan, "I will bash your cranium in."

As part of his sentence, Pagtakhan was also ordered to have no contact with the couple for 10 years and seek mental treatment. When he failed to comply, Pagtakhan was incarcerated for two years.

Pagtakhan's conviction is considered one of California's first for cyberstalking.

Pagtakhan's harassment even played a role in Ryan's divorce from Illinois Senate hopeful Jack Ryan. A judge ordered some of the records sealed to protect the couple's son from Pagtakhan

Ryan played Seven of Nine, a part-human, part-alien crew-member on Voyager, a series spun off from the original Star Trek. Pagtakhan reportedly demanded money from her in some of the missives, leading to extortion as well as stalking charges.

Michelle Durand can be reached by e-mail: michelle@smdailyjournal.com or by phone: (650) 344-5200 ext. 102.

**Printed from THE DAILY JOURNAL, dtd. 08/24/2007**

## Competency questioned for convicted Star Trek stalker

*By Michelle Durand, Daily Journal Staff*

The Burlingame man who served prison time for
stalking Star Trek star Jeri Ryan may not be competent to stand trial on new charges he harassed
members of the East Bay wrestling club which booted him and a female wrestler in Illinois for whom he had
a romantic interest.

The preliminary hearing for Marlon Estacio Pagtakhan, 29, was postponed yesterday after his court-
appointed attorney Eric Hove questioned his client's ability to aid in his own defense. Judge Richard
Livermore suspended criminal proceedings and will appoint two doctors next Wednesday to asses
Pagtakhan's mental state.

Competency refers to a defendant's ability to aid in his or her defense during trial while sanity is the mental
state at the time of an alleged crime.

Hayward police arrested Pagtakhan Aug. 11 for reportedly standing outside a wrestling studio with a pair of
boxing gloves on his car hood , challenging members to fight. Pagtakhan previously belonged to the studio
but was dismissed in 2006 for "weird" behavior, said Chief Deputy District Attorney Steve Wagstaffe.

After learning that Pagtakhan had reportedly been harassing the wrestlers with phone calls and text
messages, they contacted Burlingame police which itself had been working for months on the cyberstalking
allegations.

Pagtakhan, who served two years in prison for violating probation in the 2000 Ryan cyber-stalking case,
lives in Burlingame with his mother and works as a mover for a San Francisco company.

The same year Pagtakhan left the studio, prosecutors say he traveled to Illinois to visit a female
professional wrestler for whom he had a romantic interest. Instead of contacting the woman in person, he
reportedly told authorities he went to a concert.

Pagtakhan is charged with 14 felony counts of stalking and three counts of making criminal threats. He
remains in custody in in lieu of $800,000 bail

If deemed competent, Pagtakhan will head to a preliminary hearing and possibly trial. A guilty verdict could
carry between 18 and 20 years in prison because of his prior conviction, Wagstaffe said.

In May 2001, Pagtakhan was sentenced in a Los Angeles court to five years probation for sending
hundreds of threatening and sexually explicit e-mails to Star Trek: Voyager star Ryan and her boyfriend
Brannon Braga, who was also the show's executive director.

According to published reports, one e-mail told Ryan, "I will bash your cranium in."

As part of his sentence, Pagtakhan was also ordered to have no contact with the couple for 10 years and
seek mental treatment. When he failed to comply, Pagtakhan was incarcerated for two years.

Pagtakhan's conviction is considered one of California's first for cyberstalking.

Ryan played Seven of Nine, a part-human, part-alien crew-member on Voyager, a series spun off from the
original Star Trek. Pagtakhan reportedly demanded money from her in some of the missives, leading to
extortion as well as stalking charges.

Michelle Durand can be reached by e-mail: michelle@smdailyjournal.com or by phone: (650) 344-5200 ext.
102.

**Printed from THE DAILY JOURNAL, dtd. 08/30/2007**

# Doctors appointed to evaluate accused stalker

*By Michelle Durand*

Two doctors were appointed yesterday to decide if the
Burlingame man who served prison time for stalking Star Trek star Jeri Ryan is competent to stand trial on new charges.

The new charges contend Marlon Estacio Pagtakhan harassed members of the East Bay wrestling club which booted him and a female wrestler in Illinois for whom he had a romantic interest.

The doctors will return their reports Sept. 26. If they deem the 29-year-old incompetent, he will be sent to a state hospital for treatment until doctors there find him able to aid in his own defense. A finding of competency reinstates criminal proceedings and sends Pagtakhan to a preliminary hearing on the evidence.

Hayward police arrested Pagtakhan Aug. 11 for reportedly standing outside a wrestling studio with a pair of boxing gloves on his car hood, challenging members to fight. Pagtakhan previously belonged to the studio but was dismissed in 2006 for "weird" behavior, said Chief Deputy District Attorney Steve Wagstaffe.

After learning Pagtakhan had reportedly been harassing the wrestlers with phone calls and text messages, they contacted Burlingame police which itself had been working for months on the cyberstalking allegations.

Pagtakhan, who served two years in prison for violating probation in the 2000 Ryan cyber-stalking case, is charged with 14 felony counts of stalking and three counts of making criminal threats.

He remains in custody in lieu of $800,000 bail.

Michelle Durand can be reached by e-mail: michelle@smdailyjournal.com or by phone: (650) 344-5200 ext. 102.

**Printed from THE DAILY JOURNAL, dtd. 10/25/2007**

# Star Trek stalker incompetent for trial

*By Michelle Durand*

The Burlingame man convicted of stalking Star Trek star Jeri Ryan is incompetent to stand trial for allegedly harassing members of the East Bay wrestling club which booted him and a female wrestler in Illinois for whom he had a romantic interest, a trio of court-appointed doctors concluded.

The decision propels Marlon Estacio Pagtakhan to a state hospital for treatment rather than toward a preliminary hearing on 14 felony counts of stalking and three counts of making criminal threats.

Competency refers to a defendant's ability to aid in his or her defense during trial while sanity is the mental state at the time of an alleged crime.

If doctors at the hospital ever deem Pagtakhan capable of aiding in his own defense, he will return to San Mateo County for prosecution. A guilty verdict could carry between 18 and 20 years in prison because of his prior conviction. Hayward police arrested Pagtakhan Aug. 11 for reportedly standing outside a wrestling studio with a pair of boxing gloves on his car hood, challenging members to fight. Pagtakhan previously belonged to the studio but was dismissed in 2006 for "weird" behavior, said Chief Deputy District Attorney Steve Wagstaffe. The same year Pagtakhan left the studio, prosecutors say he traveled to Illinois to visit a female professional wrestler for whom he had a romantic interest. Instead of contacting the woman in person, he reportedly told authorities he went to a concert.

After learning Pagtakhan had reportedly been harassing the wrestlers with phone calls and text messages, they contacted Burlingame police which itself had been working for months on the cyberstalking allegations. Pagtakhan, who served two years in prison for violating probation in the 2000 Ryan cyber-stalking case, lives in Burlingame with his mother and worked as a mover for a San Francisco company.

In May 2001, Pagtakhan was sentenced in a Los Angeles court to five years probation for sending hundreds of threatening and sexually explicit e-mails to Star Trek: Voyager star Ryan and her boyfriend Brannon Braga, who was also the show's executive director. According to published reports, one e-mail told Ryan, "I will bash your cranium in."

As part of his sentence, Pagtakhan was also ordered to have no contact with the couple for 10 years and seek mental treatment. When he failed to comply, Pagtakhan was incarcerated for two years.

Pagtakhan's conviction is considered one of California's first for cyberstalking.

