UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON E. PAGTAKHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE, detective; et al.,<br><br>    Defendants.<br>_____/ | No. C 08-2188 SI (pr)<br><br>**ORDER TO SHOW CAUSE WHY WRESTLING DEFENDANTS SHOULD NOT BE DISMISSED** |

**INTRODUCTION**

This action was stayed more than four years ago because the claims in it called into question the validity of an ongoing criminal case against plaintiff, Marlon Pagtakhan.[1] Upon Pagtakhan's report that the criminal charges against him had been dismissed, the court lifted the stay last month. Pagtakhan then filed an amended complaint. The amended complaint is now before the court for review pursuant to 28 U.S.C. § 1915(e).

There are many problems with the extremely verbose amended complaint. However, two overarching issues regarding a large group of defendants need to be addressed first. Pagtakhan must show cause why the claims against the Wrestling Defendants should not be dismissed from this action as time-barred and/or under the doctrines of res judicata and collateral estoppel.

---

[1] Pagtakhan's mother and two sisters are listed as "derivative victim" plaintiffs, although all but a few sentences in the pleadings are about Marlon Pagtakhan. For purposes of this order and the response required, the court addresses only the problems with regard to Marlon Pagtakhan.

# BACKGROUND

A. <u>The Amended Complaint</u>

The first amended complaint ("amended complaint") is a 108-page document in which at least forty causes of action against thirty-five defendants are alleged. It is wordy, repetitive, confusing and occasionally unintelligible. The claims range from § 1983 claims to premises liability to breach of contract and attempted murder plus dozens of other theories.

To summarize the factual allegations of the 108-page amended complaint: Pagtakhan wanted to be a professional wrestler so he signed up for a camp at the All Pro Wrestling school in Hayward. The people who operated and took part in the wrestling camp made statements and did other things that allegedly violated his state and federal rights from about July 2006 until August 2007.[2] He wanted to drop out of the program (or the All Pro Wrestling operators wanted him to leave it), and a disagreement arose as to whether he was owed a refund or he owed further monies for the program. After Pagtakhan dropped out of the program, the All Pro Wrestling people conspired to have him falsely charged and arrested for a crime. *Id.* at 36. On August 11, 2007, Pagtakhan was arrested in the parking lot across the street from the All Pro Wrestling gym in Hayward, after having been lured there under a ruse that he would receive a partial refund from the wrestling camp. *Id.* at 48. He was arrested at gunpoint by Burlingame police officer Chuck Witt, who had been investigating him for months and conspiring with the All Pro Wrestling people to falsely arrest him. *Id.* at 48-49. Two Hayward police officers assisted in the arrest. *Id.* at 49. Pagtakhan thereafter was prosecuted and falsely imprisoned. Pagtakhan wanted a speedy trial, but his attorney declared a doubt as to his competency and the judge suspended the criminal proceedings to deal with the competency issues. *Id.* at 67. After Pagtakhan's arrest, the police searched his home and seized two computers. They later seized some model martial arts weapons. *Id.* at 66. Two doctors "falsified and fabricated reports," and

---

[2]The allegedly unlawful acts included identifying Pagtakhan to other participants as a stalker with a stalking conviction, urging him to enter the wrestling ring with a superior wrestler, taunting him, detaining him in the All Pro Wrestling gym office for a few hours, and making him do menial chores.

2

misdiagnosed Pagtakhan as delusional and incompetent. *Id.* at 9. Pagtakhan was transferred to Napa State Hospital and remained there for more than three years. During his stay at Napa State Hospital, doctors were negligent in their examination of him as well as their treatment of his purported mental illness. *Id.* at 12. On October 27, 2011, a jury found that he did not have a mental illness and was competent for trial. *Id.* at 9-10. The criminal charges against him were dismissed on June 14, 2012. *Id.* at 6.

The amended complaint alleges claims for relief: (a) against the Wrestling Defendants[3] for events that occurred during wrestling camp and leading up to Pagtakhan's arrest; (b) against officer Witt and the Burlingame Police Department for the allegedly wrongful arrest and events thereafter; (c) against the prosecutors, public defenders and evaluating doctors for the allegedly wrongful prosecution and commitment; and (d) against workers at Napa State Hospital for events and omissions during his stay at Napa State Hospital.

