UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON E. PAGTAKHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE, detective; et al.,<br><br>    Defendants.<br>_____/ | No. C 08-2188 SI (pr)<br><br>**ORDER DISMISSING WRESTLING DEFENDANTS** |

## INTRODUCTION

This action was stayed more than four years ago because the claims in it called into question the validity of an ongoing criminal case against plaintiff Marlon Pagtakhan.[1] Upon Pagtakhan's report that the criminal charges against him had been dismissed, the court lifted the stay and Pagtakhan filed an amended complaint. The court reviewed the amended complaint and required Pagtakhan show cause why the claims against the Wrestling Defendants should not be dismissed from this action as time-barred and/or under the doctrines of res judicata and collateral estoppel. As noted in the order to show cause, the court had a serious concern that this action might be a vehicle for harassment by Pagtakhan as he was trying to sue persons who had obtained restraining orders against him, who were listed in the criminal stalking case as his alleged victims, and who he already had sued in state court. Pagtakhan filed a response to the

---

[1] Pagtakhan's mother and sister are listed as "derivative victim" plaintiffs, although all but a few sentences in the pleadings are about Marlon Pagtakhan.

order to show cause. Due to pleading deficiencies in the amended complaint, the court was unable to evaluate Pagtakhan's response to the order to show cause and therefore ordered him to file an amendment of the conspiracy-based claims. (Docket # 35.) Pagtakhan then filed an amendment. (Docket # 37.)

Having reviewed Pagtakhan's amended complaint, response to the order to show cause, and the amendment, the court concludes that the claims against the Wrestling Defendants must be dismissed as barred by the statute of limitations and for other reasons discussed. The record is insufficiently developed for the court to determine whether res judicata and collateral estoppel doctrines also provide a basis for dismissal of the remaining claims against any other defendants.

**BACKGROUND**

Evaluation of the timeliness of the claims against the Wrestling Defendants[2] is affected by the difference between the original and the amended complaints in this action. The original complaint was filed on April 28, 2008. The action, which at that point only asserted claims relating to the criminal proceedings against Pagtakhan, was stayed on September 29, 2008, pending resolution of the criminal proceedings. (Docket # 11.) Upon Pagtakhan's request in 2012, the stay was lifted after the criminal charges were dismissed. Pagtakhan filed a first amended complaint on September 7, 2012 (Docket # 32). The first amended complaint repeated many of the claims from the original complaint and added a new group of claims against a separate set of defendants Pagtakhan had encountered during his brief foray into the wrestling world.

A.  The Original Complaint

The original complaint alleged claims concerning the criminal proceedings against Pagtakhan. In the original complaint, Pagtakhan alleged that he was falsely arrested on August

---

[2]Defendants Roland Alexander (individually and dba All Pro Wrestling), Black Pants, Inc., Jason Deadrich, Melissa Deadrich, Chris Kelsey, Gabriel Ramirez, Shannon Ramirez, Victor Ceron, and Rachel Donaldson Collins were owners, operators or participants in the All Pro Wrestling organization and collectively are referred to as the "Wrestling Defendants."

2

11, 2007 and "framed" by a Burlingame police detective, Docket # 1, p. 4, as well as All Pro Wrestling. Docket # 1, p. 7. He alleged that he was compelled to go through an interrogation without counsel and subjected to an unreasonable search. He further alleged that prosecutors had maliciously prosecuted him, his defense attorney was deficient, and two of the examining psychiatrists engaged in malpractice and intentionally misdiagnosed him as incompetent. He contended that he had been "fraudulently committed" to a mental hospital as a result of the misdeeds of the defense attorney, the judge and the doctors. *Id.* at 25. Pagtakhan sought an injunction that compelled the district attorney to cease prosecution, compelled the police department to release property belonging to him and his family, and compelled a retraction of the competency reports by Dr. Singh and Dr. Samuels. *Id.* at 26-27. He also sought damages.

