UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON PAGTAKHAN, | No. C 08-2188 SI (pr) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT FOR COUNTY DEFENDANTS** |
| v. | |
| ROLAND ALEXANDER; et al., | **(Docket # 58)** |
| Defendants. | |

## INTRODUCTION

Plaintiff filed a *pro se* civil rights action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, claiming among other things, violations of his civil rights stemming from a prosecution arising out of his alleged stalking of persons connected to a wrestling school in which he had enrolled. The court stayed the action pending resolution of the criminal charges. Three years later, the charges were dismissed, and the stay was lifted. Plaintiff then filed a 108-page first amended complaint with more than 40 causes of action against 35 defendants, and later filed a 26-page amendment. The Court dismissed some of the defendants, and ordered service on other defendants. The County Defendants have moved for summary judgment on the grounds that (1) the claims against them are barred by the principles of res judicata and (2) they have immunity. Plaintiff first responded with a cursory opposition brief which attempted to simultaneously oppose five separate motions by different defendants. The court permitted plaintiff to file further written oppositions to the motions pending against him. Plaintiff filed short opposition briefs to the several motions, including an opposition to the County Defendants' motion, but submitted no evidence.

**BACKGROUND**

A.   Overview of Plaintiff's Action

The following is a summary of the factual allegations made in plaintiff's first amended complaint: Pagtakhan wanted to be a professional wrestler, so he signed up for a camp at the All Pro Wrestling School in Hayward. The people who operated and took part in the wrestling camp made statements and did other things that allegedly violated his state and federal rights from about July 2006 until August 2007. He wanted to drop out of the program (or the All Pro Wrestling operators wanted him to leave it), and a disagreement arose as to whether he was owed a refund or he owed further monies for the program. Docket # 32, First Amended Complaint (hereinafter "FAC"), p. 29. After Pagtakhan dropped out of the program, the All Pro Wrestling people conspired to have him falsely charged and arrested for a crime. FAC at 36. On August 11, 2007, Pagtakhan was arrested in the parking lot across the street from the All Pro Wrestling gym in Hayward, after having been lured there under a ruse that he would receive a partial refund from the wrestling camp. *Id.* at 48. He was arrested at gunpoint by Burlingame police inspector Chuck Witt, who had been investigating him for months and conspiring with the All Pro Wrestling people to falsely arrest him. *Id.* at 48-49. Two Hayward police officers assisted in the arrest. *Id.* at 49. Pagtakhan thereafter was prosecuted and falsely imprisoned. Pagtakhan wanted a speedy trial, but his attorney declared a doubt as to his competency and the judge suspended the criminal proceedings to deal with the competency issues. *Id.* at 67. After Pagtakhan's arrest, the police searched his home and seized two computers. They later seized some model martial arts weapons. *Id.* at 66. Doctors "falsified and fabricated reports," and misdiagnosed Pagtakhan as delusional and incompetent. *Id.* at 9. Pagtakhan was transferred to Napa State Hospital and remained there for more than three years. Doctors at the hospital were negligent in their examinations and diagnoses of him. *Id.* at 12. Conservatorhip proceedings were instituted against him but were unsuccessful. On October 27, 2011, a jury found that he did not have a mental illness and was competent for trial. *Id.* at 9-10. The criminal charges were dismissed on June 14, 2012. *Id.* at 6.

This Court dismissed the claims against the Wrestling Defendants as time-barred. Docket

# 38. The Court allowed service on some of the defendants, including among others: Christina Webb, Donald Weiher, and Lisa Mancini (the "non-D.A. defendants"), as well as James P. Fox, Elizabeth Hill, Melissa McKowan, Jane Doe Feldman, Stephen Wagstaffe and the San Mateo County District Attorney's Office (the "D.A. defendants"). Docket # 39. The non-D.A. defendants and the D.A. defendants are collectively referred to as the County Defendants.

