1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARLON E. PAGTAKHAN,

          Plaintiff,

    v.

JOHN DOE, inspector; et al.,

          Defendants.

_____/

No. C 08-2188 SI (pr)

**ORDER DISMISSING DEFENSE ATTORNEY AND PSYCHOLOGISTS, AND GRANTING PARTIAL LEAVE TO AMEND CLAIMS AGAINST WITT AND BPD**

[ECF No. 43]

**INTRODUCTION**

       This far-reaching action has been described in a recent order, and need not be described again here. This order addresses several motions to dismiss and a motion for judgment on the pleadings. Eric Hove, the attorney appointed to represent Pagtakhan in the state court criminal case, has moved to dismiss the first amended complaint. Dr. Thomas Samuels and Dr. Joel Leifer, psychologists appointed to evaluate Pagtakhan's competence, have moved to dismiss the first amended complaint. Dr. Jatinder K. Singh, another psychologist appointed to evaluate Pagtakhan's competence, has filed an answer and moved for judgment on the pleadings. Burlingame police inspector Chuck Witt and the Burlingame Police Department have moved to dismiss the first amended complaint. Pagtakhan has opposed all the motions to dismiss. For the reasons discussed below, the court will dismiss Hove, Samuels, Leifer and Singh from this action; will grant Witt's motion to dismiss in part; and will require Pagtakhan to file a second amended complaint that is limited to claims that have not been dismissed. The claims against

the moving defendant will be discussed later in this order.

**DISCUSSION**

A.    Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted."   A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).   The court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).   The court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences.   *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001).   In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings.   *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) may be filed when the pleadings are closed.   The court uses the same standards applicable to a Rule 12(b)(6) motion.   *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).   "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999).

B.    Judicially Noticed Facts - State Court Proceedings

To determine what occurred in state court, the court takes judicial notice of the submitted records from (1) the criminal case, *People v. Pagtakhan*, San Mateo County Superior Court Case

United States District Court
For the Northern District of California

No. MH463328A; (2) the conservatorship proceedings, *In Re Pagtakhan*, San Mateo County Superior Court LPS Case No. 120759; and (3) the civil action, *Pagtakhan v. Alexander, et al.,* San Mateo County Superior Court Case No. CIV479102. *See* Fed. R. Evid. 201(b). A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted).

Pagtakhan was charged in August 2007 with several counts of stalking, stalking with a prior conviction for stalking and making criminal threats. *See* Docket # 66-2 at 4. (Pagtakhan alleges that, at a hearing on August 23, 2007, attorney Hove declared a doubt as to his competency, and the trial court promptly suspended criminal proceedings so that psychologists could be appointed to evaluate Pagtakhan's competency.)

On September 7, 2007, the trial court issued an "Order Appointing Doctors" to examine and investigate the competency of Pagtakhan pursuant to California Penal Code §§ 1367-1368. Docket # 66-2 at 2. That order appointed Dr. Singh and Dr. Novak to "report, in writing, their opinions and conclusions to this Court . . . [and], when summoned, [to] testify in proceedings in which the defendant's competency may be in question." *Id.* The docket sheet stated that a hearing was held on September 26, 2007 at which the court determined that the reports of the two appointed doctors were in conflict and appointed a third doctor, Dr. Samuels. Docket # 66-2 at 7. The docket sheet stated that, on October 5, 2007, an order was entered appointing Dr. Samuels to examine Pagtakhan's competency pursuant to California Penal Code §§ 1367-1368. Docket # 66-2 at 8. The docket sheet stated that, on October 24, 2007, a hearing was held at which the court reviewed the reports of the three doctors and concluded that Pagtakhan was not competent to stand trial. *Id.* Shortly thereafter, Pagtakhan was sent to a state hospital.

On April 5, 2011, the trial court issued an order appointing Dr. Joel Leifer, a psychologist, to examine Pagtakhan and his records to investigate whether he was competent to stand trial. Docket # 56-1 at 3-4. That order provided that, if the examining doctor "determines

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that the defendant is not competent to stand trial," the doctor will determine and report on whether the defendant is a danger to himself or others as defined in Penal Code § 1370(a)(2)(B)(ii)(11). *Id.* The order further provided that the appointed doctor will report his "opinions and conclusions in writing to [the] Court and will, when summoned, testify in proceedings in which the defendant's competency may be in question." *Id.* at 4. The docket sheet for the criminal case stated that, on April 28, 2011, a hearing was held at which the court considered the report of Dr. Leifer and found "defendant is not presently competent to stand trial. Conservatorship proceedings to be instituted." Docket # 66-2 at 11.