Ryan played Seven of Nine, a part-human, part-alien crew-member on Voyager, a series spun off from the original Star Trek. Pagtakhan reportedly demanded money from her in some of the missives, leading to extortion as well as stalking charges.

Pagtakhan has been in custody in lieu of $800,000 bail

Michelle Durand can be reached by e-mail: michelle@smdailyjournal.com or by phone: (650) 344-5200 ext. 102.

**Printed from THE DAILY JOURNAL, dtd. 12/22/2007**

# Incompetent stalking suspect still jailed

*Daily Journal Staff Report*

The Burlingame man accused of harassing members of an East Bay wrestling club and previously convicted of stalking Star Trek star Jeri Ryan is still in a San Mateo County jail despite being declared incompetent.

For the second time in a week, Judge Jack Grandsaert called Marlon Estacio Pagtakhan, 30, to court in hopes of finding out why he is still in jail rather than Atascadero State Hospital. After learning Friday Pagtakhan is still in San Mateo County, Grandsaert ordered him back again Jan. 2 for another status update.

The state hospital system, crowded with patients and strapped by dwindling staff, has been declining to accept new defendants, leaving them untreated in local criminal facilities that are often times crowded themselves.

What remains unclear is, if Pagtakhan and any other incompetent defendants remain at the jail, if the hospital will be threatened with contempt as happened two years ago under similar circumstances. By Pagtakhan's next court appearance, Grandsaert will be done as presiding judge and the matter falls to Judge Cliff Cretan.

On Oct. 24, two of three court-appointed doctors found Pagtakhan incompetent and weeks later he was ordered hospitalized rather than prosecuted on 14 felony counts of stalking and three counts of making criminal threats. Competency refers to a defendant's ability to aid in his or her defense during trial while sanity is the mental state at the time of an alleged crime.

Hayward police arrested Pagtakhan Aug. 11 for reportedly standing outside a wrestling studio with a pair of boxing gloves on his car hood, challenging members to fight. Pagtakhan previously belonged to the studio but was dismissed in 2006 for allegedly "weird" behavior.

Pagtakhan, who served two years in prison for violating probation in the 2000 Ryan cyber-stalking case, lives in Burlingame with his mother and worked as a mover for a San Francisco company.

**Printed from THE DAILY JOURNAL, dtd. 02/25/2008**

## Stalking suspect claims civil rights violation

*By Michelle Durand*

The Burlingame man previously convicted for stalking Star Trek star Jeri Ryan and currently awaiting transfer to a state psychiatric hospital has filed a claim with San Mateo County claiming the Burlingame Police Department, district attorney, the judge and court-appointed doctors all violated his civil rights and invaded his privacy.

The San Mateo County Board of Supervisors is scheduled to deny the claim of Marlon Estacio Pagtakhan, 30, at its Tuesday meeting. Once denied, Pagtakhan has 90 days to filed a lawsuit against the entities.

Pagtakhan's claim alleges "civil rights and liberties violations, professional malpractice, criminal libel, fraud and invasion of privacy" by the various agencies when he was "wrongfully arrested."

On Oct. 24, two of three court-appointed doctors found Pagtakhan incompetent and weeks later he was ordered hospitalized rather than prosecuted on 14 felony counts of stalking and three counts of making criminal threats. Competency refers to a defendant's ability to aid in his or her defense during trial while sanity is the mental state at the time of an alleged crime.

Pagtakhan has not been transported to Atascadero State Hospital, ostensibly because the facility is not accepting new patients, and he remains at Maguire Correctional Facility. The state hospital system, crowded with patients and strapped by dwindling staff, has been declining to accept new defendants, leaving them untreated in local criminal facilities that are oftentimes crowded themselves.

Periodically, he is ordered back to court for a status conference but as of yet a transfer date has not been determined.

Pagtakahn has been in custody since Aug. 11— the time his claim alleges the violations began — when Hayward police arrested him for reportedly standing outside a wrestling studio with a pair of boxing gloves on his car hood, challenging members to fight. Pagtakhan previously belonged to the studio but was dismissed in 2006 for allegedly "weird" behavior.

The same year Pagtakhan left the studio, prosecutors say he traveled to Illinois to visit a female professional wrestler for whom he had a romantic interest. Instead of contacting the woman in person, he reportedly told authorities he went to a concert. After learning Pagtakhan had reportedly been harassing the wrestlers with phone calls and text messages, they contacted Burlingame police which itself had been working for months on the cyberstalking allegations.

Pagtakhan served two years in prison for violating probation in the 2000 Ryan cyber-stalking case; his conviction is considered one of California's first for cyberstalking.

In May 2001, Pagtakhan was sentenced in a Los Angeles court to five years probation for sending hundreds of threatening and sexually explicit e-mails to Star Trek: Voyager star Ryan and her boyfriend Brannon Braga, who was also the show's executive director. According to published reports, one e-mail told Ryan, "I will bash your cranium in."

As part of his sentence, Pagtakhan was also ordered to have no contact with the couple for 10 years and seek mental treatment. When he failed to comply, Pagtakhan was incarcerated for two years.

Ryan played Seven of Nine, a part-human, part-alien crew-member on Voyager, a series spun off from the original Star Trek. Pagtakhan reportedly demanded money from her in some of the missives, leading to extortion as well as stalking charges.

Name Marlon E. Pagtakhan

Address Napa State Hospital Q1 Q2

2100 Napa Vallejo Hwy.

Napa, Ca. 94558-6293

~~CDC or~~ ID Number 2074227

## First Appellate District (San Francisco)
### 350 McAllister St., SF. Ca. 94102-3600
(Court)

Marlon E. Pagtakhan

Petitioner

vs.

Ed Fulk ET AL., Greg Munks

Respondent (official case report requested)

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

Note: 33 pages plus attachments
(see page 3 for Notice Of Contents)

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- ✳ If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**
(1)

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 60(e)

This petition concerns:

☐ A conviction      ☐ Parole

☐ A sentence      ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

☒ Other *(specify):* **False arrest & imprisonment, fraudulent commitment**

1. Your name: **Marlon Estacio Pagtakhan**

2. Where are you incarcerated? **Napa State Hospital**

3. Why are you in custody? ☐ Criminal Conviction ☐ Civil Commitment ☒ **pre-preliminary detainee (no legitimate grounds)**

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

**I was falsely arrested (framed) and have been fraudulently committed prior to a preliminary hearing pending charges below.**

b. Penal or other code sections: **646.9 (a), 646.9 (c)(2), and 422**

c. Name and location of sentencing or committing court: **Superior Court, County of San Mateo, 400 County Center, Redwood City, CA. 94063**

d. Case number: **NF369118A, MH463328A, HC1973**

e. Date convicted or committed: **October 24, 2007 (committed)**

f. Date sentenced: **transferred to Napa State Hospital 2/7/08**

g. Length of sentence: **6 months _minimum_**

h. When do you expect to be released? **UNKNOWN (PC1370 is being abused to compel a defendant _into taking a plea bargain_)**

i. Were you represented by counsel in the trial court? ☐ Yes. ☒ No. If yes, state the attorney's name and address:

**I was _misrepresented_ by a "_devious_" fraud Eric M. Hove, 461 Laurel St., San Carlos, Ca. 94070.**

4. What was the LAST plea you entered? *(check one)*

☒ Not guilty ☐ Guilty ☐ Nolo Contendere ☐ Other: **n/a**

5. If you pleaded not guilty, what kind of trial did you have?

☐ Jury ☐ Judge without a jury ☐ Submitted on transcript ☒ Awaiting trial

1  (attachment insert) **Notice Of Contents**

2

3  • Grounds Ø and 17-19 added.
       (appeals and new grounds)