### B. The Original Complaint Had A Narrower Scope

The amended complaint goes far beyond the scope of the original complaint in this action. The original complaint did not include the Wrestling Defendants as defendants and did not attempt to allege claims against them.

The original complaint, filed on April 28, 2008, alleged claims concerning the criminal proceedings against Pagtakhan. In the original complaint, Pagtakhan alleged that he was falsely arrested on August 11, 2007 and "framed" by a Burlingame police detective, Docket # 1, p. 4, as well as All Pro Wrestling. Docket # 1, p. 7. He alleged that he was compelled to go through an interrogation without counsel and subjected to an unreasonable search. He further alleged that prosecutors had maliciously prosecuted him, his defense attorney was deficient, and two of the examining psychiatrists engaged in malpractice and intentionally misdiagnosed him as incompetent. He contended that he had been "fraudulently committed" to a mental hospital as

---

[3] Defendants Roland Alexander (individually and dba All Pro Wrestling), Black Pants, Inc., Jason Deadrich, Melissa Deadrich, Chris Kelsey, Gabriel Ramirez, Shannon Ramirez, Victor Ceron, and Rachel Donaldson Collins were owners, operators or participants in the All Pro Wrestling organization and collectively are referred to as the "Wrestling Defendants."

1 a result of the misdeeds of the defense attorney, the judge and the doctors. *Id.* at 25. Pagtakhan
2 sought an injunction that compelled the district attorney to cease prosecution, compelled the
3 police department to release property belonging to him and his family, and compelled a
4 retraction of the competency reports by Dr. Singh and Dr. Samuels. *Id.* at 26-27. He also
5 sought damages.

### C. Other Information

Pagtakhan apparently was convicted of stalking in 2000 for stalking a celebrity. *See* Docket # 1-1, p. 20.

In the criminal proceedings initiated against Pagtakhan in 2007, he was charged with several counts of stalking. The alleged victims for these stalking charges are among the Wrestling Defendants. *See* Docket # 32, ¶. 73-74. The charges in the 2007 criminal proceedings included sentence enhancement allegations or separate charges for stalking with a prior conviction for stalking. *See id.*; Cal. Penal Code § 646.9(c)(2). The prior conviction alleged apparently was the 2000 conviction referred to in the preceding paragraph.

A restraining order was issued that required Pagtakhan to stay away from at least one of the Wrestling Defendants. *See* Docket # 32, p. 38.[4]

Pagtakhan filed at least one action in the San Mateo County Superior Court against some or all of the Wrestling Defendants.[5] The claims sound quite similar to Pagtakhan's federal court

---

[4] The existence of this restraining order (or another one) is confirmed by a discussion in a state appellate decision. In *Pagtakhan v. Alexander,* 2009 WL 4192337, *3 (Cal. Ct. App. Nov. 24, 2009) (unpublished decision), the court rejected Pagtakhan's argument that any defect in service of process on Victor Ceron – who also is one of the Wrestling Defendants in this federal action – should be excused because he "'would be committing a violation of an imposed court order if he contacted or attempted to obtain Ceron's addresses.'" The state appellate court explained that "the Criminal Protective Order-Domestic Violence to which Pagtakhan points in support of his argument provides that he 'must take no action to obtain the addresses or locations of protected persons . . . unless good cause exists otherwise.' Pagtakhan has made no showing that he attempted to demonstrate such 'good cause' here." *Id.*

[5] Multiple appeals were taken in that state court action. The California courts website (http://appellatecases.courtinfo.ca.gov) lists six appeals in the First District Court of Appeals, i.e., Appeal Case Nos. A129013, A128312, A125470, A125468, A125193, and A124628. All

4

claims. The complaint in the San Mateo County Superior Court had "18 causes of action against seven defendants, including Black Pants and Witt. . . . Suffice to say it appears that the claims stem from plaintiff's attendance at a wrestling 'camp' conducted in a gym in Hayward, and what ensued thereafter, culminating in plaintiff's arrest by Witt, a police officer for the City of Burlingame." *Pagtakhan v. Black Pants, Inc*., 2009 WL 5153640, *1 (Cal. Ct. App. Dec. 30, 2009). That appellate decision affirmed the dismissals with prejudice as to defendants Black Pants and Witt. There were other defendants in the state court action, but the identities of all the defendants and the resolution of all the claims cannot be determined from the information on the state courts website or Westlaw.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). If the action is filed by a non-prisoner proceeding *in forma pauperis*, the court may dismiss the case at any time if it determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

There appear to be timeliness and res judicata/collateral estoppel problems with the claims against the Wrestling Defendants. Both of these issues will be addressed before the court deals with other pleading problems in the amended complaint because a dismissal of the claims against the Wrestling Defendants (which comprise more than half the 108 pages of the amended complaint) would eliminate the need for Pagtakhan to tend to the several other pleading problems with regard to those defendants and would drastically trim the length of any further amended pleading.