Upon initial review, the court applied the rules from *Wallace v. Kato*, 549 U.S. 384, 393 (2007), and *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994), to stay the damages claims. "Here, the claims that the arrest and prosecution as well as the competency proceedings done in connection with the pending criminal prosecution violated Pagtakhan's constitutional rights relate to rulings that have been or likely will be made in his pending criminal case. These claims should not go forward because the plaintiff's criminal proceedings are still pending . . . . Accordingly, the court will stay further proceedings in this matter until plaintiff's criminal proceedings have concluded." Docket # 11, p. 5.[3]

B. The Amended Complaint

The first amended complaint ("amended complaint") is a 108-page document in which more than forty causes of action against thirty-five defendants are alleged. The following is a

---

[3]The court also dismissed outright several defendants and claims. Judge Grandsaert was dismissed on the ground that he had absolute judicial immunity for the acts alleged in the complaint. *See* Docket # 11, p. 3. Deputy district attorney Steve Wagstaffe was dismissed because he had absolute prosecutorial immunity for the acts alleged in the complaint. *Id.* Defendant Eric Hove, who was the appointed or retained defense attorney, was dismissed because he could not be sued in a § 1983 action for the acts alleged in the complaint. *Id.* The court further determined that the *Younger* abstention doctrine applied and required the dismissal of the requests for injunctive and declaratory relief because of the pendency of the state criminal case. Docket # 11, p. 4 (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

3

summary of the factual allegations of the amended complaint: Pagtakhan wanted to be a professional wrestler so he signed up for a camp at the All Pro Wrestling school in Hayward. The people who operated and took part in the wrestling camp made statements and did other things that allegedly violated his state and federal rights from about July 2006 until August 2007.[4] He wanted to drop out of the program (or the All Pro Wrestling operators wanted him to leave it), and a disagreement arose as to whether he was owed a refund or he owed further monies for the program. After Pagtakhan dropped out of the program, the All Pro Wrestling people conspired to have him falsely charged and arrested for a crime. *Id.* at 36. On August 11, 2007, Pagtakhan was arrested in the parking lot across the street from the All Pro Wrestling gym in Hayward, after having been lured there under a ruse that he would receive a partial refund from the wrestling camp. *Id.* at 48. He was arrested at gunpoint by Burlingame police officer Chuck Witt, who had been investigating him for months and conspiring with the All Pro Wrestling people to falsely arrest him. *Id.* at 48-49. Two Hayward police officers assisted in the arrest. *Id.* at 49. Pagtakhan thereafter was prosecuted and falsely imprisoned. Pagtakhan wanted a speedy trial, but his attorney declared a doubt as to his competency and the judge suspended the criminal proceedings to deal with the competency issues. *Id.* at 67. After Pagtakhan's arrest, the police searched his home and seized two computers. They later seized some model martial arts weapons. *Id.* at 66. Doctors "falsified and fabricated reports," and misdiagnosed Pagtakhan as delusional and incompetent. *Id.* at 9. Pagtakhan was transferred to Napa State Hospital and remained there for more than three years. Doctors at the hospital were negligent in their examination and diagnosis of him. *Id.* at 12. Conservatorship proceedings were instituted, but were unsuccessful. On October 27, 2011, a jury found that he did not have a mental illness and was competent for trial. *Id.* at 9-10. The criminal charges against him were dismissed on June 14, 2012. *Id.* at 6.

---

[4] The allegedly unlawful acts included identifying Pagtakhan to other participants as a stalker with a stalking conviction, urging him to enter the wrestling ring with a superior wrestler, taunting him, detaining him in the All Pro Wrestling gym office for a few hours, and making him do menial chores.

The amended complaint alleges claims for relief: (a) for the events that occurred during wrestling camp and leading up to Pagtakhan's arrest; (b) for his allegedly wrongful arrest; (c) for the allegedly wrongful prosecution and commitment; and (d) for events and omissions during his stay at Napa State Hospital.