B.  Claims Against The County Defendants

   1.  Claim Against the Non-D.A. Defendants For Malicious Prosecution

Causes of action (B) and (C) in the first amended complaint are for "Malicious Prosecution As To Conservatorship Proceedings," with citations to 42 U.S.C. § 1983 and § 1985(2) and § 1985(3). *See* FAC at 9. The defendants listed for these causes of action include the D.A. defendants and the non-D.A. defendants. *Id.*

Pagtakhan's first amended complaint alleges that defendant Lisa Mancini was a public guardian, and that she, Donald Weiher, and Christina Webb worked at the San Mateo Public Guardian's Office. FAC at 4-5. (Donald Weiher was the appointed temporary conservator and Christine Webb signed the petition seeking to establish the conservatorship. *See* FAC at 9; Docket # 58-3 at 53.) Pagtakhan alleges that assistant district attorney McKowan, public defender Hove and Webb "conspired and acted to have Pagtakhan further committed by a conservatorship"; that Dr. Leifer provided McKowan and Webb with a false report misdiagnosing Pagtakhan as delusional, incompetent and a danger to the community; and that Dr. Leifer gave false testimony during the conservatorship trial. FAC at 9; Docket # 37 at 6-7, 20. "On 10/27/2011, Webb, Weiher (appointed temporary conservator) and Mancini lost that trial by a 12 to 0 unanimous decision; LPS case no. 120759." FAC at 9. According to Pagtakhan, the jury at the conservatorship trial determined that he did not have a mental illness, was competent for trial, and was not a danger to the community. *Id.* at 10. He further alleges that "Webb purposefully performed a biased investigation into Pagtakhan's case as there was overwhelming evidence that he was unlawfully committed in the first place. Weiher and Mancini were negligent of that fact." FAC at 10. He further alleges that the Public Guardian's

Office failed to supervise Webb and to properly investigate his case, resulting in the malicious prosecution of the conservatorship proceedings against him. *Id.*

The court earlier dismissed the malicious prosecution claims against the D.A. defendants for prosecuting the criminal case against Pagtakhan. *See* Docket # 39 at 5. After plaintiff filed an amendment that attempted to cure deficiencies in his conspiracy pleading (*see* Docket # 35 and # 37), the court dismissed the allegations that attempted to hold persons liable based on their involvement in conspiracies. *See* Docket # 39 at 7. The dismissal of the conspiracy-based claims means that no claim is stated under 42 U.S.C. § 1985(2) or (3), as those subsections provide causes of actions for certain conspiracies.

2. <u>Claims Against The D.A. Defendants</u>

The causes of action remaining against the D.A. Defendants are for defamation, invasion of privacy by false light, and libel. *See* FAC at 81-89.[1] The defendants listed for these causes of action include San Mateo County District Attorney James Wagstaffe, former San Mateo County District Attorney James P. Fox, deputy district attorney Jane Doe Feldman, former deputy district attorney Elizabeth M. Hill, deputy district attorney Melissa R. McKowan, and the San Mateo County District Attorney's Office. *See* FAC at 4, 81-89.

Pagtakhan alleges that members of the District Attorney's office made false press releases. FAC at 82. District Attorney Wagstaffe allegedly defamed him by distributing libelous press

---

[1] The defamation cause of action was pled as a cause of action for "civil conspiracy to defame the plaintiff," citing 42 U.S.C. § 1985(2) and (3). As mentioned earlier, the court has dismissed the conspiracy-based allegations, *see* Docket # 39 at 5, 7, so that all that remains is a cause of action for defamation.

The court also has dismissed the malicious prosecution claims against the D.A. Defendants. *See id.* at 5. The claims against the D.A. defendants that are based on the prosecution of the conservatorship proceeding must be dismissed because the D.A. defendants have absolute prosecutorial immunity against such claims just as they do against claims based on the prosecution of the criminal case. Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is necessary to assure that he or she can perform his or her respective functions without harassment or intimidation. *See Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991). The "reasons supporting the doctrine of absolute immunity apply with equal force regardless of the nature of the underlying action." *Id.*

4

releases and conferring with the *Daily Journal* and *San Francisco Examiner* newspapers. FAC at 10. The District Attorney's Office "has been negligent of its employees' unlawful practices." *Id.* Wagstaffe spoke with Michelle Durand of the *Daily Journal*, and slandered Pagtakhan and "leaked information in which falsehood was disclosed and then printed in (libel) 'The Daily Journal' on 08/15/2007." FAC at 83. The articles were amended and repeated on other occasions in 2007 and 2008. *Id.* at 84-85. Hill and Wagstaffe allegedly leaked false and prejudicial information to the media to impair Pagtakhan's right to a fair trial. *Id.* at 87.