The verdict form in the conservatorship trial held in October 2011 stated: "We, the jury in the above-entitled action, by at least a minimum of nine (9) of the jury members, find MARLON PAGTAKHAN: (1) does not have a mental disorder, (2) is able to understand the nature and the purpose of the proceedings taken against him and to assist counsel in the conduct of his defense in a rational manner, OR (3) does not remain dangerous." Docket # 58-3 at 74. That same verdict form stated that the People had the burden of proof on all the issues, including to "prove with a preponderance of the evidence that as a result of a mental disorder [Pagtakhan] is unable to understand the nature and purpose of the proceedings taken against him or to assist counsel in the conduct of his defense in a rational manner," and to "prove beyond a reasonable doubt that [he] suffers a mental disorder, and that as a result of a mental disorder, [he] continues to represent a substantial danger of physical harm to others." *Id.*[1]

---

[1] Contrary to Pagtakhan's oft-repeated assertion that the verdict shows that he is not and never was incompetent, the verdict does not establish competence. First, the verdict did not make any sort of retrospective finding: the verdict was based on the facts as they existed in October 2011 and not as they existed in earlier years. In fact, the verdict form instructed the jury that the court had taken judicial notice that Pagtakhan "has been found mentally incompetent." Docket # 58-3 at 74. Second, the verdict was in the disjunctive – i.e., the jury only had to find one of three facts to render a verdict against a conservatorship. For example, the jury could have returned a verdict against conservatorship upon finding that Pagtakhan did not have a mental disorder even though he remained dangerous, or the jury could have found that he did have a mental disorder but did not remain dangerous. Third, the verdict demonstrates that the jury found that the People failed to meet their burdens of proof, rather than that Pagtakhan had met any burden of proof. The verdict thus did not even conclusively establish competence as of October 2011.

United States District Court
For the Northern District of California

1  Pagtakhan filed a complaint and a first amended complaint in state court that largely

2  duplicate his pleadings in federal court. There, as here, he complained about the operators of

3  the wrestling school, his arrest, his prosecution, his competency proceedings, and his

4  commitment to a state hospital. Most of the defendants in the federal actions were defendants

5  in the state court action. The proceedings in the state court civil action filed by Pagtakhan are

6  discussed later in this order in the res judicata analyses for the motions to dismiss filed by

7  defendants Hove, Witt and Burlingame Police Department.

8

9  C.  Analysis of Pending Motions

10      1.  Psychologists Dr. Samuels, Dr. Singh and Dr. Leifer

11          a.  Allegations Against Psychologists

12  Pagtakhan alleged claims against Dr. Samuels, Dr. Singh, and Dr. Leifer for malicious

13  prosecution, civil conspiracy to defame plaintiff, and intentional and negligent infliction of

14  emotional distress. *See* First Amended Complaint ("FAC") at 9, 81, 100. The conspiracy to

15  defame and infliction of emotional distress claims were based on same wrongful evaluations and

16  false reports that form the basis for the malicious prosecution claims. *See* FAC at 81-82 and

17  100.[2]

18  The first amended complaint alleged that, after a doubt was declared as to Pagtakhan's

19

20      [2]There are no federal claims remaining against the psychologists. The court earlier
    dismissed the allegations of conspiracy-based liability because the conspiracy allegations were
21  conclusory. *See* Docket # 39 at 7. Absent a conspiracy, there is no liability under § 1985(2) or
    (3).
22
        In general, malicious prosecution is not a federal constitutional tort if process is available
23  within the state judicial system to remedy such wrongs, although a due process claim may be
    stated when a prosecution is conducted with malice and without probable cause, and with the
24  intent to deprive a person of equal protection of the laws or another specific constitutional right.
    *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *Usher v. City of Los*
25  *Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987). A plaintiff must then also demonstrate all of the
    elements of malicious prosecution under state law. *Usher*, 828 F.2d at 562. Pagtakhan's first
26  amended complaint, liberally construed, alleged a state law claim for malicious prosecution but
    did not allege a cognizable § 1983 claim because there was no allegation of that extra something
27  that would elevate a state law malicious prosecution claim into a § 1983 claim.