4

5  • "Prejudices Suffered" added.
       (to show prima facie case for relief)

6

7  • "Prayer For Relief" added.
       (what I request the Court to order)

8

9  • U.S. District Court Judgment attached.
       (habeas corpus history)                    4 pages

10

11  • Superior Court Denial attached.
       (habeas corpus history)                    5 pages

12

13  • 59 paged document #0-56 attached.
       (notes and figures regarding my case, and diary of incarceration and proceedings)

14

15  • 3 criminal complaints filed attached.
       (complaints I filed with Court and District Attorney)     16 pages

16

17  • Claim Against The County attached.
       (included to display prejudice and civil rights violated)  9 pages

18

19  • Letter Requesting Relief attached.
       (to Governer, Attorney General, Federal Court, Board of Supervisors, State Bar)     6 pages

20

21  • Letter to D.A. & Sheriff attached.
       (regarding crimes in court committed against me, and prejudice suffered)     11 pages

22

23  • 3 Napa State Hospital complaints attached.
       (display & documented prejudices suffered instituted by the County)     4 pages

24

25  • All Pro Moving business plan attached.
       (a liberty I'm being prejudiced of pursuing)     1 page

26

27  • Daily Journal & SF Chronicle articles attached.
       (photocopies of articles exibiting prejudice)

28

7. Ground 2 or Ground Ⓞ (if applicable):

The Superior Court **erred in denial in it's refusal** to review petition grounds 1 through 9, grounds 11, 12 and 16 violating my rights to Due Process in the prosecution of the writ.

a. Supporting facts:

I filed for a writ of habeas corpus **challenging the legality of my arrest and detention** (imprisonment) addressing the following grounds: (1) **false arrest**, (2) **entrapment**, (3) **compelled interrogation**, (4) **unlawful seizure**, (5) excessive bail, (6) **false police report**, (7) imposed slavery, (8) **equal protection violation by police**, (9) **speedy trial right violation**, (10) fraudulent competency proceedings, (11) **defamation**, (12) denial of right to jury trial, (13) fraudulent diagnosis by court appointed doctors, (14) illegal commitment, (15) refusal to disclose documents to myself, (16) **malicious prosecution**, with the Superior Court. Grounds 10, and 13-15 were irrationally and vaguely addressed. Grounds 1-9, 11-12, and 16 were unreviewed **without** stated authorities. Habeas Corpus actions are used to address critical issues *at any time*. My grounds are critical to my confinement as I **shouldn't have been arrested to begin with.**

b. Supporting cases, rules, or other authority:

**PC § 1473-1508.**, Due Process Clause of both State and Federal Statutes, **def.** a writ employed to bring a person before a court.. to ensure.. party's.. detention is not illegal. •.. to being used to test the legality of an arrest.. In this petition **will you find many procedural defects in which to choose** from that you may grant relief. **I had a life.**

6. GROUNDS FOR RELIEF 1st of 16 total grounds

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

I was **illegally arrested** excercising my first state amendment right to be free, and independent, defending life and liberty, protecting property, and pursuing and obtaining safety, happines and privacy, by the *Burlingame Police.*

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

I've been **harrassed and blackmailed** *by slander* by the alleged victims (affiliates of APW), for over one year. I paid Roland Alexander $2,000 to be trained as a pro-wrestler. *Instead I become subject to slavery and am disrespected and made fun of.* I drop out and request a *partial refund.* Roland then spreads lies. Harrassment between APW affiliates and myself become mutual via email and cell phone. I show up on 8/11/07 to speak with my former trainer. *Later that night I am invited to the APW office for a release from my APW contract and a return of my money by Roland and Shannon Ramirez.* I am trapped in a **malicious arrest** by two officers of the Burlingame Police, **violating guidlines** learned under PC13519.05. (SEE NEXT GROUND AND LETTER FOR RELIEF TO GOV. ETAL ATTACHED)

b. Supporting cases, rules, or other authority (optional):   AND LETTER FOR RELIEF TO GOV. ETAL ATTACHED)
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

CA Art. 1 § 6, 13th Amendment (1) CA Art. 1 § 1, please see attachment (59 pages numbered 0-56) pages # 0, **5**, 12-14, 20-25, 29 (a)(b), **30-34**, 39, 41-42 for declarations of slavery and harassment. See **page #54** for timeline (s). PC 118.1.

11-12.1

7. Ground ②or Ground ——— (if applicable):

My 14th state amendment and 6th Amendment rights were violated in a conspiracy and **entrapment by the Burling-ame Police** in which there was an **unnecessary delay** in arrest after a felony complaint was filed. Also the **5th Amendment, and 14th Amendment.**

a. Supporting facts:

The detective admitted to having investigated the situation for **at least "6 months prior"** to the arrest. He was prejudice and negligent to my civil rights when **he solicited with affiliates of APW** to procure myself to be charged and arrested. **He permitted the alleged victims to continue their harassment to incite and induce me** to retaliate. The detective then ignored the crimes committed against me. **I had previously filed a harassment complaint with the BPD against APW in 1/07** but did not press charges. I could have been warned or notified when a complaint was filed against me. Instead, the detective and partner chose a malicious arrest even after having surveyed my residence. (see pages #**27(a)** -28, 35.) A restraining order must have been issued, yet **I was never served.** I always felt Boland and company setting **(framing)** me up and even expressed this concern with the police when I filed a complaint. That has become reality in the **negligence** and fraud committed by an **unprofessional** officer. (SEE ATTACHED LETTER FOR RELIEF TO GOVERNOR)

b. Supporting cases, rules, or other authority:

CA Art. 1 §14, 6th Amendment, **Due Process Clause,** PC **182(a) (1)(2)** (4), **PC153,** PC134 (re: fraudulent report), see attachment pages #26,**30-34**,36-39,48,**54**, and **56 for relating case law.** **Rule 48(b)** Federal Rules of Criminal Procedure for unreasonable and unnecessary delay. McNeely v. Blanas 336 F. 3d 822,824, Dickey v. Florida 398 us 30. **PC18.1.** PC131.

7. Ground 2 or Ground __3__ (if applicable):

The **detective** violated my 15th state amendment and 5th Amendment rights when he **compelled me in an interrogation** under false pretenses *and continued after I refused to speak further without counsel* then **resulting** in an illegal seizure.

a. Supporting facts:

During the ride from Hayward to the Burlingame Police Department, the detective promised *under False pretenses* he would make a report of my side of the story as I expressed crimes committed against me. Upon interrogation the detective began taking *leading statements.* I then **refused to speak more without counsel** as he attempts to put words in my mouth. *He **continues** questioning. Later in closing he asks if I have anything else to say in my defense or any evidence to support my story.* I reply so, explaining I **had saved journals** and emails on a laptop at home as I had **intended of filing a lawsuit against Roland and APW.** *Given the promise of having the material printed for an investigation on crimes committed against me, they escort me home. Instead, the leading officer angrily and aggressively disconnected a PC tower from an entertainment center, and sluggishly pulled my notebook from a monitor and music studio workstation without a warrant.* **(note lines 240-264 of pages #33-34)** I was also *never shown a warrant "as requested upon arrest."* PC 842.

b. Supporting cases, rules, or other authority:

CA Art. 1 § 15, 5th Amendment. Due Process Clause, *Miranda,* **Escobedo** v. Illinois 378 us 478 (continued questioning led to **information** and seizure of PC and laptop, *then later seizure of model replica martial arts weapons*). Fruit of poisonous tree doctrine, see page #56, 14th Amendment (1). PC 118.1.