---

of these are marked as appeals from the trial court case number CIV479102.

A.   <u>Whether Claims Against The Wrestling Defendants Are Untimely</u>

A "statute of limitations" sets the amount of time within which an action must be brought for a wrong. There is not a universal statute of limitations or single limitations period. Instead, the length of the limitations period depends on the nature of the cause of action being asserted. The limitations periods for most state law causes of action are set out in California Code of Civil Procedure §§ 335 *et seq.* There is a one-year statute of limitations for actions for libel, slander, and false imprisonment. *Id.* at § 340(a). There is a two-year statute of limitations for an action upon a contract not in writing, and for assault, personal injury, and a tort action not otherwise provided for. *Id.* at § 335.1, § 339(1). There is a three-year statute of limitations for an action for fraud, and for an action "upon a liability created by statute, other than a penalty or forfeiture." *Id.* at § 338. There is a four-year statute of limitations for an action on a written contract. *Id.* at § 337(a). There also is a four year statute of limitations for "[a]n action for relief not hereinbefore provided." *Id.* at § 343. The limitations period starts when the cause of action accrues. *See id.* at § 312. For state law causes of action, the cause of action ordinarily "accrues when, under the substantive law, the wrongful act is done and liability arises, i.e., when a suit may be brought." *Menefee v. Ostawari*, 228 Cal. App. 3d 239, 245 (Cal. Ct. App. 1991).

For federal civil rights claims for relief, the limitations period is two years. Section 1983 does not contain its own limitations period, so the court looks to the limitations period of the forum state's statute of limitations for personal injury torts. *See Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). California's statute of limitations period for personal injury torts is two years, and the statute of limitations period for § 1983 claims is two years. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1; *Elliott*, 25 F.3d at 802. Although the court looks to the state law for the limitations period, federal law determines when a cause of action accrues and the statute of limitations begins to run in a § 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Elliott*, 25 F.3d at 801-02. Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999); *Elliott*, 25 F.3d at 802. The statute of limitations period generally begins when a plaintiff has

6

knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

Although the statute of limitations is an affirmative defense that normally may not be raised by the court sua sponte, it may be grounds for sua sponte dismissal of an *in forma pauperis* complaint where the defense is complete and obvious from the face of the pleadings or the court's own records. *See Franklin v. Murphy*, 745 F.2d 1221, 1228-30 (9th Cir. 1984). That is the situation here: the defense appears complete and obvious from the face of the complaint because the amended complaint was filed more than five years after the acts and omissions that give rise to the claims against the Wrestling Defendants occurred.

The limitations period may be tolled for certain disabilities that existed when the cause of action accrued. *See* Cal. Penal Code § 357. Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two years for a plaintiff who is in prison "for a term less than for life." *See* Cal. Civ. Proc. Code § 352.1. And a plaintiff's insanity is a disability that may toll the limitations period. *See* Cal. Civ. Proc. Code § 352(a). For purposes of the tolling provision, "the term 'insane' has been defined as a condition of mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts." *Hsu v. Mt. Zion Hospital*, 259 Cal. App. 2d 562, 571 (Cal. Ct. App. 1968); *cf. Feeley v. Southern Pac. Trans. Co.*, 234 Cal. App. 3d 949, 952 (Cal. Ct. App. 1991) (tolling proper for time during which plaintiff was in a coma immediately after the injury that gave rise to his cause of action); *Snyder v. Boy Scouts of America*, 205 Cal. App. 3d 1318, 1324 (Cal. Ct. App. 1988) (post-traumatic stress disorder does not count as "insanity" that tolls the limitations period).

The limitations period may be subject to equitable tolling. Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison v. California*, 21 Cal. 3d 313, 317 (1978)).