**DISCUSSION**

A.  The Wrestling Defendants Have Absolute Immunity Against Several Claims

Pagtakhan attempts to assert various claims against the Wrestling Defendants based on Wrestling Defendants' reports to police. The Wrestling Defendants have absolute immunity under California Civil Code § 47(b) against all the state law tort claims that are based on their communications to the police about Pagtakhan's alleged crimes. *See Mulder v. Pilot Air Freight*, 32 Cal. 4th 34 (Cal. 2004); *Hagberg v. California Fed. Bank*, 32 Cal. 4th 39 (Cal. 2004). The absolute privilege established by § 47(b) "applies to a communication '"concerning possible wrongdoing, made to an official governmental agency such as a local police department, . . . [if the] communication is designed to prompt action by that entity. . . ."'" *Mulder*, 32 Cal. 4th at 37 (citation omitted) (upholding dismissal of false imprisonment claim that was based on statements made to police); *cf. Ribas v. Clark*, 38 Cal. 3d 355, 364 (Cal. 1985) ("although the statutory privilege accorded to statements made in judicial proceedings appears in the code in the chapter on defamation, it applies to virtually all other causes of action, with the exception of an action for malicious prosecution"). Pagtakhan's state law tort claims that are premised on Wrestling Defendants making false statements to the police are dismissed.

Pagtakhan also attempts to hold several unspecified persons among the Wrestling Defendants liable based on testimony at grand jury proceedings in December 2010. He alleges both that some unspecified persons among the Wrestling Defendants provided false testimony and others conspired to provide such testimony. These claims must be dismissed. A witness is absolutely immune from liability for his testimony in earlier state or federal court proceedings even if he committed perjury. *See Briscoe v. LaHue*, 460 U.S. 325, 329-46 (1983); *Holt v. Castaneda*, 832 F.2d 123, 127 (9th Cir. 1987). Witnesses in a grand jury proceeding, including

5

"complaining witnesses," are entitled to the same absolute immunity from suit under § 1983 as witnesses who testify at trial. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506-07 (2012) (upholding dismissal of claims against chief investigator for the district attorney's office for allegedly conspiring to present, and presenting, false testimony as the sole complaining witness at a grand jury hearing on the grounds that he was entitled to absolute immunity). The immunity extends to conspiracies to commit perjury. That is, the absolute immunity "may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 132 S. Ct. at 1506; *see also Franklin v. Terr*, 201 F.3d 1098, 1099 (9th Cir. 2000) (witness has absolute immunity under § 1983 for conspiring to present the perjured testimony of himself and another person at trial). Pagtakhan's claims that any Wrestling Defendant testified falsely or conspired to present false testimony at the grand jury proceedings are dismissed. While *Rehberg* provides the authority for absolute immunity with regard to the § 1983 claims, California Civil Code § 47(b) provides the authority for absolute immunity with regard to the state law tort claims based on the grand jury testimony.[5]

B. <u>Pagtakhan Fails To State A Claim Based On Any Conspiracy Theory</u>

Under state law, a conspiracy is not a separate cause of action and instead is a way to hold additional persons liable for torts committed by others. *See Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 784 (Cal. 1979). Similarly, a conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but "may enlarge the pool of responsible defendants by demonstrating their causal connections to the violation*." Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir.

---

[5] One of the factors supporting these absolute immunities is the avoidance of the chilling effect that would occur if the witness feared retaliatory litigation. *See Rehberg*, 132 S. Ct. at 1505 (absolute immunity for trial witnesses and grand jury witnesses justified because "[i]n both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence"); *Hagberg*, 32 Cal. 4th at 371 ("broad application of the privilege serves the important public interest of securing open channels of communication between citizens and law enforcement personnel and other public officials charged with investigating and remedying wrongdoing").