Pagtakhan alleges that deputy district attorneys Hill and McKowan falsely prosecuted him. Deputy district attorney Hill "compiled a completely fraudulent, irrational, slanderous and scientifically impossible criminal complaint" in San Mateo County Superior Court with the malicious intent to force him to accept a plea bargain. FAC at 73; Docket # 37 at 15. The overcharging of Pagtakhan in the criminal case was "prima facie evidence" of the conspiracy to defame him. FAC at 75, 80. The overcharged case was publicized several times in 2007 and 2008, and Pagtakhan was humiliated by that publicity. *Id.* at 81; Docket # 37 at 15.

Pagtakhan also alleges that the D.A. defendants committed an invasion of privacy by false light and libeled him in their actions disseminating the information as described above. FAC at 88-89.

C. The Earlier State Court Action

Pagtakhan filed a separate action in San Mateo County Superior Court that is against many of the same defendants and alleges many of the same claims as in this federal civil rights action. On August 17, 2009, in *Pagtakhan v. Roland Alexander, et al.*, San Mateo County Superior Court No. CIV479102, Pagtakhan filed a *pro se* first amended complaint for damages under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and state law claims for personal injury, general negligence, intentional tort, premises liability, fraud and breach of contract. The defendants included several of the D.A. Defendants, i.e., James P. Fox, Stephen Wagstaffe, and Elizabeth Hill.

The allegations against the D.A. defendants in the state court action are the same as in the

federal court action; indeed, these portions of the federal pleading appear to have been cut-and-pasted from the state court pleadings. The defamation claims at pages 83-84 of the federal court first amended complaint are found at page 72-76 of the state court first amended complaint (Docket # 34-7 at 16-20). The invasion of privacy and libel claims at pages 89-90 of the federal court first amended complaint are found at pages 76-77 of the state court first amended complaint (Docket # 34-7 at 20-21). The only notable difference is that the federal pleading alleges a larger time frame for damages to plaintiff because it was filed three years after the state court pleading. Plaintiff does not allege different acts or omissions by defendants in the federal action, but only that the same information provided in 2007-2008 was repeated by third parties in later news publications.

Pagtakhan lost in state court. The D.A. Defendants demurred to all causes of action on the grounds that, among other things, they had absolute prosecutorial immunity from the suit for their actions conducted in furtherance of initiating and prosecuting the criminal case. *See* Docket # 58-3 at 3-10. The San Mateo County Superior Court sustained the demurrer with leave to amend, explaining that the causes of action against the prosecutors (i.e., the causes of action for false prosecution, defamation, conspiracy and negligence) failed to state a cause of action because the prosecutors were immune under California Government Code § 821.6. Docket # 58-3 at 15. The San Mateo County Superior Court granted plaintiff "leave to amend to allege any facts that might give rise to an exception from the statutory immunity." *Id.* Plaintiff did not file a second amended complaint. *See id.* at 18. Accordingly, the San Mateo County Superior Court dismissed the D.A. defendants on January 19, 2011 because there were "no other remaining allegations against these Defendants." *Id.* at 20. Plaintiff appealed the dismissal to the California Court of Appeal. *Id.* at 24-26. The California Court of Appeal dismissed the appeal after Pagtakhan failed to file his appellate brief. *Id.* at 28.

D. The Conservatorship Action

An *ex parte* petition to establish a temporary conservatorship over Pagtakhan under California Welfare & Institutions Code § 5008(h)(1)(B) was signed by defendant Christina

6

Webb on or about May 20, 2011. Docket # 58-3 at 30-31. The San Mateo County Superior Court issued an order on May 20, 2011 appointing a temporary conservator over Pagtakhan. *Id.* at 50.

A petition to establish conservatorship over Pagtakhan was signed by defendant Christina Webb on or about May 24, 2011 and filed on May 25, 2011 in the San Mateo County Superior Court. *Id.* at 53-54. An amended petition was filed on August 3, 2011. *Id.* at 59. Pagtakhan demanded a jury trial, *id*. at 57, and eventually a trial was held starting on October 25, 2011, *id.* at 70. The jury returned a verdict against conservatorship. *See id.* at 73-74.