28
                                            5

United States District Court
For the Northern District of California

1    competency, Dr. Singh and Dr. Samuels were "hired" by the District Attorney's office "to

2    provide the prosecution with falsified and fabricated reports [mis]diagnosing Pagtakhan [as]

3    delusional and incompetent." FAC at 9 (first brackets in source).[3] Pagtakhan was transferred

4    to Napa State Hospital without a trial and did not have a "mandated retrial on the issue of

5    competence after 18 months of being committed." *Id.* In the conservatorship proceedings in

6    2011, Dr. Leifer provided to the prosecutor and public guardian "a falsified and fabricated report

7    [mis]diagnosing Pagtakhan as delusional, incompetent, and a danger to the community." *Id.*

8    (brackets in source). Dr. Leifer also provided "false and perjured testimony" during the

9    conservatorship trial at which Pagtakhan prevailed. *Id.*

10

11        b.    Analysis

12        The psychologists are shielded against all of Pagtakhan's claims because they (1) have

13   absolute quasi-judicial immunity against all the claims under state law and (2) are shielded by

14   the statutory litigation privilege from all but the malicious prosecution claim.

15       The state law doctrine of judicial immunity "bars civil actions against judges for acts

16   performed in the exercise of their judicial functions." *Howard v. Drapkin*, 222 Cal. App. 3d 843,

17   851 (Cal. Ct. App. 1990). "Under the concept of 'quasi-judicial immunity,' California courts

18   have extended absolute judicial immunity to persons other than judges if those persons act in a

19   judicial or quasi-judicial capacity." *Id.* at 852-53. To determine whether a person is acting a

20   quasi-judicial manner under California law, the courts look at "'the nature of the duty

21   performed,'" rather than the title or classification of the person performing it. *Id.* at 853. The

22   person need not be a public official. *Id.* at 853-54.

23   ───────────────

24       [3]The court need not accept as true the allegation that the district attorney "hired" Dr.
     Singh and Dr. Samuels, in light of the judicially noticed fact that the trial court appointed those
25   psychologists pursuant to the statute. *See Sprewell*, 266 F.3d at 988. Not only do the state court
     records show a court appointment, the statutory scheme contemplates court appointment of the
26   psychologists. *See* Cal. Penal Code § 1369(a) (court shall appoint two psychiatrists/
     psychologists; one "may be named by the defense and one may be named by the prosecution.")
27

28                                         6

United States District Court
For the Northern District of California

1  In *Howard*, the court held that a psychologist who had been appointed at the behest of the

2  parents in a child custody dispute to evaluate the facts and circumstances and render non-binding

3  findings and recommendations had absolute quasi-judicial immunity against the mother's

4  complaint for professional negligence and infliction of emotional distress. *Id.* at 860. The court

5  in *Howard* surveyed cases in which quasi-judicial immunity had been granted in other

6  jurisdictions to persons serving "functions integral to the judicial process" and acting "as arms

7  of the court" – including a conservator, a mediator, a receiver appointed by court to manage

8  property of a marital estate during dissolution proceedings, a psychologist for a child in a child

9  abuse case, a probation officer preparing a presentencing report, and a psychiatrist involved in

10  terminating parental rights. *Id.* at 855-56.

11  > [This approach] is consistent with the relevant policy considerations of attracting to an
   > overburdened judicial system the independent and impartial services and expertise upon
12  > which that system necessarily depends. Thus, we believe it appropriate that these
   > 'nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial
13  > process' [citation] should be given absolute quasi-judicial immunity for damages claims
   > arising from their performance of duties in connection with the judicial process.
14

15  *Id.* at 857. Absolute quasi-judicial immunity also has been held by California courts to exist for

16  a guardian ad litem, a psychological evaluator, and a court-appointed mediator. *See McClintock*

17  *v. West*, 219 Cal. App. 4th 540, 550 (Cal. Ct. App. 2013)(guardian ad litem had absolute quasi-

18  judicial immunity for actions within the scope of her appointment); *Friedman v. Child Custody*

19  *and Family Research Center*, 2004 WL 908896 (Cal. Ct. App. 2004) (unpublished decision)

20  (family research center "acting as a neutral third party in performing a psychological evaluation

21  to provide the court with recommendations in custody dispute" was entitled to absolute quasi-

22  judicial immunity against claims pertaining to its evaluation); *Goad v. Ervin*, 2003 WL

23  22753608 (Cal Ct. App. 2003) (unpublished decision) (court-appointed mediator entitled to

24  absolute quasi-judicial immunity for her memo to judge containing observations made while

25  attempting to conduct a family law mediation); *cf. Webb v. Louw*, 2003 WL 22017840 , *13

26  (Cal. Ct. App. 2003) (unpublished decision) (court-appointed attorney representing interests of

27  children with regard to custody and visitation matters during marriage dissolution proceedings

28

1    *not* entitled to absolute quasi-judicial immunity).