7. Ground 2 or Ground __4__ (if applicable):

The detective violated my 13th state amendment and 4th Amendment rights in his **improper seizures of my property** conducted as a result of an improper interrogation, the first of which was unwarranted.

a. Supporting facts:

On 8/11/07 about an hour or so after my arrest, and illegal interrogation, I am brought home, under escort to produce exonerating evidence. The detective promised to print out my journals and saved emails and to give me copies to aid in my defense. I also had informed him I had a model katana and naginata at the BPD. He wasn't concerned. Instead of letting me show him files to print, he **angrily and aggressively** disconnects both computers in a neglectfully and **damaging demeanor**, seizing them to be used against me. I later refuse to speak with him during a contact visit the morning before my arraignment. I permit him to record my scolding of him. He claims that **some parts of my initial interrogation was lost.** I now believe **he may have tampered with it. (see page #6)** Days later he calls my sister to arrange a meeting with her at my studio. He seizes the replica katana and naginata telling my sister he did not intend to use it as evidence, that he had enough to convict me.

b. Supporting cases, rules, or other authority:

CA Art. 1§13, 4th Amendment; CA Art. 1§15, 5th Amendment, Miranda, Escobedo v. Illinois 378 us 478. **Fruit of the poisonous tree doctrine**, PC 153, see pages #0,5, 30-31 lines 47-78, PC 135, PC 134, PC 146 ('the detective concealed exonerating evidence, prepared a false report after an illegal arrest & seizure). CA. Art. 1§28(d) Right to Truth-in-Evidence, PC 118.1.

7. **Ground 2 or Ground  5  *(if applicable):***

The **detective conspired** with the deputy District Attorney to have the Court raise an already **excessive bail** from $-600,000 to $800,000 *deliberately violating my 12th state amendment and 8th Amendment rights in retaliation.*

a. **Supporting facts:**

On 8/14/07 I was visited by the arresting officer and detective in San Mateo County Jail before my arraignment. This morning in a contact visit did he explain that the audio recording of my interrogation was partially distorted, and that he needed a second interview. I refused. He pushed, and I ended up permitting him to record myself scolding him on his misconduct. I explained to him that I was set up with his knowledge, and that I would take this case all the way to trial. I informed him that I would move for an OR. He later claimed that the tape which was distorted *was actually a videotape.* He was present at my arraignment with two affiliates of APW. When I was called forward, the detective and the two males **huddled up** together along with the deputy District Attorney. Shortly after, *my already high bail was* **raised even higher.** They leave together. (see pages #27(b) argument, 31 lines 96-109) The detective has also made some condescending insults and a sadistic remark.

b. **Supporting cases, rules, or other authority:**

**CA Art. 1§12, 8th Amendment.** *I was arrested in a trap having been invited for a release contract and return of my money. Earlier I had requested a truce or my money returned. I brought* **two pairs of extra large** *lace-up* **Pro sparring** *gloves to show Victor I wasn't afraid of him. I posed no threat and this bail is excessive.* **(no criminal intent)**

11-12.1

7. Ground 2 or Ground **6** *(if applicable):*

The detective has compiled a ***fraudulent police report*** in an effort to *inflict cruel and unusual punishment* violating the 17th statem amendment and 8th Amendment as well as Penal Code 134 in his *malicious accusations* against me. **(PC 118.1)**

a. Supporting facts:

The police report was falsified by the detective and committed under perjury by the affiliates of All Pro Wrestling. I ***was not*** arrested "in the action of causing a scene or picking a fight" as the report stated. (Read by Dr. Samuel) From April '06 through September '06 ***I did not*** threaten by way of text, emails, or phone calls *any one of the victims,* "repeatedley", ***nor*** did I daily sexually harass Melissa or Ms Chif asking for sexual favors. This is a false claim and perjured statement in which I challenge him to provide credible evidence. I was a member of APW, friends and acquaintences with the alleged victims *at those times,* I ***never*** threatened ***any*** female. Many messages sent from mid-September '06 were directed to Rdand, kafu and Jason. The other alleged victims were only sent carbon copies to prove a point. Given the knowledge of the revelation in this petition, it is only obvious *the detective instituted gross prejudice in his compilation of the police report.*

b. Supporting cases, rules, or other authority:

PC 134. CA Art. 1 § 17, 8th Amendment. **Napue v. Illinois 360us 264** (in regards to perjured statements *contributing to the fraudulent report in which prosecution is based*) also violating CA Art. 1 § 15 and the 5th & 14th Amendments. PC 474, PC 620 see pages #33-34 lines 240-264, 48. (see definition of fraud on the court on attachment page #4) PC 118.1.

11-12.1

7. **Ground 2 or Ground** 7 *(if applicable):*

The detective and District Attorney are grossly negligent of the alleged victim's violations of the 6th state amendment and 13th Amendment which *were imposed on myself as I was bound by fraud, libel, and blackmail.*

a. **Supporting facts:**

From April '06 to September '06 I was subject to *forced labor, in service* to Roland Alexander of All Pro Wrestling *and* to Jason Deadrich of Black Pants Productions. This slavery was *deceitfully disguised and imposed on us students during pre-camp orientation as "paying our dues".* (see page #**23**) Obligated to the above and others including Gabriel Ramirez *and kafu,* I performed a multitude of tasks. (see page #32 lines 157-177) After all the work I had contributed to the organization I was continually outcasted and joked of. *For this reason atop others I decided to leave the organization for another to pursue my career.* Roland refused to let me go unless I paid him more money. *He then* **spread lies and gossip** *that I threatened to kill him, that I spoke ill of the other students, that I've always been a problem, amongst others.* (note: matter of fact on page #20, 54 Timeline(s))

b. **Supporting cases, rules, or other authority:**

CA. Art 1 § 6, 13th Amendment (1), **PC181, PC 236.1, PC 182(c) (1)(2)** are violations committed by All Pro Wrestling in which I was victimized. (see attachment pages #7, 23, 39) *Prosecutors are in violation of CA Art. 1 § 7 and the 14th Amendment's Equal Protection of the laws.* **PC 118.1.**

7. Ground 2 or Ground __8__ (if applicable):

The Burlingame Police and District Attorney have concealed the _crimes committed against me_ by the alleged victims of APW **violating my right to equal protection** protected by the 7th state amendment and 14th Amendment. **(SEE ATTACHED PRO-PER COMPLAINT)**

a. Supporting facts:

From July '06 through August '07, with some suspect deception and fraud resuming, I've been victimized by affiliates of All Pro Wrestling (which may include the Burlingame Police detective in regards to **PC182(a)(2)**, PC153) in the following crimes: PC181, **PC 182(a)(2)**, PC182(a)(4), PC519(2), PC519(3), PC519(4), PC137(a), PC137(b), PC137(c), PC136.1(1), PC136.1(2), PC136.1(b)(1), PC136.1(b)(3), PC474, PC620, PC422, PC415, PC646.9, PC653m, PC236.1, PC153, PC186.22.(e)(1), PC186.22.(e)(8), PC186.22.(e)(18), PC186.22.(e)(24) and PC186.22.(e)(19) _in one form or another as explained in the 59 paged attachment numbered 0 to 56._ I believe the detective is knowledged of these acts as they **under God have had manifested** through the eyes of those affiliated with All Pro Wrestling in the time frame allocated. Whether knowledged or negligent, permittance of the crimes committed against me inducing my arrest equals **entrapment.**

b. Supporting cases, rules, or other authority:

CA Art. 1 §7, 14th Amendment, _Due Process Clause_ • To establish entrapment, the defendant must show that he or she _would not have commited the crime but for the fraud,_ _or undue persuasion._ (see page #54 time line(s)) PC118.1. _Manifesta probatione non indigent._ PC24 PC131.