Sometimes, an amended complaint relates back to the date the action was commenced –

meaning that the filing date of the original complaint will be used to determine whether the claim in the amended complaint is timely. Relation back generally is not permitted when the amended pleading adds new defendants. *See* Fed. R. Civ. P. 15(c); *Woo v. Superior Court (Zarabi)*, 75 Cal. App. 4th 169, 176 (Cal. Ct. App. 1999).

The claims against the Wrestling Defendants appear on the face of the amended complaint to be time-barred because the acts and omissions giving rise to the claims against them took place took place on or before August 11, 2007, more than five years before the amended complaint was filed on September 7, 2012. Pagtakhan will be required to file a response to this order, showing cause why the claims against the Wrestling Defendants should not be dismissed as time-barred. Pagtakhan may submit any argument he has to show that the statute of limitations does not bar this action against the Wrestling Defendants.

B. <u>Whether Earlier State Court Judgment Precludes Claims Against Wrestling Defendants</u>

The court has the authority to examine the preclusive effect of a prior judgment sua sponte. *See Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993); *McClain v. Apodaca*, 793 F.2d 1031, 1032-33 (9th Cir. 1986). Early consideration of this issue is especially appropriate because of the serious concern that this action might be a vehicle for harassment by Pagtakhan. As in any *res judicata* question, there is prior litigation between the parties. But here, there is more: Pagtakhan is trying to sue persons who have obtained a restraining order against him and who are listed in the criminal stalking case as his alleged victims. The preclusive effect, if any, of the earlier state court judgment should be examined at an early stage in this litigation.

The related doctrines of res judicata and collateral estoppel limit litigants' ability to relitigate matters. Under the doctrine of res judicata (also known as the claim preclusion doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel [also known as the issue preclusion doctrine], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90,

8

94 (1980).

The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires a federal court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). A civil rights claim brought under 42 U.S.C. § 1983 in federal court is subject to principles of issue and claim preclusion by a prior state court judgment. *See Allen*, 449 U.S. at 97-98 (issue preclusive effect in federal court of state proceedings is same as that accorded in state's own courts); *Migra*, 465 U.S. at 84 (extending rule of *Allen* to cover claim preclusion as well as issue preclusion). A civil rights action under § 1983 thus may be dismissed as barred by res judicata, for example, if a prior California state court judgment rendered a valid judgment on the merits in favor of a defendant. *See Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850-51 (9th Cir. 1986) (citing *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (1976)).

The state court action filed by Pagtakhan sounds at least very similar to the claims he is asserting against the Wrestling Defendants in this action. *See Pagtakhan v. Black Pants, Inc.,* 2009 WL 5153640, *1 (Cal. Ct. App. Dec. 30, 2009). The court therefore will require Pagtakhan to provide sufficient information for the court to analyze whether the present claims against the defendants are barred under the doctrines of res judicata and collateral estoppel.

Pagtakhan is ordered to show cause why the judgment against him in the San Mateo County Superior Court case does not bar his claims against the Wrestling Defendants. For example, he may demonstrate that the factual basis for the claims in that action is not the same as for the claims in this action, or that the defendants did not prevail on the merits. He also may state any other reason he has why the judgment in the earlier action should not bar this action. Pagtakhan also must submit with his written response to this order to show cause the following documents: (1) a copy of the most recent complaint he filed in San Mateo County Superior Court Case No. CIV4791902; and (2) a copy of any order in that action that shows the disposition of his claims against any defendant in that action.

## CONCLUSION

The claims against the Wrestling Defendants in the amended complaint appear to be time-barred and barred by the doctrines of res judicata and collateral estoppel.

Marlon Pagtakhan is hereby ordered to show cause why his claims against the Wrestling Defendants should not be dismissed as barred by the applicable statutes of limitations and/or the doctrines of res judicata and collateral estoppel. Pagtakhan must file a written response to this order to show cause. His response may not exceed 25 pages in length, and the format of this (and all filings) must comply with Northern District Local Rule 3-4(c) (listing general requirements for filings, i.e., text only on one side of page, double-spaced type with no more than 28 lines per page, and type that is no smaller than 12-point standard font). He also must file with his response the state court documents identified in this order (i.e., the state court complaint and dispositive orders). Pagtakhan's response must be filed no later than **November 2, 2012**. Failure to file the response by the deadline will result in the dismissal of the Wrestling Defendants from this action.

IT IS SO ORDERED.

Dated: September 24, 2012

_____
SUSAN ILLSTON
United States District Judge

10