6

2012) (en banc). A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. *Id.*

Pagtakhan repeatedly referred to conspiracies in his amended complaint, but failed to adequately allege facts showing any conspiracy-based liability for any of the Wrestling Defendants. The court noted the inadequacy of the conspiracy allegations in the amended complaint, and gave Pagtakhan leave to file an amendment to cure them. (Docket # 35.) The court only identified three particular post-arrest claims for Pagtakhan to address, because some of the pre-arrest claims that allegedly involved conspiracies appeared time-barred with or without conspiracy-based liability. *See, e.g.* Docket # 32, ¶. 16-18 (causes of action for assault and conspiracy to commit assault in July and August 2006). Pagtakhan filed an amendment that attempted to allege conspiracy-based liability for causes of action numbered (A)(2), (B)(2), 4, 15, 17, 34, and 37. *See* Docket # 37. However, the amendment did not cure the deficiencies because the conspiracy allegations are mere conclusions unsupported by allegations of material facts. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). Pagtakhan simply identified several independent acts that he alleges resulted in damage to him, and labels them a conspiracy. He has not adequately alleged conspiracy-based liability for any of the Wrestling Defendants.

C. <u>Statutes Of Limitations Problems Abound</u>

An amended complaint that adds a new defendant does not relate back to the date of filing the original complaint, unless the new defendant is being substituted for a fictitious Doe named in the original complaint. *Woo v. Superior Court*, 75 Cal. App. 4th 169, 176 (1999). The Wrestling Defendants were not listed as Doe defendants in the original complaint. The

7

claims that were brought against the Wrestling Defendants in the amended complaint do not relate back to the original complaint. As a result, the date that the amended complaint was filed, September 7, 2012, will be used to determine whether Pagtakhan's claims against the Wrestling Defendants are time-barred.

### 1. The Applicable Statutes of Limitations

In an action brought under 42 U.S.C. § 1983, the court applies the limitations period of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). The statute of limitations in California for personal injury torts, and hence for § 1983 claims, is two years . *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period); *Elliott*, 25 F.3d at 802. Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999); *Elliott*, 25 F.3d at 802.

The statute of limitations for a RICO claim is four years. *See Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001). "[T]he civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* at 1109 (citation omitted).

The length of the limitations period for the state law claims depends on the nature of the cause of action being asserted. There is a one-year statute of limitations for actions for libel, slander, and false imprisonment. Cal. Code Civ. Proc. § 340(a). There is a two-year statute of limitations for an action on a contract not in writing, and for assault, personal injury, and a tort action not otherwise provided for. *Id.* at § 335.1, § 339(1). There is a three-year statute of limitations for an action for fraud, and for an action "upon a liability created by statute, other than a penalty or forfeiture." *Id.* at § 338. There is a four-year statute of limitations for an action on a written contract. *Id.* at § 337(a). There also is a four-year statute of limitations for "[a]n action for relief not hereinbefore provided." *Id.* at § 343. The limitations period starts when the cause of actions accrues. *See id.* at § 312. A state law cause of action ordinarily

8

"accrues when, under the substantive law, the wrongful act is done and liability arises, i.e., when a suit may be brought." *Menefee v. Ostawari*, 228 Cal. App. 3d 239, 245 (Cal. Ct. App. 1991).

2. Pagtakhan's Claims Against Wrestling Defendants

Pagtakhan's claims against the Wrestling Defendants can be divided into three groups: (a) claims for acts and omissions occurring before his arrest on August 11, 2007; (b) claims for acts and omissions that culminated with his arrest on August 11, 2007; and (c) claims for acts and omissions that occurred after his arrest on August 11, 2007. The analysis of each group is different.[6]

a. Pre-Arrest Claims

Most of the pre-arrest claims concern events that occurred at the wrestling school. The pre-arrest claims are: causes of action # 1 and # 2 for invasion of privacy and invasion of privacy by false light that allegedly occurred on July 6, 2006 (Docket # 32, p. 14); causes of action # 3 and # 4 for assault and conspiracy to commit assault that allegedly occurred on or about July 6, 2006 and August 12, 2006 (*id.* at 16)[7]; cause of action # 5 for false imprisonment that allegedly occurred on August 12, 2006 (*id.* at 19); causes of action # 6 and # 7 for sexual and general harassment that allegedly occurred from July 6, 2006 through September 2, 2006 (*id.* at 20); cause of action # 8 for human trafficking that allegedly occurred from July 6, 2006 through September 3, 2006 (*id.* at 26); causes of action # 9 and # 10 for slavery and attempted enslavement that allegedly occurred from July 6, 2006 through February 1, 2007 (*id.* at 28); cause of action # 11 for premises liability based on events that allegedly occurred from July 6, 2006 through February 1, 2007 (*id.* at 30); cause of action # 14 for attempted extortion that