The verdict form in the conservatorship proceedings stated: "We, the jury in the above-entitled action, by at least a minimum of nine (9) of the jury members, find MARLON PAGTAKHAN: (1) does not have a mental disorder, (2) is able to understand the nature and the purpose of the proceedings taken against him and to assist counsel in the conduct of his defense in a rational manner, OR (3) does not remain dangerous." *Id.* at 74. That same verdict form shows that the People had the burden of proof on all the issues, including to "prove with a preponderance of the evidence that as a result of a mental disorder [Pagtakhan] is unable to understand the nature and purpose of the proceedings taken against him or to assist counsel in the conduct of his defense in a rational manner," and to "prove beyond a reasonable doubt that [he] suffers a mental disorder, and that as a result of a mental disorder, [he] continues to represent a substantial danger or physical harm to others." *Id.*[2]

---

[2] Contrary to Pagtakhan's oft-repeated assertion that the verdict shows that he is not and never was incompetent, the verdict does not establish competence. First, the verdict did not make any sort of retrospective finding: the verdict was based on the facts as they existed on October 27, 2011 and not as they existed in earlier years. In fact, the verdict form instructed the jury that the court had taken judicial notice that Pagtakhan "has been found mentally incompetent." Docket # 58-3 at 74. Second, the verdict was in the disjunctive – i.e., the jury only had to find one of three facts, not all three facts, to render a verdict against a conservatorship. For example, the jury could have returned a verdict against conservatorship upon finding that Pagtakhan did not have a mental disorder even though he remained dangerous, or the jury could have found that he did have a mental disorder but didn't remain dangerous. Third, the verdict found that the People failed to meet their burden of proof beyond a reasonable doubt, rather than that Pagtakhan had met any burden of proof. The verdict thus did not even conclusively establish competence as of October 2011.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

/ / /

/ / /

## DISCUSSION

A.  Plaintiff Cannot Relitigate His Claims Against The D.A. Defendants

Under the doctrine of res judicata (also known as the claim preclusion doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel (also known as the issue preclusion doctrine), once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata bars not only every claim that was raised in state court but also bars the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief. A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986); *Smith v. City of Chicago*, 820 F.2d 916, 920 (7th Cir. 1987) (claim preclusion applied where single core of operative facts formed basis of both lawsuits and plaintiff neglected to raise § 1983 claim until years after it occurred and not until adverse judgment was rendered on cause of action for employment discrimination).

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In California, a final judgment in state court "'precludes further proceedings if they are based on the same cause of action.'" *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004)). Under California's primary rights theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty." *Id.* (citation omitted). If this cause of action test is satisfied, then the same primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery. *Id.* Thus, a civil rights action under § 1983 may be

dismissed as barred by res judicata if a prior California state court judgment rendered a valid judgment on the merits in favor of a defendant. *See Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850-51 (9th Cir. 1986) (citing *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (Cal. 1976)). Even new defendants may be protected by res judicata if they are in privity with the defendants from the original action. *See Church of New Song v. Establishment of Religion on Taxpayers' Money in the Fed. Bureau of Prisons*, 620 F.2d 648, 654 (7th Cir. 1980) (quoting *Sunshine Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.")); *see also Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (Cal. 2011) (under California law, res judicata bars not only a party but also one in privity with a party in the prior litigation).

The D.A. defendants (with the exception of McKowan and Feldman, who were not parties to the state action) have already prevailed against plaintiff in state court with a successful demurrer to causes of action for false prosecution, conspiracy to defame plaintiff, conspiracy to deprive plaintiff of civil rights, and general negligence. Docket # 58-3 at 14-18. The trial court dismissed the action and the court of appeals dismissed his appeal. *Id.* at 28. A judgment made after sustaining a demurrer is a judgment on the merits, and will "be a bar to subsequent action alleging the same facts." *Keidatz v. Albany*, 39 Cal. 2d 826, 828 (Cal. 1952). The state court judgment also bars the causes of action against assistant district attorneys McKowan and Feldman because they are in privity with the original D.A. defendants, even though they were not named in the state court action. Hence, there has been a final judgment on plaintiff's state action against the D.A. defendants for the purposes of res judicata. Plaintiff's federal claims against the D.A. defendants allege the same factual background, and contain the same causes of action for defamation, invasion of privacy, and libel, as his state court claims.[3] Thus, under

---

[3] As stated in the background section, while plaintiff's federal pleading alleges a time frame up until 2012 for his claims against the D.A. defendants, the claims are based on the same acts as the state claims, but include a larger time frame to account for third party news organizations publishing subsequent updates to plaintiff's story.