2           Under California law, the psychologists are entitled to absolute quasi-judicial immunity

3    against Pagtakhan's claims.  Each of the psychologists conducted a psychological evaluation of

4    Pagtakhan, prepared a report, and may have given testimony about his evaluation and

5    conclusions.  The psychologists' alleged conduct was within the scope of what they had been

6    appointed by the court to do.  The psychologists performed a function integral to the judicial

7    process by providing independent expert evaluations on the specialized issue of a litigant's

8    competence.  *See Howard*, 222 Cal. App. 3d at 857.  The absolute quasi-judicial immunity is an

9    absolute defense to all of Pagtakhan's claims against the psychologists.

10          The court has analyzed the immunity question under state law because the malicious

11   prosecution claim in the first amended complaint is a state law malicious prosecution claim.  An

12   immunity analysis for a § 1983 claim would entail a different approach because *Buckley v.*

13   *Fitzsimmons*, 509 U.S. 259 (1993), requires that a federal court decide absolute immunities using

14   a "functional approach" and with reference to the similarity of the functions performed by a

15   defendant to those "functions that would have been immune when Congress enacted § 1983" in

16   1871.  *See id.* at 268-69.

17          In addition to the absolute quasi-judicial immunity they have, the psychologists are

18   entitled to dismissal of any claim other than the malicious prosecution claim because the

19   California litigation privilege bars tort liability for their alleged conduct.  California Civil Code

20   § 47(b) provides that a publication made in any judicial proceeding is privileged.

21          "Although originally enacted with reference to defamation [citation], the privilege is now
           held applicable to any communication, whether or not it amounts to a publication
22         [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to
           any publication required or permitted by law in the course of a judicial proceeding to
23         achieve the objects of the litigation, even though the publication is made outside the
           courtroom and no function of the court or its officers is involved. [Citations.] [¶] The
24         usual formulation is that the privilege applies to any communication (1) made in judicial
           or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3)
25         to achieve the objects of the litigation; and (4) that have some connection or logical
           relation to the action. [Citations.]"
26
27   *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (Cal. 2006) (quoting *Silberg v. Anderson*, 50 Cal.3d

28                                                      8

205, 212 (Cal. 1990)).  Communications "with 'some  relation' to judicial proceedings" are "absolutely immune from tort liability" under the litigation privilege.  *Rusheen*, 37 Cal. 4th at 1058 (citation omitted).  The privilege has been found applicable to a claim alleging the presentation of false or perjurious testimony or declaration, *Pollock v. University of Southern California*, 112 Cal. App. 4th 1416, 1431 (Cal. Ct. App. 2003), as well as a claim alleging that an expert witness had manufactured false evidence for a litigant in a dissolution action, *Carden v. Getzoff*, 190 Cal. App. 3d 907, 913-15 (Cal. Ct. App. 1987).  Here, the psychologists' alleged false reports and statements to the court are covered by California's litigation privilege.  As a result, the litigation privilege shields the psychologists from all state law claims except the malicious prosecution claim.

## 2.    Defense Attorney Eric Hove

### a.    Allegations Against Hove

Pagtakhan alleged claims against defense attorney Eric Hove for attorney malpractice and malicious prosecution.  The claims stem from Hove declaring a doubt as to Pagtakhan's competency at the outset of criminal proceedings – an act that led to the state court instituting competency proceedings that resulted in Pagtakhan spending several years in a state hospital.