✱ REF: MY DOCUMENTS/STARTOFITALL.TXT, PARTIALREFUNDREQUEST.TXT, LAST.TXT (on notebook illegally seized)

11-12.1

7. Ground 2 or Ground __9__ (if applicable):

The _deliberate delay_ of the _District Attorney_'s prosecution after a complaint was filed _violates_ the 14th state amendment as well as the _speedy trial right_ secured by the 15th state amendment and 6th Amendment.

a. Supporting facts:

The detective tells me he has been investigating my case for _six months prior to my arrest_. I learn from counsel the D.A. has been as well. Since a complaint was filed as early as 2/07 (possibly sooner), and the charges consist of multiple _felonies dating back to 4/06_, there is _no doubt_ in the _unnecessary delay_ present before my 8/14/07 arraignment _violating CA Art. 1 § 14_. Till this day have I _not_ been given a copy of the complaint as well after repeated requests. In addition to _pre-arrest_ and pre-arraignment delay, the D.A. conspired with _court appointed counsel and doctors_ to fraudulently use the competency proceedings to _suspend time and illegally send me to a mental hospital_. I've not been granted the right to a preliminary hearing _within the 10 statutory days_ of my arraignment, instead I will be granted one _AFTER A "MINIMUM OF (now) 11 MONTHS."_ This "cover-up and fraud" _grossly violates_ the _Due Process Clause_.

b. Supporting cases, rules, or other authority:

CA Art. 1 § 14, CA Art. 1 § 15, 6th Amendment, 14 Amendment Dickey v. Florida 398 us 30, Klopfer v. North Carolina 386 us 213, McNeely v. Blanas 336 F. 3d 822, 824 n. 1 (9th Cir. 2003), see attachment pages #26, 40*, 46-47, 51-54. Rule 48 (b) Federal Rules of Criminal Procedure. PC 1382. Failure to file information or bring case to trial..

11-12.1

7. Ground 2 or Ground ____10____ (if applicable):

The District Attorney *conspired* with court appointed counsel and **doctors** *to fraudulently abuse competency proceedings* to illegally send me to a mental hospital committing moral turpitude and malpractice.

a. Supporting facts:

On the evening of 8/22/07 I meet Eric M. Hove for the first time. After his repeated begging that I waive time, I assert that I want a speedy trial. The next morning in court, the detective is joking with the deputy D.A.. He leaves the courtroom from sitting behind her. Shortly, she walks to meet Eric at the aisle and they exit the courtroom. (possibly to meet the detective) They return a moment before my case is called and Eric proclaims doubt. After evaluations all three doctors tell me that I am competent enough to aid in my defense, but two (Dr. Singh & Dr. Samuel) submit negative reports. This is an act of moral turpitude, fraud, (legal) malpractice, and abuse of process as Eric only spoke with me, no more than ten minutes before prematurely proclaiming doubt. Nor have I ever spoken incompetent to him or both doctors. He did this because I refused to waive time, (see attachment pages #26, 40*, 46-47, **51-54**) Misrepresentation. (SEE ATTACHED LETTER TO D.A. & SHERIFF)

b. Supporting cases, rules, or other authority:

• Rules of Procedure of the State Bar Title IV Part B 2.3 Offenses involving **moral turpitude, fraud, dishonesty** or **concealment.***People v. Pokovich 39 C4th 1240, 1253. Welfare & Institutions Code Art. **7§5331.** (the D.A. has *violated Due Process with public (media) s/ander) CA Art. 181, CA Art. 1§15, CA Art. 18 17, CA Art. 18 29. **14th Amendment**

7. Ground 2 or Ground **11** (if applicable):

The **District Attorney** has violated the Due Process Clause protected by the 15th state amendment and 5th Amendment by the *offensive disclosure of false and fraudulent material* to the media in **pre-trial slander and defamation**.

a. Supporting facts:

In August '07, October '07, and December '07 the Court and prosecutors have *voluntarily* released false information to the media which are *known (matter-of-factly)* by them to be false, disputed fraud, and obvious perjured hearsay. The District Attorney of San Mateo is in *fact closely tied to articles published in the Daily Journal. They deliberately misconstrued information taken from an application for counsel and disclosed that "I was 30 years old and lived with my parents."* THIS IS FALSE. *I am 29, was living independently, and financially supported my parents.* IN ADDITION TO THAT DEFAMATION, *the District Attorney having conspired to illegally send me to a hospital, used the fraudulent reports to publicly SLANDER ME AS "INCOMPETENT TO STAND TRIAL" as a cover up of their own very fraudulent case and prosecution pending against me.* I AM COMPETENT! (I am *NOT* the incompetent 30 year old living with his parents.) This is **LIBEL!** (ous) (SEE ATTACHED LETTER TO D.A. & SHERIFF)

b. Supporting cases, rules, or other authority:

CA Art. 1815, **5th Amendment.** denied speedy trial, **People v. Pokovich** 39 C4th 1240, 1253 (use of competency proceedings for defamation and slander prior to trial) • **Rules of Procedure of the State Bar** Title **IV** Part B2.3 (the D.A. and court appointed counsel are guilty of these offenses as well as the Court) **Chapman ET AL. v. California** 386 us 18

(16)

7. Ground 2 or Ground  12  (if applicable):

The District Attorney and court appointed counsel have consp-
ired and achieved to oppress me in unnecessary suspended
proceedings in an effort to push a plea bargain **denying my**
**right to trial by jury** secured by the 16th state amendment.
(1370 is being used to **compel** acceptance of a plea bargain)

a. Supporting facts:

When I first met Eric M. Hove he misinformed me exp-
laining that my prior of seven years ago will be used aga-
inst me, and that he needed me to waive time to recieve
the file. I asserted I wanted a speedy trial and would
fight this case all the way because I was set up and
the prosecution's case was weak and would fall apart
with a speedy trial. He repeatedly asked me to waive ti-
me. Refusing, he finally agreed. The next morning he
deceitfully misrepresents me proclaiming doubt to susp-
end proceedings, after conspiring with the deputy D.A. Si-
nce then he has been a repeated fraud braking repeat-
ed promises. He is a former deputy D.A. himself with a-
pparent loyalties. Since I was ordered for mal treatment
Mr. Hove attempted to comfort me with the explanation
of time credits, and that I am still recieving them. Des-
pite his and Omar's promises of questioning witnesses, th-
ey haven't. Omar spoke of Eric working wonders. **I was**
**framed** and am not interested in those **plea bargain wonders.**

b. Supporting cases, rules, or other authority:  (SEE ATTACHED NAPA STATE HOSPITAL COMPLAINTS)

CA Art. 1 §16, CA Art. 1 §29, 6th Amendment, 14th Amendment
• Due to the fact that Mr. Hove has caliberated with
the D.A. in moral turpitude, I was never legally given
my right "to have the Assistance of Counsel." Klopfer
v. North Carolina 386 us 213 (see attached timeline page #54)
PC 131. misrepresentation, concealment, fraudulent conduct

(17)

11-12.1

7. Ground 2 or Ground __13__ (if applicable):

Court appointed doctors _knowingly and willingly_ **misdiag-
nosed me by way of fraud** to be incompetent in their
reports submitted to the Court _violating Penal Co-
de §134 Preparing false documentary evidence._

a. Supporting facts:

After I was _fraudulently presumed incompetent by
court appointed counsel_ **because of my refusal to wa-
ive time and assertation** that I wanted to exerci-
se my speedy trial right, I was eventually evaluated
by Dr. Singh (recommended by the D.A.) and Dr. Samuel
(recommended by counsel). In Sept. '07, Dr. Singh replies
"_you're very articulate and smart and I believe you
can help your lawyer in your defense._" after a suspic-
ious evaluation. On Oct. 23 '07, Dr. Samuel replies "_We-
ll you're competent enough to stand trial._" after
a very short and unproffesional evaluation. (please
read attachment pages **#26, 40, 46-47, 51-53** for thoroug-
h explanation). They were the first and ~~third~~ doctors.
The second doctor which submitted a positive comp-
etency report conducted _a very formal and profess-
ional evaluation in which I had no suspicions._ **This
petition,** the prior to the U.S. District Court, and the 59
paged attachment, **should be proof** enough to competency.
(SEE ATTACHED LETTERS AND COMPLAINTS)

b. Supporting cases, rules, or other authority:

PC 134, CA Art. 1815, CA Art. 1829, Amendment 6th & 14th
Welfare & Institutions Code Art. 7 §5331 "_..no person may
be presumed to be incompetent because he has been
evaluated or treated for a mental disorder._" **Evidence**
**Code § 177. Dependant person** (_which I am not_) see at-
tachment pages #3-4, 7, 26, 40, 46-47, 51, 53. **Tort.**

11-12.1

7. Ground 2 or Ground **14** (if applicable):

The Court is in violation of my rights to *Due Proc-ess* secured by the '5th state amendment and 5th and 14th Amendments imposing an *illegal pla-cement order committing me* to a mental hospital. (SEE ATTACHED LETTERS AND COMPLAINTS)

a. Supporting facts:

The Court has been negligent of my rights to Due Pr-ocess despite my *repeated objections*. **On Oct 24 '07, I objected** and made an oral motion to the Judge, (Honorable Jahk Grandsaert) for a *Marsden hearing* on grounds of a *misrepresentation (counsel)* and *fraud on the court (negative doctor reports )*. He then took my motion under advisement but said he would stand by the reports despite my dispute as I cl-aimed "I am very competent." *I am later informed by Eric Hove that I will be granted a Marsgen hear-ing "after" treatment.* On Nov. 16, counsel was not pres-ent and *I again* **address** the court in **my dispute** of the fraudulent misconduct, objecting to the illegall-ity of the proceedings. On Dec. 14, counsel was not pres-ent and *that fact is made a laughing matter*. On Dec. 21 '07, Eric and the Judge speak on record of the delay in transfer status. After, I again speak up for myself and serve the D.A. with prior petition papers. (see court transcripts)

b. Supporting cases, rules, or other authority:

CA Art. 1&15, 5th and 14th Amendments, *Fraud on the court, Intrinsic fraud, Fraud, Libel, (fraudu-lent) Misrepresentation, Misprision*, Magna culpa dolus est, Manifesta probatione non indigent, Jus et fraus nunquam cohabitant, McNeely v. Blanas 336 F. 3d 822, 824.

(19)

11-12.1

7. Ground 2 or Ground **15** *(if applicable):*

My **court-appointed counsel** has violated my Due Process Rights secured by the 15th and 29th state amendments and 5th and 14th Amendments in his **refusal to disclose** to me the complaint add discovery items.

a. Supporting facts:

My court-appointed counsel Eric M. Hove, *has been negligent to my Due Process Rights as well as a gross misrepresentation.* I've discovered the fact that he is a former prosecutor and he has confirmed that. Omar (appointed investigator) told me he became a defense attorney *very recently in March '07.* It seems that *he is still very loyal to prosecutors* as he has *repeatedly failed to deliver assistance.* I've repeatedly requested a copy of the complaint, police report, the "exonerating text files on my illegally seized laptop", as well as copies of Dr. Singh and Samuel's reports. He has always been an *insult to my intelligence* by repeatedly promising to conduct questioning *and investigations, to no avail!* In order to win my trust *he talks the talk but doesn't walk the walk!* He is a fake who has done nothing but fraudulently suspend/proceedings and continued to insist I waive time! **(see attachment)**

b. Supporting cases, rules, or other authority:

CA Art.1 §15, CA Art.1 §29, 5th & 14th Amendments, *Penal Code § 1054.1,* under **CA Art.1 §14** "..shall immediately give the defendant a copy of the complaint.." under **CA Art.1 §28(d)** "..relevant evidence shall not be excluded in any criminal proceeding.." (see page #11 for original request)

✱ REF: MYDOCUMENTS/STARTOFITALL.TXT, PARTIALREFUNDREQUEST.TXT, LAST.TXT (on notebook (illegally seized)

(20)

11-12.1

7. Ground 2 or Ground **16** *(if applicable):*

The **District Attorney** is perpetrating a ***malicious p-rosecution*** in their excessive felony charges in place of probable *misdemeanor offenses* displaying misconduct in their *fraudulent* failure to commence proceedings.

a. Supporting facts:

I was arrested for seeking a truce; a return of my $2,000, or to have a boxing match with Kafu in the ring. This was late afternoon, and I left the lot across the street from the Hayward gym in peace. *Roland and Shannon invited me* back *to the facility to sign a release contract and pick up a return of my money.* I even spoke with Roland on the way back that night in which he assured me "no tricks". I was maliciously apprehended in a unnecessary display of force. The D.A. is now maliciously charging me with excessive felonies in hopes I take a plea bargain. They **have failed to show cause** and committed *abuse of process to suspend proceedings.* Probable cause *leans towards the more applicable misdemeanors of PC 412, Boxing, PC 415, Fighting; noise; offensive words, PC 653m, Telephone calls or contact by electronic communication device with intent to annoy, rather than felonies.*

b. Supporting cases, rules, or other authority:

CA Art. 1 § 1, CA Art. 1 § 15, CA Art. 1 § 28(d), 5th /6th /14th (1) Amendments, *Penal Code § 412, § 415, § 653m,* supporting evidence includes: 2 pairs of boxing gloves & cell phone. •*Failure of prosecution's abiding of CA Art. 1 § 14 undermines the integrity of felony prosecution.* see attachment pages # 29(a), 29(b), 56 for related case law.

7. **Ground 2 or Ground** ___17___ *(if applicable):* (21)

The District Attorney, Court, counsel, and doctors have commited me to harass and gain a tactical advantage and **compel me to accept false and fraudulent reports, medication, and a deal.**

a. **Supporting facts:**

On 2/7/08 I was admitted into Napa State Hospital. Upon meeting Dr. Frishman he tells me court appointed doctors have diagnosed me "**delusional**". A suprise I tell him its a **misdiagnosis.** On 2/14/08 he says they find no reason to that. (SEE ATTACHED HO-SPITAL COMPLAINTS) On 3/6/08 he suprises me proclaiming they are "excercising the *delusional diagnosis."* I object as I come to learn that the Court has **CRIMINALLY LIBELOUSLY** *diagnosed me as "suffering from erotimania, erotic delusions".* I am a 29 year old **virgin** male whose chasity includes **never** *of having penetrated a female with any finger;* **never** *have had oral sex performed on me,* **never** *being with a female.* This **psychological abuse** *and* **horrasment** *initiated by the Court* is **SADISTIC** *and has continued on* 3/20/08. I will continue to **object** *to prosecutor's* **disgusting** "**diagnosis**" *in* **WHICH THEY ARE RELYING** *and* refuse to take medication *that will effect my pea-*

b. ~~Supporting cases, rules, or other authority:~~

*ce of mind already suffering from the* **deviously SADISTIC ways** *of County employees!* They are torturing me with thoughts of sex *and* accusing me **libelously** *of being a pervert!* This IS **NOT TREATMENT** *BUT* **HARRASMENT** *instituted by the parties stated and a fraudulent diag-*