---

[6] The amended complaint also has claims against defendants other than the Wrestling Defendants, i.e., causes of action (A) - (D), 26-28, 29, 30, 32, 35, 36, 38, 41 and 42. Those claims are not addressed in this order.

[7] Under California law, a civil conspiracy is not a separate cause of action and instead is a way to hold additional persons liable for torts committed by others, i.e.,to hold liable the planners as well as the doers. *See Wyatt v. Union Mortgage Co*, 24 Cal. 3d 773, 784 (1979).

allegedly occurred from September 10, 2006 through February 1, 2007 (*id.* at 34); cause of action # 17 for a civil conspiracy to cheat and defraud that allegedly took place from September 30, 2006 through February 1, 2007 (*id.* at 43); and cause of action # 25 for breach of contract, with the breach alleged to have occurred before January 2007 (*id.* at 62).

The limitations periods for the pre-arrest causes of action are as follows: Causes of action #s 8 - 11, 14, and 17 purport to be RICO claims and have a four-year statute of limitations. Causes of action #s 1 - 4, 6, and 7 have a two-year statute of limitations under California Code of Civil Procedure 335.1. Cause of action # 5 has a one-year statute of limitations under California Code of Civil Procedure § 340(a). Cause of action # 25 has a four-year statute of limitations under California Code Civil Procedure § 337.

Pagtakhan has not shown any reason for a delayed accrual for any of his claims against the Wrestling Defendants. The pre-arrest claims thus accrued no later than February 1, 2007. (Although some of them accrued earlier, for ease of reference the court uses the date of the latest alleged wrong in the pre-arrest claims, i.e., February 1, 2007, for all of them as the accrual date.) The amended complaint was not filed until September 7, 2012, more than 5-1/2 years later, and therefore was beyond the limitations period for all of the pre-arrest claims as they all had limitations periods of four years or less. The claims are time-barred unless there is tolling or some other reason to excuse their untimeliness.

A federal court must give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989). Pagtakhan contends he is entitled to tolling under California Code of Civil Procedure § 340.6, § 352 and § 352.1.

California Code of Civil Procedure § 340.6 provides for tolling of certain claims against an attorney for legal malpractice. The provision does not support tolling for any of Pagtakhan's claims against the Wrestling Defendants.

California Code of Civil Procedure § 352(a) provides for tolling if the person is insane at the time the cause of action accrued. For purposes of the tolling provision, "the term 'insane' has been defined as a condition of mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts."

10

*Hsu v. Mt. Zion Hospital*, 259 Cal. App. 2d 562, 571 (Cal. Ct. App. 1968); *cf. Feeley v. Southern Pac. Trans. Co.*, 234 Cal. App. 3d 949, 952 (Cal. Ct. App. 1991) (tolling proper for time during which plaintiff was in a coma immediately after the injury that gave rise to his cause of action); *Snyder v. Boy Scouts of America*, 205 Cal. App. 3d 1318, 1324 (Cal. Ct. App. 1988) (post-traumatic stress disorder does not count as "insanity" that tolls the limitations period). Pagtakhan is not entitled to tolling for the disability of insanity because the disability of insanity must exist at the time the cause of action accrues, and he provides no allegation, argument or evidence that he was insane at the time of the accrual of the causes of action. Cal. Code Civ. Proc. § 357. Pagtakhan's denial that he was incompetent and the trial court's eventual finding that he was competent also weigh against a finding of insanity. *See* Docket # 32, p. 10 (contending that his commitment was unlawful "he had been competent all along and was never delusional"). His litigation activity in state court also suggests that he was capable of caring for his property or transacting business, or understanding the nature or effects of his acts.