1 California's primary rights theory, plaintiff is alleging the same cause of action as was already
2 decided in the state court. Giving the full faith and credit due the state court proceedings,
3 plaintiff's claims against the D.A. defendants are barred by res judicata. In addition, because
4 the claims against the individual D.A. defendants are barred, the claims made against the D.A.'s
5 office also are barred.

### B. The D.A. Defendants And Non-D.A. Defendants Are Immune [4]

California Government Code section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "California courts construe this provision broadly 'in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits.'" *Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1108-09 (N.D. Cal. 2011) (quoting *Gillan v. City of San Marino,* 147 Cal. App. 4th 1033, 1048 (Cal. Ct. App. 2007)). The statute applies not only to prosecutorial duties, but also to "[a]cts undertaken in the course of an investigation, including press releases reporting the progress or results of the investigation . . . ." *Gillan*, 147 Cal. App. 4th at 1048; *Cappuccio Inc. v. Harmon*, 208 Cal. App. 3d 1496, 1500 (Cal. Ct. App.1989) (statements to the press about a criminal proceeding are within the prosecution process and covered by § 821.6). "Immunity under Government Code section 821.6 is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected under the statute, including defamation and intentional infliction of emotional distress." *Gillan*, 147 Cal. App. 4th at 1048; *see, e.g., id.* (prosecutor had § 821.6 immunity against claims for defamation and intentional infliction of emotional distress based on his statements in press release after plaintiff was detained by police); *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (Cal. Ct. App. 1999) (prosecutor had § 821.6 immunity for allegedly

---

[4] Because defendants are immune from claims brought by plaintiff, they are also immune from claims brought by the derivative plaintiffs which allege the same foundational facts.

defamatory statements in his press release that stated he would not prosecute although there had been minor violations of the law); *id*. at 1292-93 ("the test of immunity is not the timing of the publication but whether there is a causal relationship between the publication and the prosecution process. If the making and publication of the statements were part of the process, they were protected by the immunity in section 821.6"); *Cappuccio*, 208 Cal. App. 3d at 1502 (investigating officer had § 821.6 immunity for allegedly libelous post-conviction public announcement that exaggerated the facts of the crime leading to plaintiff's conviction).

Even if the claims against the D.A. defendants are not barred by res judicata, the prosecutors are shielded from prosecution by section 821.6, as has already been decided in the state court. Docket # 58-3, Ex. B. The immunity statute covers a wide range of duties performed within the scope of employment, including giving press releases. *See Cappuccio*, 208 Cal. App. 3d at 1500. Plaintiff's claims for defamation, libel, and invasion of privacy all stem from members of the D.A.'s office talking to reporters about the criminal proceedings against Pagtakhan. Because section 821.6 is interpreted to cover interactions with the press that occur within the scope of employment, the D.A. defendants have immunity from the claims against them.

The non-D.A. defendants are employees of the San Mateo County Public Guardian's Office, and as government employees they also have immunity under section 821.6 for performing duties within the scope of their employment. Plaintiff's claims against the non-D.A. defendants are based on the prosecution of the conservatorship proceedings. FAC at 9-11; Docket # 58-3, Ex. I. Section 821.6 applies because those actions were taken within the scope of the non-D.A. defendants' employment as employees of the Public Guardian's Office. Thus, the non-D.A. defendants have immunity against the malicious prosecution claims against them.

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the County Defendants' motion for summary judgment is GRANTED. (Docket # 58.) The County Defendants are entitled to judgment as a matter of law on plaintiffs' first amended complaint.

IT IS SO ORDERED.

Dated: November 21, 2013

SUSAN ILLSTON
United States District Judge