The first amended complaint alleged the following:  On August 22, 2007, Pagtakhan met with Hove and requested a speedy trial.  The next morning in court, Hove told Pagtakhan, "'I want you to see a doctor,'" and plaintiff replied, "'[w]hatever you think is best.'" FAC at 91. Hove then conferred with the prosecutor and the inspector outside the courtroom, and the attorneys returned to the courtroom at the same time the judge entered.  *Id.* at 92; Docket # 37 at 6-7, 16-17, 21.  As the hearing started, "Hove immediately declare[d] a single word, 'Doubt,'" which caused the judge to suspend the criminal proceedings and schedule "unnecessary competency proceedings."  FAC at 92.  "There was no reason at all as to why Eric M. Hove initiated the 'competency scheme' and the Plaintiff at the time did not know what was going on."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

*Id.* Hove spoke with Pagtakhan several times over the next few months and promised to make copies of documents but did not do so.   Hove did not adequately investigate Pagtakhan's case or push for a speedy trial.  *See id.* at 93.   After two of the three psychologists appointed to investigate Pagtakhan's competency provided negative reports, Hove served Pagtakhan with a "placement letter" on November 15, 2007. *See id.* at 94-95.   Hove failed to stop Pagtakhan from being committed to the Napa State Hospital in 2007-2008.  *Id.* at 95.   Hove prepared a placement order that Judge Cretan signed in the first week of February 2008.   On February 7, 2008, Pagtakhan was transported to Napa State Hospital.  *Id.* at 96.

Hove was listed as a defendant for the "malicious prosecution as to conservatorship proceedings" cause of action, although the only allegation against Hove was the conclusory allegation that "McKowan, Hove [who Pagtakhan successfully fired around 8/2011], and Webb then conspired and acted to have Pagtakhan further committed by a conservatorship."  FAC at 9 (brackets in source)  Upon the court's invitation to allege facts to support the conclusory allegations of conspiracy, Pagtakhan alleged that Hove's actions vis-a-vis the competency proceeding were the same actions that give rise to part of his malpractice claim, i.e., Hove's 2007 declaration of a doubt as to Pagtakhan's competency and Hove's 2008 failure to prevent Pagtakhan from being committed.  *See* Docket # 37 at 21.  The court dismissed the allegations that attempted to hold persons liable based on their involvement in conspiracies.  *See* Docket # 39 at 7.

### b.   State Court Action Against Hove

The allegations in the federal court first amended complaint repeated allegations made by Pagtakhan in his state court action.  The same allegations of malpractice made in the federal pleading were made at pages 79-86 of the first amended complaint filed in the San Mateo County Superior Court.  *Compare* FAC at 91-98 *with* Docket # 34-8 at 2-8 *and* Docket # 43-5 at 36-43.  In both the federal and state first amended complaints, Hove also was listed as a

10

defendant for the cause of action labeled "Civil Conspiracy to deprive the plaintiff of civil rights." *Compare* FAC at 29 *with* Docket # 34-7 at 21-22.  Hove's alleged role was that he failed to implement Pagtakhan's request for a speedy trial, declared a doubt as to his competency, and refused to challenge his commitment to Napa State Hospital. *Compare* FAC at 90 *with* Docket # 34-8 at 1-2.  In both the federal and state first amended complaints, Hove also was listed as a defendant for the infliction of emotional distress causes of action. The same alleged conduct supporting the intentional and negligent infliction of emotional distress claims made in the federal first amended complaint supported the intentional infliction of emotional distress claim made in the first amended complaint filed in the San Mateo County Superior Court. *Compare* FAC at 100-01 *with* Docket # 34-8 at 11-12.

Hove ultimately prevailed on the merits in state court.  On January 8, 2010, the San Mateo County Superior Court sustained Hove's demurrer to the first amended complaint.  The demurrer to the cause of action for civil conspiracy to defame the plaintiff was sustained because "the claim is based solely on statements made in court" which were privileged under California Civil Code § 47. *See* Docket # 43-6 at 3.  The demurrer to the causes of action for civil conspiracy to defame the plaintiff, civil conspiracy to deprive the plaintiff of civil rights, malpractice, discrimination in causes of action, and intentional infliction of emotional distress was sustained on the ground that "the causes of action fail to state a claim because they allege only that defendant, Eric Hove, acted in a manner that he was statutorily required under *Penal Code* Section 1371.5 or 1368.  *Id.* at 3-4 (emphasis in source).  The state trial court granted Pagtakhan leave to file an amended complaint, but Pagtakhan did not amend.  On April 29, 2010, the state trial court granted Hove's motion to dismiss, and Pagtakhan's action against Hove was dismissed with prejudice under California Code of Civil Procedure § 581(f)(2)(dismissal where demurrer has been sustained and plaintiff has failed to amend).  *See* Docket # 43-6 at 9.  Neither party indicates that an appeal was taken.