(22)

7. **Ground 2 or Ground** ___17___ *(if applicable):*

(continued) nosis for the prosecution to gain a t-
actical advantage, **obtaining time to prepare and
present a perverted case to the Court.** Court
appointed doctors evaluations **were based on**

a. ~~Supporting facts:~~

**uncontested, uncredible, and false accusations
on a CONCEALED** *FALSE POLICE REPOR-
T.* Any respectable investigation, and disectio-
n of this petition, attachments, and reference-
s will show and conclude. I was victimized
(and **psychologically tormented**) by a sadistic
and scandalous mob. This has been continued
by *those who are supposed to uphold justice,*
and others who are supposed to *treat the ill.*
I've a stable, sane, and peace of mind *despite
normal anxiety and stress inflicted by in justi-
ce and slander.* I'm in great physical shape enj-
oying the fresh air. I've been in TOTAL SOB-
RIETY for 17 months and *DO NOT need drugs.*
PC1370 is being **abused** in my case (as I've
witnessed in others) to compel me to accept
the fraudulent practices of my *dump-truck
lawyer* IN HOPES I TAKE A PLEA BARGAI-

b. ~~Supporting cases, rules, or other authority:~~

N. My doctor is undoubtedly *performing di-
scovery for prosecutors in which he may ma-
tter of factly misconstrue what I say to hi-
m.* They treat and speak to you as you were
guilty, discouraging you from fighting your case.
B. In violation of 5th, 6th, and 14th Federal Law.

(23)

7. **Ground 2 or Ground** 18 *(if applicable):*

The Superior Court **violated my right to compete-**
**nt and conflict-free counsel** protected by the
15th state amendment and 6th Amendment by
acts of malpractice and fraud performed by counsel.

a. **Supporting facts:**

In Sept. '07 I passed competency exam by
Brad Novak. On 2/8/08 I passed a compet-
ency assesment by Dr. Cristiano. On 2/14-
08 during my Wellness & Recovery Planning
conference he proclaims "I did very well on
*them.*" I'm then given a I.Q. test by Dr. C. on
2/15/08 he compliments me saying that my
I.Q. is "ABOVE AVERAGE, close to *NEAR*
*SUPERIOR*" as I scored 118. Besides the
*misdiagnosis* of other doctors (SEE STATE HOS-
PITAL COMPLAINTS) whi-
ch Eric M. Hove "*refused to reveal and contest*"(
SEE ATTACHED
LETTERS) I'm competent. **He was absent on** ▮
11/16, 12/14, I'm UNREPRESENTED on 1/2, and ab-
sent 1/30. On 1/31 he visits me promising to disclo-
se all requested documents the *next morning.* 2/-
5 he fails *again promising to let s*ham *Omar* deli-
ver *them.* He asks the judge to sign the order
he (Hove) typed despite my "*objections.*" On

b. **Supporting cases, rules, or other authority:**

all those occasions have I addressed the
court. Mr. Hove's actions were more than negligi-
ent *and intentional.* PC 182(a)(3), see attached
complaints against County employees. **Rules of**
**Procedure of the State Bar Title IV Part B 2.3**
(this ground is complimented by others and attachments)

(24)

11-12.1

7. **Ground 2 or Ground** 19 *(if applicable):*

I'm being **falsely imprisoned** on untried charges, *a result of multiple crimes committed against me* by the alleged victims, detective, counsel, doctors, the D.A. and Court.

a. **Supporting facts:**

On 1/19/08 I mailed 3 criminal complaints to the Clerk of the court. On 1/23/08 I sent copies to the District Attorney's office. Both included letters. (see copies of those complaints attached) They are crimes *that have been committed against me through the very eyes of those stated, under the omnipotent and knowing eyes of thee God of Israel and The Prophet " ."* I do not ask for their prosecution, **only that I am given justice** upon granting of this writ. County employees should however be diciplined. **The facts and evidence is before you** regarding them. They only need admit fault. They are in denial and walk with false pride when amongst those who've witnessed and know the truth. *Tis a bad faith prosecution.*

b. **Supporting cases, rules, or other authority:**

Proverbs 21:12. "The Righteous Man takes note of the house of the wicked, then brings the wicked to ruin." Fed. Const. 5, Fed. Const. 6, Fed. Const. 14 (1), Ca. Const. 1, Ca. Const. 14, Ca. Const. 15, Ca Const. 28 (d), Malitiis hominum est obviandum.

1 (attachment insert) <u>Prejudices Suffered</u>

2

3 <u>Resulting from the misconduct</u> of

4 <u>the detective, the District Attorney,</u>

5 <u>court appointed counsel and doctor</u>-

6 <u>s, and the Court</u> **violating both Stat**-

7 **e and Federal statutes,** whether ne-

8 gligent or intentional, I, Marlon Est-

9 acio Pagtakhan **have suffered the**

10 <u>following prejudices:</u>

11

12 • **Anxiety suffered in myself and family.**

13 Anxiety comes natural to one who is fac-

14 ing criminal charges, and more so to one

15 who has been framed up and **slandered** a-

16 s myself. My family who were dependa-

17 nt on me financially, are now burdene-

18 d atop being witness to this **injustice.**

19

20 • <u>Being subject to</u> **public obloquy** whic-

21 h has **endangered** my person. In jail

22 do I suffer from public obloquy. Inm-

23 ates have spoken of and inquired me

24 regarding my case and those articles

25 published in papers, particularily the

26 Daily Journal. Misconstrued and fals-

27 e information was matter of factly disc-

28 losed. I've been shown the article pu-

(26)

1  blished in 10/07 and was held to answ-
2  er for it. On page 6 of the attached le-
3  tter to the D.A. and Sheriff will yo-
4  u come to see how this resulted in m-
5  y being assaulted.
6
7  • Impairing my right to a fair and imp-
8  artial trial.
9      • With the publication of misconst-
10  rued and false prejudicial informatio-
11  n in pre-trial slander and defamation.
12  (I requested a gag-order during my
13  arraignment and was never given a c-
14  hance to follow up when Eric M. Hove
15  conspired with the D.A. to suspend proc-
16  eedings.)
17      • With the introduction of false
18  documentary and false evidence int-
19  o criminal and competency proceedings.
20  (These include, the false police repo-
21  rt, fraudulent doctor reports see attach-
22  ed letter mentioned above, and text mes-
23  sages/emails I was told I sent that
24  are suspect, all of which have been
25  deliberately concealed from me.)
26      • Powerlessness to exert my own in-
27  vestigative efforts to mitigate the
28  erosive effects of the passage of tim-

(27)

1  e or compensate for incompetency o-
2  f court appointed counsel. (I am oppres-
3  sed from examining the police report, com-
4  plaint, doctors reports and alleged text
5  /email messages. I am oppressed from
6  questioning the detective and alleged
7  victims and witnesses. I am oppresse-
8  d from gathering physical and testamon-
9  ial evidence of alleged female victims
10  soliciting themselves sexually, i.e. sexu-
11  ally provacative material solicited from
12  one's myspace profile and an x-rated
13  scene of the other or someone identic-
14  al to her embedded/linked to one mem-
15  ber's user profile on her website, at a
16  point in time. I am oppressed from gathe-
17  ring testamonial evidence on my own b-
18  ehalf regarding my victimization of th-
19  e crimes suffered.)
20    • Curtailing my associations and tho-
21  se with witnesses through slander and
22  the passage of time. (The alleged victi-
23  ms are affiliates of an organization with
24  elements of a criminal mob, and will ha-
25  ve secured alibis for their conspiracy
26  and abuse/harassment of myself. Le-
27  aders of APW are given time to bribe
28  or command potential defense witnes-