The final statute cited by Pagtakhan, California Code of Civil Procedure § 352.1, allows tolling for the disability of imprisonment. However, that provision does not apply to the pre-arrest claims because the disability must exist at the time the claims accrued. *See* Cal. Code. Civ. Proc. § 357. Pagtakhan is not entitled to any tolling under § 352.1 for his pre-arrest claims because all of those claims accrued before the disability of imprisonment started.

Pagtakhan also is not entitled to equitable tolling due to his earlier state court litigation. Under California law, equitable tolling is appropriate in a later suit when an earlier suit was filed and the record shows: "'(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'" *See Daviton v. Columbia/HCA Healthcare Corp*, 241 F.3d 1131, 1137-38 (9th Cir. 2001) (en banc) (citation omitted). California has long refused to apply the equitable tolling doctrine to toll the limitations period on a claim for a distinct wrong that was not the basis of the earlier proceeding. *Id.* at 1141. Pagtakhan does not satisfy the three-pronged test for equitable tolling. Pagtakhan's earlier state court case against some of the Wrestling Defendants does not support equitable

tolling because he has not shown that filing this action after that one was in good faith and reasonable conduct. Indeed, it appears that the federal action was filed only after Pagtakhan suffered several defeats in state court. Moving a case from one court to another court in the hope of obtaining more favorable rulings reflects bad faith and unreasonable conduct rather than good faith and reasonable conduct. *See Mitchell v. Frank R. Howard Memorial Hospital*, 6 Cal. App. 4th 1396 (Cal. Ct. App. 1992); *see also Hernandez v. City of El Monte*, 138 F. 3d 393, 402 (9th Cir. 1998) (judge-shopping plaintiff could not satisfy third prong of equitable tolling). Not only is the third prong not satisfied, Pagtakhan also has not shown that he satisfies the second prong as to any Wrestling Defendant other than Ceron and Alexander, whom he states are the only Wrestling Defendants who appeared in the state court action. Witnesses disappear or have faded memories, and documents disappear. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). Any defendant who was unaware of the earlier action in state court might be disadvantaged in efforts to gather evidence if first notified of litigation more than six years after the complained-of acts.

Finally, the *Heck* stay in this action does not support any tolling or otherwise excuse Pagtakhan's late filing against the Wrestling Defendants. The order staying the proceedings in this action did not state or suggest that Pagtakhan could not pursue claims that did not call into question the validity of the criminal proceedings and commitment. Any argument that Pagtakhan refrained from pursuing his claims until the conclusion of the state criminal proceedings to pursue the Wrestling Defendants is unpersuasive because he *did* file claims against them (albeit in state court) asserting the same basic claims he attempts to assert here. *See* Docket # 34-4 - 34-8 (state court first amended complaint filed August 17, 2009). Moreover, the order staying the proceedings explained the *Heck* rule and cited *Heck* and *Wallace v. Kato*; Pagtakhan could have read those cases and learned that the *Heck* bar imposed was only as to claims that called into question the validity of one's conviction or confinement and therefore would not have posed a bar to his claims against the Wrestling Defendants.

All of the pre-arrest claims are dismissed as time-barred.