11

United States District Court
For the Northern District of California

c.    <u>Analysis</u>

Under the doctrine of res judicata (also known as the claim preclusion doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . .  Under collateral estoppel (also known as the issue preclusion doctrine), once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Res judicata bars not only every claim that was raised in state court but also bars the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief.  A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory.  *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986); *Smith v. City of Chicago*, 820 F.2d 916, 920 (7th Cir. 1987) (claim preclusion applied where single core of operative facts formed basis of both lawsuits and plaintiff neglected to raise § 1983 claim until years after it occurred and not until adverse judgment was rendered on cause of action for employment discrimination).

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  In California, a final judgment in state court "'precludes further proceedings if they are based on the same cause of action.'" *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004)).  Under California's primary rights theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty.  *Id.* (citation omitted).  If this cause of action test is satisfied, then the same primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different forms of relief,

and/or adds new facts supporting recovery.  *Id.*  Thus, a civil rights action under § 1983 may be dismissed as barred by res judicata if a prior California state court judgment rendered a valid judgment on the merits in favor of a defendant.  *See Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850-51 (9th Cir. 1986) (citing *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (Cal. 1976)).

Hove prevailed against Pagtakhan in state court on Pagtakhan's causes of action for malpractice, civil conspiracy to defame plaintiff, civil conspiracy to deprive the plaintiff of civil rights, discrimination and intentional infliction of emotional distress.  The state trial court dismissed the action and an appeal was not taken.  A judgment entered after a demurrer has been sustained is a judgment on the merits, and will "be a bar to subsequent action alleging the same facts."  *Keidatz v. Albany*, 39 Cal. 2d 826, 828 (Cal. 1952).  There has been a final judgment on plaintiff's state action against Hove for the purposes of res judicata.  Pagtakhan pursued the same causes of action in state court as here.  The "primary rights" were his right to adequate legal representation and his right to remain free from competency proceedings and hospitalization except as provided by state law.  The corresponding duties for Hove were to provide adequate legal representation and to not cause his client to be subjected to competency proceedings and related hospitalization except as provided by state law.  The alleged harm to plaintiff was being subjected to competency proceedings and related hospitalization that also caused him not to have a prompt trial in the criminal proceedings.  The primary rights test is satisfied because the same alleged rights, duties and harms were complained of in both actions.

Pagtakhan's claim against Hove for malicious prosecution of the conservatorship proceedings also is barred by res judicata principles.  Although the conservatorship proceedings occurred after the state court dismissal, Hove's alleged conduct that formed the basis for the claim took place in 2007 and 2008, i.e., when he declared a doubt as to Pagtakhan's competency and allowed him to be committed to a state hospital.  The theory in the first amended complaint was that Hove's actions in 2007 and 2008 paved the way for the 2011 conservatorship proceedings, i.e., Pagtakhan would not have been subjected to conservatorship proceedings but

United States District Court
For the Northern District of California

13

for his commitment to a state hospital and would not have been committed to a state hospital but for Hove declaring a doubt as to Pagtakhan's competency. The malicious prosecution claim is based on the same cause of action as the claims litigated in the state court action under California's primary rights theory.

Pagtakhan's causes of action against Hove have been litigated fully in state court. Res judicata bars Pagtakhan from relitigating those claims because the same causes of action are being pursued, Pagtakhan is the same party as in the earlier case, and the adjudication of the first amended complaint was final and on the merits. Having determined that the action against Hove is barred by res judicata, the court does not reach Hove's alternate arguments for dismissal.

> 3.   Chuck Witt and the Burlingame Police Department
>> a.   Allegations Against Witt and BPD

Pagtakhan alleged claims against Burlingame police inspector Chuck Witt for false arrest, false imprisonment, and malicious prosecution of the criminal case and conservatorship proceedings. He also alleged that the Burlingame Police Department failed to properly train and supervise Witt, and negligently failed to investigate Pagtakhan's complaint about other people at the wrestling school he attended.

The first amended complaint alleged the following: Following Witt's investigation, Pagtakhan was arrested by Witt on August 11, 2007 and charged with several stalking crimes. Witt improperly investigated him, wrongfully arrested him and filed false reports against him. Witt provided false testimony at the grand jury hearing.

>> b.   State Court Action Against Witt and BPD

The allegations in the federal court first amended complaint repeated many of the allegations made by Pagtakhan in his state court action.