PETITION FOR WRIT OF HABEAS CORPUS

1 ses, which is **evident practice** among
2 the organization. **Bribes may come**
3 in the form of APW parties catered
4 with **drugs and alcohol,** Warrior bask-
5 etball games with Roland, **groupies/**
6 **concubines** *hired by Roland and/or*
7 *Kafu,* and ~~favoritism or participatio~~ -
8 ~~n in APW shows.~~ SEE PAGE #29 (b)
9 OF THE ATTACHMENT. Roland Alexande-
10 r spoke ill of me when I dropped out
11 and my associations to those who ma-
12 y have testified for me have been pre-
13 sently lost. Others who dropped out of
14 APW for other reasons of conflict h-
15 ave been lost, i.e. Doug and Devontee.)
16 STUDENTS ARE REWARDED FOR C-
17 OMPLYING AND PUNISHED FOR DIS-
18 OBEDIANCE.
19      • **Exonerating evidence has been los**-
20 t *and destroyed,* others may not be ret-
21 rievable. These include yahoo messeng-
22 er chat logs between Ms. Chif and mysel-
23 f from April '06 through July '06, ema-
24 ils between us, both as *online friends,*
25 a public post from Roland made on the
26 APW message board **charging me an e-**
27 xtra $4,000 because *I like her,* anoth-
28 er one proclaiming he and Kafu hired a

1  couple Brazilian girls for Billy Blade to
2  hook up with on his birthday, evidence
3  of Roland's **blackmailing and later ha-**
4  **rrassing and bombardment** of text me-
5  ssages, evidence of Kafu's taunting
6  **and mocking** text messages, eviden-
7  ce of Gabriel Ramirez's **bombardmen-**
8  t of text messages ***destroying exonera-***
9  ***ting evidence*** *saved as I had to erase*
10 *my phones memory for it to work,* hara-
11 ssing phone call logs from the above
12 and other affiliates to the lateness o-
13 f the night, **evidence of Melissa solic-**
14 **iting herself** online, as previously ment-
15 ioned, and **others** not in mind atop muti-
16 cket stubs to the Metro, Museum, Aq-
17 uarium, Sears Tower when I went to
18 see MsChif in Chicago *but shyed out*
19 *from meeting her "as friends,"* beside-
20 s *the mysteriously missing* complaint ca-
21 rd *I was given when I reported Roland'-*
22 *s harassment and blackmail in January '07.*
23 (Please attached news article regarding
24 "text messages" *by Jeff Karoub from*
25 the SF Chronicle)
26
27 • **Drained financial resources and disrup-**
28 **ted employment.** Resulting from the

1. misconduct I've addressed, my financi-
2. al resources *have been drained* and
3. my family once dependent on me are
4. *now burdened.* **Please see attached**
5. **Claim Against The County.** Had my
6. bail not been excessively raised and
7. I'd been granted an O.R. release, *not*
8. *fraudulently committed,* I would not
9. have a disruption in employment and
10. would have been able to hire a compet-
11. ent attorney, ***working for me***, not the
12. District Attorney. (see attached business plan)
13.
14. •Deprived my fundamental interest in
15. liberty and Human Rights Art. 1, Art. 2,
16. Art. 3, Art. 4, Art. 5, Art. 6, Art. 7, Art. 8, Art.
17. 9, Art. 10, Art. 11(1), Art. 11(2), Art. 12, Art. 13
18. (1), Art. 13(2), Art. 15(1), Art. 15(2), Art. 16(1),
19. Art. 17(1), Art. 17(2), Art. 18, Art. 19, Art. 20
20. (2), Art. 23(1), Art. 25", Art. 26(1), Art. 27(2),
21. and Art. 30. On 8/11/07 did I choose
22. to confront those who chose to oppres-
23. s me and had been framing me all alon-
24. g as my rights to liberty had been violat-
25. ed, I had the right to confront my accus-
26. ers. **For that was I arrested.** My Stat-
27. e, Federal, and Human Rights stated wer-
28. e violated prior and have continued after my arrest.

(31)

1  (attachment insert) <u>Prayer For Relief</u>

2

3  **Concluding** further investigation or

4  hearing on the grounds raised that

5  *should* be addressed *in person* which

6  are true and **in evident violation of**

7  **both State and Federal statute**s,

8  I, Marlon Estacio Pagtakhan pray

9  that this *higher court* grant relief

10  in a writ of habeas corpus **quashing**

11  **or dismissing the felony complaint**

12  case number NF369118A **and quash-**

13  **ing competency proceedings** case

14  number MH463328A ~~(or to compel~~

15  ~~the said court to drop charges to a~~

16  ~~single count of PC §417 and to relea-~~

17  ~~se me on my own recognizance as~~

18  ~~I defend myself pro-per, as it was~~

19  ~~the only probable crime committed~~

20  ~~on 8/11/07~~ **hence** I was never issued

21  a restraining order *nor were the gui-*

22  *dlines under PC 13519.05. duely fol-*

23  *lowed by the Burlingame Police De-*

24  *partment).* I also ask that relief

25  be granted compelling the District

26  Attorney and/or Superior Court

27  to release all of my *illegally seiz-*

28  *ed property* in the interest of justice.

PETITION FOR WRIT OF HABEAS CORPUS

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____ n/a _____

   b. Result _____ n/a _____    c. Date of decision: _____ n/a

   d. Case number or citation of opinion, if known: _____ n/a _____

   e. Issues raised: (1) _____ n/a _____

      (2) _____ n/a _____

      (3) _____ n/a _____

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

   _____ n/a _____

9. Did you seek review in the California Supreme Court?  ☐ Yes  ☐ No.  If yes, give the following information:

   a. Result _____ n/a _____    b. Date of decision: _____ n/a

   c. Case number or citation of opinion, if known: n/a

   d. Issues raised: (1) _____ n/a _____

      (2) _____ n/a _____

      (3) _____ n/a _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    My court appointed attorney *is matter of fac-tly* working in the interest of the prosecution.

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

    I am challenging an illegal arrest, issues cont-ributing to a fraudulent commitment, all of which are in gross violation of stated State and Federal Amendments overall resulting in false imprisonment.

    _____

    _____

    b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
       *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: U.S. District Court, Northern District

(2) Nature of proceeding (for example, "habeas corpus petition"): habeas corpus petition

(3) Issues raised: (a) multiple due process and speedy trial violations

(b) fraudulent competency proceedings (must exhaust state remedies)

(4) Result (Attach order or explain why unavailable): dismissed *without prejudice*

(5) Date of decision: December 20, 2007

b. (1) Name of court: Superior Court, County of San Mateo

(2) Nature of proceeding: habeas corpus petition

(3) Issues raised: (a) 12 of 16 grounds erroneously *unaddressed.*

(b) must show prejudice for relief

(4) Result (Attach order or explain why unavailable): summary denial

(5) Date of decision: 1/18/08, sealed 1/24/08, recieved 1/27/08

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

no hearing held

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

I've been **prejudice** by the oppressive nature of incarceration. (i.e. law material access, deliberate mail delay, refusal of disclosing documents)

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

This is a **pro-per petition** to the appeals court impeaching misconduct of counsel, D.A., doctors, and the Court.

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

n/a

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I pray this petition is respectfully granted a hearing and the prior parties be held to answer in court.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: March 23, 2008 (7:30pm)    ▶ _Marlon E. Pagtakhan_
(SIGNATURE OF PETITIONER)