12

b. <u>Arrest-Related Claims</u>

The second set of claims is based on acts and omissions that culminated with Pagtakhan's arrest on stalking charges on August 11, 2007 or occurred on that date. These claims are: causes of action # 12 and # 13 for intimidation of a victim and blackmail that allegedly occurred from September 5, 2006 through August 11, 2007 (Docket # 32, p. 31); causes of action # 15 and # 16 for conspiracy to procure a false arrest and entrapment that allegedly occurred from September 10, 2006 through August 11, 2007 (*id.* at 36); cause of action # 18 for telephonic harassment that allegedly occurred from January 10, 2007 through August 11, 2007 (*id.* at 46); causes of action # 19, # 19(a) and # 20 for attempted murder, conspiracy to commit murder and malicious arrest that allegedly took place on August 11, 2007 (*id.* at 48); cause of action # 21 for premises liability based on events that occurred on August 11, 2007 (*id.* at 52); cause of action # 22 for fraud on August 11, 2007 (*id.* at 53); cause of action # 23 for fraud occurring from September 10, 2006 through August 11, 2007 (*id.* at 55); cause of action # 24 for fraud on August 11, 2007 (*id.* at 59); cause of action # 31 for filing a false police report on or before August 11, 2007 (*id.* at 69); cause of action # 34 for conspiracy to defame the plaintiff with statements made during wrestling camp in 2006, during the months thereafter as Pagtakhan attempted to obtain a refund, and during the reports to the police that led to his arrest (*id.* at 81-83); and causes of actions # 40 and # 40(a) for intentional infliction of emotional distress and negligent infliction of emotional distress that resulted from defendants' actions (*id.* at 100-01.)

The limitations periods for the arrest-related causes of action are as follows: Causes of action # 12- 21, # 31, # 40, and # 40(a) have a two-year statute of limitations. *See* Cal. Code Civ. Proc. § 335.1. Causes of action # 22 - # 24 have a three-year statute of limitations. *See* Cal. Code Civ. Proc. § 338. Cause of action # 5 has a one-year statute of limitations under California Code of Civil Procedure § 340(a).

The claims against the Wrestling Defendants for acts and omissions leading to or occurring at Pagtakhan's arrest accrued no later than August 11, 2007, the date on which he was arrested. *See generally Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998) (plaintiff's excessive force claim accrued on day of his arrest). Nothing alleged by Pagtakhan

shows any reason for a delayed accrual for any of these claims against the Wrestling Defendants. The arrest-related claims thus accrued no later than August 11, 2007. The amended complaint was not filed until September 7, 2012, more than 5-1/2 years later, and therefore was beyond the three-year limitations period for all of the arrest-related claims. The claims are time-barred unless there is enough tolling or some other reason to excuse their untimeliness.

Pagtakhan contends he is entitled to tolling under California Code of Civil Procedure § 340.6, § 352 and § 352.1. As noted in the preceding section, § 340.6 provides tolling for legal malpractice claims and does not apply to the claims against the Wrestling Defendants. As also noted in the preceding section, § 352 provides tolling for the disability of insanity but does not help Pagtakhan because he provides no allegation, argument or evidence that he was insane at the time of the accrual of the arrest-related causes of action.

Only the final statute cited by Pagtakhan, § 352.1, applies. California recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code § 352.1(a). The tolling is not indefinite, however; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years. *Id.* On the record now before the court, Pagtakhan is entitled to two years of tolling for those claims based on his arrest on August 11, 2007, because he was in custody for at least two years after such causes of action accrued on that day. That tolling is not enough to make his arrest-related claims timely because it adds only a maximum of two years to the limitations periods, and all of his limitations period were three years or less. His amended complaint was not filed until more than five years after the accrual of the arrest-related claims and therefore all the arrest-related claims are untimely unless some other reason excuses the late filing.

Pagtakhan is not entitled to equitable tolling for the arrest-related claims because he fails on the second and third prongs of the test for equitable tolling under California law, as explained in the preceding section.

The *Heck* stay in this action does not support any tolling or otherwise excuse Pagtakhan's late filing against the Wrestling Defendants for the reasons explained in the preceding section.