Pagtakhan's original complaint in state court asserted causes of action against Witt for

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

"conspiracy to procure a false arrest," "malicious arrest/conspiracy to commit assault with a deadly weapon and/or murder," "premises liability/hostile environment/dangerous activity & condition," "fraud," "filing a false police report," "intentional infliction of emotional distress." Docket # 47 at 121-28.   The alleged conduct that formed the basis for these causes of action included Witt's conduct leading up to the arrest, the arrest itself, and the resulting "false imprisonment." *See id.*

Witt filed a demurrer to the causes of action against him in the original complaint.   The trial court sustained the demurrer with leave to amend.   Docket # 48 at 29-30.   That court found that the causes of action against Witt "do not state facts sufficient to constitute a cause of action." *Id.* at 30.   Pagtakhan did not amend within the time provided after the court sustained Witt's demurrer.   Upon Witt's application, the state trial court dismissed the action with prejudice against Witt.   *See* Docket #48 at 34-35.   Pagtakhan appealed the dismissal.

Pagtakhan also then filed in state court a first amended complaint that purported to assert claims against Witt and BPD.   Witt and BPD responded with a motion to dismiss and a demurrer.   The trial court denied the motion to dismiss and overruled the demurrer, and instead exercised its discretion under Code of Civil Procedure § 436 to strike Witt and BPD from any and all causes of action against them in the first amended complaint.   Docket # 49 at 4.   The state court ruled that including Witt in the first amended complaint was "clearly contrary to the prior ruling dismissing Witt from the instant action," and that leave to amend had not been obtained to add BPD as a new party.   *Id.*   The court explained that Pagtakhan had to file and serve a motion to amend if he wanted leave to amend to add BPD.   *Id.*   Pagtakhan apparently did not file a motion to amend.   Instead, he filed a second appeal in state court.

The California Court of Appeal consolidated Pagtakhan's appeals and denied them. *See* Docket # 49 at 6-13.   The appellate court found that the original dismissal with prejudice was proper, and that any later filed first amended complaint would have been a nullity because the dismissal with prejudice already had been entered.   *See id.* at 8 & n.2.

15

United States District Court
For the Northern District of California

1    Thus, in state court, Witt prevailed on the merits with regard to the original complaint,

2    while Witt and BPD avoided the first amended complaint in state court on procedural grounds,

3    rather than on the merits.

4

5        c.    Analysis

6        Witt already has prevailed against Pagtakhan in state court with a successful demurrer to

7    his causes of action for "conspiracy to procure a false arrest," "malicious arrest/conspiracy to

8    commit assault with a deadly weapon and/or murder," "premises liability/hostile

9    environment/dangerous activity & condition," "fraud," "filing a false police report," "intentional

10   infliction of emotional distress."   In granting the demurrer, the state trial court stated that

11   Pagtakhan had failed to plead compliance with the Tort Claims Act as to several claims and

12   failed to allege that the demurring defendant was acting as a public employee for the premises

13   liability claim.  *See* Docket # 48 at 4.  Under California law, compliance with the Tort Claims

14   Act is an element of a claim against a public employee, and one who fails to allege such

15   compliance has failed to state a cause of action.  *See State of California v. Superior Court

16   (Bodde)*, 32 Cal. 4th 1234, 1243 (Cal. 2004).   Failure to so allege may be challenged by

17   demurrer and results in a dismissal.   *See id.* at 1241. That dismissal is a judgment on the merits,

18   and bars a subsequent action alleging the same facts.  *See generally Keidatz*, 39 Cal. 2d at 828.

19   Pagtakhan pursued the same causes of action in state court as here.  The primary rights were his

20   rights to be free from improper investigation, wrongful arrest and false imprisonment.  The

21   corresponding primary duties for Witt were to investigate, arrest, and imprison Pagtakhan only

22   as allowed by state law.  The harm to Pagtakhan was being subjected to the allegedly improper

23   investigation, arrest, and imprisonment.  The actions involve the same rights, duties and harms.

24   The claims in the first amended complaint in federal court that pertain to the events leading up

25   to the arrest, the arrest itself, and the alleged malicious prosecution were based on the same

26   cause of action as the claims litigated in the state court action under California's primary rights

27

28

theory. This analysis focuses on the original complaint in state court because that is the pleading on which Witt prevailed on the merits.