14

Even if the *Heck* stay imposed before the Wrestling Defendants were sued excused the late filing for the false arrest claims, those claims against the Wrestling Defendants would be dismissed for the separate reason that a claim is not stated against any of the Wrestling Defendants. A false arrest claim is premised on the absence of probable cause for law enforcement to effectuate an arrest. *See generally Pierson v. Ray*, 386 U.S. 547, 555-58 (1967). As the absence of probable cause to support one's decision to make an arrest is essential to the tort, a claim is not stated against the Wrestling Defendants who would have had no occasion to make a probable cause determination or a decision whether to arrest. As explained in the preceding section, his conspiracy allegations are not sufficient to state a claim against any of the Wrestling Defendants for this or other torts.

        c.    <u>Claims That May Be Based On Post-Arrest Acts And Omissions</u>

Pagtakhan attempts to allege several claims about acts and omissions that occurred after his August 11, 2007 arrest. Cause of action # 33 is for false prosecution that appears to be based on some conspiracy theory, cause of action # 34 is for civil conspiracy to defame Pagtakhan, and cause of action # 37 is for a conspiracy to deprive Pagtakhan of his civil rights. As mentioned earlier in Section B, the amended complaint, as amended, fails to state a claim against any of the Wrestling Defendants for conspiracy-based liability because the conspiracy allegations are mere conclusions unsupported by allegations of material facts. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

In his amendment, Pagtakhan added no new allegations for cause of action # 33, false prosecution. The Wrestling Defendants have no conspiracy-based liability on that claim. The allegations for cause of action # 34, civil conspiracy to defame the plaintiff, are insufficient to show a conspiracy that involved any of the Wrestling Defendants. Plaintiff has simply identified several independent acts that he alleges resulted in his defamation, and labels them a conspiracy. He has not adequately alleged conspiracy-based liability for any of the defendants. *See* Docket # 37, ¶. 12-22. Indeed, only part 1 of the discussion in the amendment even mentions the

Wrestling Defendants, and those allegations show that the acts of the Wrestling Defendants did not continue after Pagtakhan's arrest, other than to testify at the Grand Jury proceedings in December 2010, for which they have immunity. Since there is no conspiracy-based liability for the Wrestling Defendants, and all of their actions that could potentially support liability directly occurred at or before Pagtakhan's arrest on August 11, 2007, any direct claim against the Wrestling Defendants for defamation would be time-barred. The allegations for cause of action # 37, civil conspiracy to deprive the plaintiff of civil rights, suffer the same problems as those for cause of action # 34 and are dismissed for the same reasons. *See* Docket # 37, ¶. 22-25. Causes of action # 33, # 34, and # 37, involved wrongs allegedly committed after Pagtakhan's arrest, and potentially could have avoided the statute of limitations problems that exist for his pre-arrest and arrest-related claims against the Wrestling Defendants. However, Pagtakhan has not adequately alleged a claim against any of the Wrestling Defendants in these causes of action. Accordingly, the Wrestling Defendants are dismissed from causes of action # 33, # 34, and # 37.

To summarize: The Wrestling Defendants are dismissed from this action because the Wrestling Defendants have absolute immunity for their reports to police, the Wrestling Defendants have absolute immunity for their testimony at grand jury proceedings, and the claims against them are all time-barred. The dismissal includes the dismissal of causes of action #s 1-15, 17-18, 20-25, and 31 in their entirety. All of these dismissed causes of action are against only the Wrestling Defendants, except causes of action # 15 and # 20, which also list defendant Chuck Witt as a defendant. With respect to Chuck Witt, causes of action # 15 and # 20 are redundant of the allegations against him in causes of action # 27 and # 28. Leave to further amend will not be granted with regard to the Wrestling Defendants because it would be futile: the court has already granted Pagtakhan an opportunity to attempt to address the statute of limitations problems and conspiracy-based liability deficiencies and he was unable to cure them.

## CONCLUSION

For the foregoing reasons, the claims against the Wrestling Defendants are dismissed. Defendants Roland Alexander (individually and dba All Pro Wrestling), Black Pants, Inc., Jason

Deadrich, Melissa Deadrich, Chris Kelsey, Gabriel Ramirez, Shannon Ramirez, Victor Ceron, and Rachel Donaldson Collins are dismissed from this action. The court will address the remaining claims and defendants in a separate order.

Plaintiff Joanna Estacio Pagtakhan is dismissed from this action because she did not sign the amended complaint or the amendment.

IT IS SO ORDERED.

Dated: June 17, 2013

_____
SUSAN ILLSTON
United States District Judge