Pagtakhan's causes of action against Witt pertaining to the events leading up to the arrest, the arrest itself, and the alleged false imprisonment already have been litigated fully in state court. Res judicata bars Pagtakhan from relitigating those claims. Two important caveats: First, the claims barred by res judicata are only the claims against Witt. The dismissal of BPD in the state court action was due to Pagtakhan's failure to file a motion to amend to add BPD as a party, and that is not a judgment on the merits. Second, the claims barred by res judicata are the claims against Witt pertaining to the events leading up to and including the arrest, and the alleged false imprisonment resulting from the arrest. The malicious prosecution claims against Witt and BPD are not barred by res judicata.

D.      Limited Leave To Amend Is Granted

There is a rather small portion of Pagtakhan's suit that has not been disposed of by this order and the earlier orders. All that remains are his claims against Witt and BPD for malicious prosecution.   Pagtakhan must allege those claims in his second amended complaint if he wishes to pursue them.

In California, the elements of a malicious prosecution claim are that the prosecution: (1) was initiated by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (citing *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989)).  To allege a § 1983 claim based on an allegedly malicious prosecution, the plaintiff must further allege that they defendants prosecuted him with malice and without probable cause for the purpose of denying him equal protection or another specific constitutional right.  *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066-68 (9th Cir. 2004); *see also Freeman*, 68 F.3d at 1189; *Usher*, 828 F.2d at 561-62.

United States District Court

For the Northern District of California

As defendant BPD correctly notes, the first amended complaint is deficient insofar as it attempts to assert claims against BPD under § 1983.  There is no respondeat superior liability under § 1983, i.e. no liability under the theory that one is liable simply because he employs a person who has violated plaintiff's rights.  *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  BPD does not have liability based solely on the fact that it employed the allegedly wrongdoing inspector.  However, local governments, such as BPD (which apparently is an arm of the City of Burlingame), are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell,* 436 U.S. at 690.  To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  The elements of a *Monell* claim must be pled with factual specificity; a bare allegation that an unspecified custom, policy or practice exists is insufficient to plead a *Monell* claim.  *See AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

The second amended complaint must comply with the following directions.  First, the second amended complaint may only allege claims against Witt and BPD.  The court has dismissed all the claims against all the defendants except Witt and BPD.  Pagtakhan may not repeat the dismissed claims against the dismissed defendants.  He does not need to re-plead the claims the court has dismissed in order to preserve them for appeal, and the repetition of those claims would only lead to yet another bloated and confused pleading.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.")  Second, the second amended complaint may not repeat

18

**United States District Court**
For the Northern District of California

the claims against Witt based on the alleged wrongful investigation, false arrest, and false imprisonment because those claims have been dismissed as barred by res judicata.  Third, the second amended complaint may not incorporate by reference any other pleadings and should be a full statement of the claims against BPD and Witt for malicious prosecution.  Fourth, the second amended complaint must adequately allege *Monell* liability against BPD for the § 1983 claim, as described above.

## CONCLUSION

For the foregoing reasons:

1.      Eric Hove's motion to dismiss is GRANTED.  (Docket # 43.)  Eric Hove is dismissed from this action because the claims against him are barred by the doctrine of res judicata.

2.      The motions to dismiss filed by Dr. Samuels and Dr. Leifer, and the motion for judgment on the pleadings filed by Dr. Singh, are GRANTED.  (Docket # 55, 59, 66.)  Dr. Samuels, Dr. Leifer and Dr. Singh are dismissed from this action because they have absolute quasi-judicial immunity against the claims asserted against them and are shielded by the litigation privilege from all claims other than the malicious prosecution claim.

3.      Defendant Witt's motion to dismiss is GRANTED IN PART.  (Docket # 46.)  The claims against Witt pertaining to the investigation, arrest and alleged false imprisonment of Pagtakhan are dismissed from this action because they are barred by the doctrine of res judicata.

4.      Leave to amend is granted so that Pagtakhan may attempt to allege claims against Witt and BPD that are not barred by res judicata or by the court's rulings in earlier orders.  The second amended complaint must be filed no later than **December 20, 2013**, and must include the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page.  Plaintiff is cautioned that the second amended complaint must comply with the directions in this order.  Failure to file the amended complaint by the deadline

19

will result in the dismissal of the action.

      IT IS SO ORDERED.

Dated: November 21, 2013

                        SUSAN ILLSTON
                 United States District Judge

**United States District Court**
For the Northern District of California

20